## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Patricio Flores and Jose Encalada,<br>as Co-Trustees and Personal Representatives<br>for the next of kin of Maria Iñamagua Merchan, | Case Type: Civil Rights/    Wrongful<br>Death/Medical Malpractice<br><br>Court File No. _09cv 838   JMR/SRN_ |
| Plaintiffs, | **COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

The United States of America;  The U.S. Department
of Homeland Security, Immigrations and Customs Enforcement ("ICE");
Scott Baniecke, individually and in his official capacity as
Field Officer, ICE;  an Unknown Number of Unnamed
and Unknown Agents of ICE; The County of Ramsey, Minnesota;
Robert Fletcher, individually and in his official capacity
as Sheriff of Ramsey County;  Ramsey County Adult
Detention Center;  Ramsey County Sheriff's Department;
Robert Fletcher--Ramsey County Sheriff;  Ramsey County
Department of Health;  Robert W. Fulton--Director of Ramsey
County Department of Health;  "XYZ" Family Practice Clinic,
Ramsey County Adult Detention "Family Practice Clinic" and
Unidentified Medical Clinics I-V;  Drs. John Doe or Jane Does I-V--
Unidentified Jail or Contract Medical Doctors;  Robert Moxley-
Goldsmith, individually and in his capacity as Head Nurse;
Erika Thompson, R.N., individually and in her capacity as Jail Nurse;
Chris Strand, individually and in her capacity as Jail Nurse;  Kelli LNU,
--Unidentified Jail Nurse;  John Roe or Jane Roes—Unidentified
Jail Nurses I-V;  Mary Roby, individually and in her capacity
as Ramsey County Housing Sergeant;  Jill Jones, individually and
in her capacity as Ramsey County Corrections Officer;  T. Bennet,
individually and in his capacity as Ramsey County Corrections Officer;
Cheryl Caumiant, individually and in her capacity as Ramsey County
Corrections Officer;  John Poe or Jane Poes I-V--Unidentifed Ramsey
County Sheriffs, Deputies, Correctional Officers and Guards,

Defendants

1

SCANNED
APR ·3 2009
U.S. DISTRICT COURT MPLS

Plaintiffs Patricio Flores and Jose Encalada, as Co-trustees for the next of kin of Maria Iñamagua Merchan, allege and state on information and belief as follows:

## PRELIMINARY STATEMENT

1. This is a civil action for compensatory damages and declaratory and injunctive relief, costs, attorney fees and other damages regarding Defendants' negligence, medical and nursing malpractice, civil rights violations, violations of statute and common law torts, which wrongfully caused the death of Maria Iñamagua Merchan. Plaintiffs contend that while Ms. Merchan was in the custody of the Department of Homeland Security at the Ramsey County Adult Detention Center, Defendants, in both their individual and official capacities, each demonstrated a deliberate indifference to Decedent's serious medical needs. The Defendants' deliberate actions and omissions resulted in Decedent being subjected to cruel and unusual punishment in violation of the protections guaranteed by the Eighth and the Fourteenth Amendments to the United States Constitution.

2. Plaintiffs maintain that the deprivations and violations of the Decedent's constitutional rights were carried out pursuant to the rules, regulations, customs, policies and practices of Defendants in their official capacity and the named Defendants, acting under color of state law, knowingly caused Ms. Iñamagua Merchan to be deprived of her federal constitutional rights.

3. Plaintiffs request this Court to declare that the acts and omissions by Defendants were unconstitutional under the United States Constitution, and by an award of compensatory damages, compensate Plaintiffs and the heirs and next of kin of Decedent for the violation of Ms. Iñamagua Merchan's constitutional and other common law rights and deter the Defendants from further participation in such unconstitutional acts and omissions.

## PARTIES

4.     Plaintiff Patricio Flores is the husband and widower of Maria Iñamagua Merchan (hereinafter referred to as "Decedent" or "Plaintiffs' Decedent"). Jose Encalada is the uncle, by marriage, of Decedent.  Mr. Flores and Mr. Encalada (hereinafter referred to as "Plaintiffs") serve as the duly appointed Co-trustees for the next of kin of Decedent.  The Order dated April 8, 2009 appointing Patricio Flores and Jose Encalada as trustees for the next of kin of Decedent is attached herewith as **Exhibit A.**

5.     Decedent Maria Iñamagua Merchan was for some of the time relevant to this action, a resident at 2748 Chicago Avenue, in the City of Minneapolis, County of Hennepin, State of Minnesota.  Decedent was at other times relevant to this action residing at the U. S. Immigration and Customs Enforcement facility at 2901 Metro Drive, Suite 100, in the City of Bloomington, County of Hennepin State of Minnesota 55425.  Decedent was at other times relevant to this action residing at the Ramsey County Adult Detention Center, 425 Grove Street, in the City of St. Paul, County of Ramsey, State of Minnesota 55425.

6.     She was born on November 19, 1975 in Checa Cuenca, Equador.  She died on or about April 12, 2006 in Ramsey County, Minnesota, from a head injury and nuerocysticercosis, as a result of the negligence, failure to diagnose, denial of adequate medical care and treatment, and other torts and civil rights violations committed by Defendants as alleged herein.  Decedent was a member of a protected class (National Origin, Equador, Hispanic/Native American)

7.     Defendant Ramsey County is a municipal corporation and a political entity and is sued as the governing body over the Ramsey County Law Enforcement Center and/or Ramsey County Sheriff's Department Detention Division, and as the employer of Sheriff Robert Fletcher, and the

3

employer of the individual "County Employee Defendants," including the above identified Ramsey County Employees and the unidentified "Doe," "Roe" and "Poe-I-V" Defendants.

8. Defendant Sheriff Robert Fletcher is employed as, and acting in his official capacity as member of the Ramsey County Sheriff's Department in the capacity of a sworn Police Officer, and/or acting as an agent for the county of Ramsey, State of Minnesota. Defendant Fletcher is sued in both his personal, individual and official capacity.

9. Defendants who are Ramsey County Sheriff's Department/Adult Detention Division Officers, some of whom are identified, including Ramsey County Corrections Officers, Jill Jones, T. Bennet, and Mary Roby, and Cheryl Caumian and some not identified but who are being sued as unidentified parties, as the Doe, Roe and Poe I-V Defendants, are natural persons, and upon information and belief, are residents of the State of Minnesota. At all times relative to this Complaint, Officers Roe and Nurses Doe were employed by and acting in their capacity as Officers and Nurses of Defendants. On information and belief, Defendant Officers and Nurses were entrusted with responsibility regarding the provision of health and medical services to persons in the custody of the Ramsey County Adult Detention Center and were charged with the responsibility to ensure that all prisoners and detainees under their jurisdiction received timely and adequate medical care and treatment

10. Defendants "XYZ" Family Practice Clinic or Jail Family Practice Clinic, upon information and belief is a clinic in charge of the healthcare services provided at the Ramsey County Adult Detention Center. It may employ or have contract or supervisory relationships with jail doctors, persons who issued "M.D. Orders" failed to perform medical screenings and physical exams on Decedent. Ramsey County sends its inmates and detainees who need emergency care or hospitalization to Regions Hospital. Upon information and belief, Regions

4

Hospital did not treat the Decedent until April 3, 2005, after her medical conditions had been neglected for 38 days by Defendants and her hydrocephalus condition had been neglected for 6 or more hours on April 3, 2006. Plaintiffs requested all jail and medical records in 2006, but did not receive them, and so reserve the right to amend this Complaint to name any hospitals, clinics or doctors who treated

11.     Defendant Ramsey County in connection with its activities, employed the services of physicians, including but not limited to, the jail doctors, nurses, and other professional and non-professional employees, and held them out and warranted them to the public as competent and experienced in the care, diagnosis, and treatment of patients including Decedent.

12.     Defendant Ramsey County Department of Health is a political subdivision of Ramsey County, which has clinics, pharmacies, and employs or pays independent contractors to provide the services of medical doctors, registered nurses, licensed practical nurses, pharmacists, pharmacy technicians, and other professional and non-professional employees, and held them out and warranted them to the public as competent and experienced in the practice of medicine, nursing, pharmacy care, diagnosis, and treatment of patients. Upon information and belief, the Ramsey County Department of Health provides support and services to the Ramsey County Sheriff's Department and the Ramsey County Adult Detention Center.

13.     Defendant Department of Homeland Security ("DHS") was established as an executive department of the United States by the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), which abolished the Immigration and Nationality Service, ("INS") and transferred its responsibilities to bureaus with DHS.

14.     Defendant Scott Baniecke is the Supervisor of Detention and Removal, for Immigration and Customs Enforcement ("ICE"). ICE is a division within the U. S. Department of Homeland

5

Security ("DHS"). Mr. Banieck and the unnamed Federal Defendants are officers or employees of the United States or any agency thereof acting in their official capacity or under color of legal authority, or an agency of the United States.

15.    The other named individual "Federal Defendants," as well as the unknown and unnamed individual Defendants, at all times relevant to this complaint, were employed by the United States, through the Department of Homeland Security and ICE. When the names of the unknown and unnamed Defendants are ascertained, Plaintiffs will seek leave to amend their complaint to indicate the true names.

16.    All Defendants were responsible to provide adequate healthcare to Decedent as all Defendants were Plaintiff's immediate custodians during the time she was held for deportation.

## JURISDICTION

17.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (a) (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff invokes the supplemental jurisdiction of this Court to hear and decide claims arising under Minnesota law.

18.    This action, as against the United States of America, also arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2401, 2671-2680. Exclusive jurisdiction of FTCA claims rests with the United States District Courts under 28 U.S.C. § 1346(b)(1).

19.    Jurisdiction of the state law claims derives from principles of pendent and supplemental jurisdiction under 28 U.S.C. § 1367, Minnesota Common Law, and Minnesota Statutes including tort actions for wrongful death and negligence under Minn. Stat. § 573.02. Upon information and belief, some of the above individual Defendants are citizens or residents

of states other than Minnesota, therefore diversity jurisdiction (28 U.S.C. § 1332) allows Plaintiffs to sue the non-federal Defendants in U.S. District Court as joint tortfeasors under the Federal Tort Claims Act.

20.     Jurisdiction of the federal law claims is based on Title 28 U.S.C. §§ 1331, 1334(3), 1343, and 1346(b)(1).

21.     Some of the Defendants are agencies of the United States, or the individual Defendants reside in Hennepin County and Ramsey Counties, doing business in counties throughout the State of Minnesota or States of the United States of America. Venue is founded in this judicial district based on 28 U.S.C. §§ 1391(e) and 1402, as a substantial part of the acts complained of occurred in this District. Therefore, venue is proper in the United States District Court, District of Minnesota, in the City of Minneapolis.

## FACTUAL BACKGROUND

Plaintiffs incorporate herein by reference the allegations in the above paragraphs.

22.     Plaintiff, Patricio Flores, and Decedent, Maria Iñamagua Merchan, were married on August 1, 1999, in Minneapolis, Minnesota. They resided in Hennepin County Minnesota, with their daughter, Joanna Flores, a minor child who was born in Hennepin County, Minnesota.

23.     As of February 2006, Maria was a healthy 30-year-old woman who had never been hospitalized other than for the birth of her only child, Joanna Flores. She spoke no English and was a native Spanish speaker.

24.     The Immigration and Nationality Act authorizes ICE to arrest, detain, and remove certain aliens from the United States under 8 U.S.C §§ 1226, 1227, 1229, 1229(a) and 1357. ICE

has Detention Operations Manuals, Detention Standards and healthcare policies that relate to all federal detainees.

25.       On or about February 24, 2006, the U.S. Department of Immigrations and Customs Enforcement, arrested Decedent and transferred her to Ramsey County Adult Detention Center which photographed and booked here.  Upon information and belief, neither ICE nor Ramsey County gave her any initial medical screening, physical examination or medical examination.

26.       ICE had entered into an intergovernmental service agreement with Ramsey County (hereinafter "Agreement") to house ICE detainees until they are either deported or released.  This contract, on information and belief, contains various terms whereby the Ramsey County Sheriff's Department, Jails and the Adult Detention Center would house federal prisoners accused of immigration violations.

27.       ICE policies, contracts and agreements require medical screening of new arrivals, including an initial medical, dental, and mental health screening which "shall be done within 12 hours of arrival by a health care provider or a detention officer specially trained to perform this function.  ICE and its detention partner, Ramsey County had duties of care towards Decedent which they breached causing her death.

28.       The medical screening shall inquire into the following:  Any past history of serious infectious or communicable illness, and any treatment or symptoms; Current illness and health problems, including communicable diseases.  Defendants failed to perform or failed to reasonably perform any medical screening on Ms. Inamagua Merchan.

29.       ICE and/or ICE detention partners are supposed to make observation of body deformities and other physical abnormalities.  In the Department of Homeland Security Report of

8

June 2008, the inspector general concluded in relation to the Inamagua case, "Facility information we examined included a head trauma protocol. This document justified the detainee's expedited transportation to the hospital after a nurse observed that the detainee was dizzy and confused. Additionally, the detainee did not receive a physical exam, which ICE medical standards require within 14 days of intake." Defendants breached these duties of care, causing the death of Ms. Inamagua Merchan.

30.         Cysticercosis is an infection caused by the pork tapeworm, Taenia solium. Infection occurs when the tapeworm larvae enter the body and form cysticerci (cysts). When cysticerci are found in the brain, the condition is called neurocysticercosis. Symptoms of neurocysticercosis depend upon where and how many cysticerci (often called lesions) are found in the brain. It is the most common parasitic infection worldwide.

31.         The governmental Defendants including ICE, Ramsey County Sheriff's Office, and others knew or should have known that this disease is common in immigrant populations, particularly those from Latin America.

32.         Defendants knew or should have known that if undiagnosed or not treated, neurocysticercosis can be fatal. Defendants knew or should have known, even before Ms. Inamagua Merchan, was arrested and detained by ICE that the federal detainees (particularly Latinos, Hispanics, and those from Mexico, Central and South America) which they were holding were at risk for symptoms of neurocysticercosis, but routinely failed to do any medical screening, physical examinations or testing for this disease.

33.         On or before February 24, 2006 including Defendants knew or should have known that Ms. Inamagua Merchan was at risk for having the disease of neurocysticercosis. ICE had other federal detainees, prior to Ms. Inamagua, which on information and belief suffered

9

from this and other diseases common in the "Third World" diseases which caused death. From Another way ICE should have detected the disease would have been "to ensure that questions related to cysticercosis are asked during the initial health assessment and the 14-day physical exam." "Greater efforts to recognize nuerocysticercosis may have expedited the care the detainee received." Inspector General report. Defendants breached these duties of care causing Decedent's death.

34.        Symptoms of cyticercosis can occur months to years after infection, usually when the cysts are in the process of dying. When this happens, the brain can swell. The pressure caused by swelling is what causes most of the symptoms of neurocysticercosis. Headaches, and seizures are the most common symptoms of neurocysticercosis. Lumps developing under the skin, nodules on the skin or a "rash" are also symptoms of cysticerci. A cyst or lesion which develops and becomes hardened in the brain, may be asymptomatic, may not require treatment with anti-parasitic drugs, and the patient may still live a long life with this disease.

35.        On the other hand, more cysts or lesions, left undiagnosed and untreated, can cause more serious symptoms such as confusion, lack of attention to people and surroundings, difficulty with balance, swelling of the brain (called hydrocephalus) and can result in death.

36.        On or about March 5, 2006, the Ramsey County Adult Detention Center indicated in medical notation in its Progress Notes for Decedent: "Inmate reports that she has a history of migraine headaches __ relieve by Tylenol or ASA. Will schedule evaluation with f/D–E Thompson, R.N." Upon information and belief, no such evaluation was performed of Decedent. Later, the Inspector General reported that better review of medical exam timeliness is needed ICE's medical care detention standards require facilities to conduct appraisal and physical examination on each detainee within 14 days of the detainee's arrival at the facility. This exam

10

is designed to gather details about a detainee's health beyond the screening questions asked. Defendants breached these duties of care causing Decedent's death. Ms. Inamagua and her family repeatedly asked for doctors, medication, and treatment, but Defendants "screened out," ignored these reports and displayed deliberate indifference to the civil rights of Decedent. Decedent called her sister Theresa, told her she was "dying from head pain" and asked Theresa to tell the jail. Theresa and other family members did so, but their reports and complaints were ignored.

37.	Aurora Inamagua, Decedent's mother, was also a cellmate of Maria. Aurora had the same disease of neurocysticercosis, but was diagnosed and treated by other parties and survived the condition. Defendants knew or should have known that Decedent's family member, also a cellmate had this disease, and took medicine for it 3-4 times per day, but failed to act upon this information, or screen Ms. Maria Inamagua Merchan for the same disease.

38.	On or about March 23, 2006 Registered Nurse Strand wrote in the Progress Notes that "Inmate has a fine reddened rash on skin of lower extremities . . ." Nurse Strand wrote she would start her on Benadryl and Hydrocortisone cream and would "chartcheck to Family Practice Clinic." The Ramsey County Jail Nurse believed the rash was "probably secondary to pant uniform rubbing on skin." Upon information and belief Defendants failed to provide Decedent access to a medical doctor and hospital or clinic, for diagnosis or treatment of this condition or any other condition, complaint or request for medication.

39.	On or about March 31, 2006, Nurse Thompson wrote that the Inmate continued to complain of the rash and headache. Her "arms and lower extremities" had a "red, raised rash." Nurse Thompson wrote "complains of pruritis." For these symptoms along with the headaches, loss of weight, Defendants only "re-started" the "Bendadryl and Ibuprofen." Defendants failed

11

to diagnose, treat or provide a medical doctor for the parasitic infection in her body, for the headaches, and other associated symptoms of neurocysticercosis. Defendants referenced, "See M.D. orders," but upon information and belief never provided her with a basic medical evaluation, allowed her to see a physician, nor provided her with a translator to obtain an accurate history and explanation of symptoms from the patient, Maria Iñamagua Merchan. Defendants only occasionally provide her with over-the-counter medication and made several comments in the records that she seemed "okay."

40.     Defendants allowed jail nurses to attempt diagnoses, and in fact to misdiagnose and mistreat serious health conditions that resulted in Decedent, suffering severe headaches, becoming disoriented, dizzy, falling from her bunk bed, striking her head, and presenting with a "half a golf ball size lump" on the back of her head. The symptoms of headache, reports of a fall and head trauma, brain swelling, under the circumstances, should have alerted the correctional officers, nurses and jail staff, that Maria Inamagua Merchan urgently needed medical care on or before April 3, 2006.

41.     Defendants neglect of Ms. Inamagua Merchan from at least 2:30 p.m. on April 3, 2006 when Officer Caumiant saw that Decedent was "crying, holding her head in her hands," reported a fall from the bunk bed and a head injury, was cruel and unusual punishment and displayed deliberate indifference to her rights to medical care. Though she was crying and in obvious pain, Officer Caumiant only gave her a cold wash cloth and told her to wait for the nurse at 4:00 p.m. When Officer Jones saw Decedent had a knot on her head and was crying in pain she gave her an ice pack. Podmate Quinn Henson heard Ms. Inamagua crying and saw her holding her head as she walked down the stairs to the guard's desk but was told to get back in her cell and "you don't get anything 'till you see a nurse." Another inmate had to help her walk, but

Decedent was locked back in a cell and given no medical attention. Between 2:30 and 8:15 p.m., according to Ms. Henson, despite her worsening condition, "gray face, and eyes swollen shut," Defendants gave Ms. Inamagua no medical attention other than an icepack. The failure to diagnose and treat the neurocysticercosis and hydrocephalus despite her complaints and symptoms over more than a five-week period, and then over 6 hours on April 3, 2009 caused Ms. Iñamagua Merchan's death.

42.         Decedent's deteriorating health beginning in February 24, 2006, up to her fall on April 3, 2006, and her death on or about April 12, 2006, due to neurocysticosis, was a direct and proximate result of the negligent failure to diagnose and lack of proper medical screening, medical care, nursing care, emergency medical care and treatment by Defendants. On or about April 12, 2006, Ms. Inamagua Merchan was given an EEG which showed that she was brain dead. The autopsy dated April 14, 2006, showed Decedent had neurocysticercosis as the cause of death.

## (COUNT I)

### (Denial of civil rights under U.S.C. section 1983)

Plaintiff restates and incorporates, by reference, all the preceding paragraphs of his Complaint and states as follows:

43.         The actions of the Defendants were taken under color of law with regard to Plaintiffs and constitute state action under "color of law" as defined by 42 United States Code § 1983.

44.         The actions of Defendants in failing to respond to her serious medical needs and in failing to recognize her symptoms and dire need of medical assistance constituted wrongful

and intentional acts intended to put Plaintiffs' Decedent in direct, imminent and immediate fear and danger, all to Decedent's harm, injury, and death and to Plaintiffs' loss.

45. The actions of all the Defendants were unreasonable, constituted a deliberate indifference and disregard to Plaintiff's serious medical needs, violated Decedent's rights under the Eighth Amendment right to be free from cruel and unusual punishment, and were not the actions of reasonably well-trained employees, guards, officers and nurses and were actions which shock the conscience. Further, said actions violated well-established and clearly enunciated constitutional rights including but not limited to the right to be free from violations of due process, deprivation of liberty rights and interests, and the right to equal protection of the laws.

46. The actions of Defendants were malicious, unreasonable, and so shocking to the conscience as to amount to a summary punishment of Decedent, and a clear violation of Decedent's due process rights under the Eighth Amendment to the United States Constitution and were not the actions of reasonably well-trained employees, guard, officers and nurses.

47. As a direct and proximate cause of the grossly negligent, intentional, and unconstitutional acts of Defendants, Decedent suffered severe pain and death. Additionally, the Decedent's constitutional rights, including under the Fifth, Eighth, and Fourteenth Amendments, were violated and she has suffered and will suffer damages in an amount in excess of $75,000.

48. Defendants, in each permitting the other Defendant to encourage, allow or permit the deliberate disregard and indifference to Decedent's serious medical needs and to otherwise violate the Decedent's clearly established constitutional rights, failed to take reasonable and required steps to prevent the other Defendants from violating the Decedent's constitutional rights although they had an official duty to do so.

48.	Plaintiffs state that the unconstitutional, negligent, reckless and heedless actions of all Defendants placed the Decedent in a zone or area of danger causing her to be subjected to great and actual risk of harm and loss of constitutionally-protected interests, including her life and liberty.

42.	Defendants maliciously and/or deliberately failed to take any and/or all reasonable steps or necessary precautions required to avoid or prevent the constitutional violations set forth in the other Counts of this Complaint, despite their clearly-established legal and constitutional duty to do so.

43.	As a direct and proximate cause of the deliberate, intentional, or unconstitutional acts of the Defendants, Decedent's constitutional rights, including under the Fifth, Eighth, and Fourteenth Amendments, were violated and Plaintiffs have suffered and will suffer damages in an amount in excess of $75,000.

### (COUNT II)
(Negligence)

Plaintiffs incorporate herein by reference the allegations in the above paragraphs.

44.	Defendants owed Plaintiffs' Decedent duties of care as described herein.

45.	Defendants breached those duties of care proximately causing the worsening of her nuerocysticercosis, until it became life threatening and caused her death on or about April 12, 2006.

46.	As a direct and proximate cause of the deliberate, intentional, or unconstitutional acts of the Defendants, Decedent's constitutional rights, including under the Fifth, Eighth, and Fourteenth Amendments, were violated and Plaintiffs have suffered and will suffer damages in an amount in excess of $75,000.

15

**(COUNT III)**
**(MEDICAL, NURSING AND HEALTHCARE MALPRACTICE, AND BREACH OF CONTRACT)**

Plaintiffs incorporate herein by reference the allegations in the above paragraphs.

47.    The Defendants and their physicians, nurses agents and employees, undertook for compensation to attend to detainee and Decedent and to render appropriate and necessary medical care, diagnosis, treatment and advice to her.

48.   That, during the course of said medical care and treatment rendered by Defendants, their agents, contractors and employees, Defendants were negligent in that they departed from that degree of skill and care normally possessed and exercised by physicians, clinics, nurses, pharmacists, and other healthcare professionals in the same or similar circumstances. Illustrations of such negligence, cited by way of example, but not by way of limitation, include:

a.    Inappropriately denying access to medical doctors, diagnostic equipment, care and treatment while Decedent was detained for 38 days in Defendants' custody.

b.    Nurses inappropriately performing medical examinations, taking histories from the patient, failing to use proper diagnostic machines, methods and techniques, improperly "diagnosing" medical conditions, and prescribing or administering medications all of which Defendants knew or should have known was unsafe and life threatening to Decedent.

c.    Inappropriately failing provide certified translators to deal with and communicate with Latino detainees and patients in need of healthcare. Ignoring Decedent's complaints and repeated requests for medical care, better medication for the headaches. Ignoring

16

Decedent's screams, pain, and cries for help in her cell block, heard and witnessed by her cellmate and adjacent inmates in the "pod." Dismissing Decedent as being "hysterical" when she was crying for help Defendants witnessed her at 4:00 p.m., with worsening symptoms and ignoring the grave and life threatening signs of hydrocephalus, brain infection or brain trauma.

d.    Although medical personnel were aware that Ms. Inamagua was suffering from hydrocephalus, and had complained of extreme head pain followed by unresponsiveness, medical personnel kept her in the jail for "observation" so that she did not receive an emergency ventriculostomy to relieve increasing intracranial pressure resulting from hydrocephalus, until many hours later.

f. Negligently failing to warn Decedent, her family, and visitors, that her family history, medical history, country of origin, severe headaches, "rash", weight loss, "knot or bump on her head," and other symptoms and indicators of neurocysticercosis and hydrocephalus were life threatening conditions, which could not simply be treated with ibuprofen, ice packs and observation.

g. Negligently failing to follow the Agreements and standards between ICE, and Ramsey County as to healthcare and detention standards.

49.    That, at all times material hereto, the Defendant Ramsey County, was and is vicariously responsible for the actions or inactions of Defendant County officials, jail doctors, head nurse, jail nurses, correctional officers and unnamed or unidentified County Defendants.

50.    That, as a direct and proximate result of the negligence of the Defendants, and each of them, their agents and employees, in departing from the application degrees of skill and care, Maria Iñamagua Merchan died of head injuries and neurocysticercosis which became symptomatic while she was incarcerated and detained by Defendants.

17

Medical experts will attribute the cause of death to brainstem herniating, caused by severe intracranial pressure produced by hydrocephalus, resulting from cysticercosis. See Affidavit of No Expert Reviewed of Christopher R. Walsh, dated April 9, 2009 attached hereto as **Exhibit B**.

51.     That, as a proximate result of the negligence of the Defendants, their agents and employees, resulting in the death of the Decedent, her spouse, child, next of kin and heirs were caused the loss of her aid, comfort, support, and otherwise sustained special damages, medical bills, excessive medication and treatment charges, breach of contract damages, funeral expense and pecuniary loss, all to their detriment in a sum undetermined at this time.

## (COUNT IV)
### Wrongful Death-Negligent Hiring, Retention and Supervision

Plaintiffs reallege the above allegations as if hereinafter set forth in full and further states and alleges as follows:

52.     Defendants the United States and its Agencies and subdivisions, and Ramsey County and its agencies and subdivisions, as the employers of, or contractors over the Ramsey County Defendants, had a duty to exercise reasonable care in the oversight, monitoring, training and supervision of employees of the Ramsey County Adult Detention, Ramsey County Sheriff's and Department of Health Employees.

53.     Defendants breached this duty by, among other things, failing to exercise reasonable care in the training and supervision of employees assigned to the jail in the provision of treatment and medical care to detainees and inmates who exhibited a serious need for medical care such as did Ms. Inamagua Merchan as described above.

18

54.     That, as a direct and proximate result of the negligence of the Defendants, their agents and employees, in departing from the application of degrees of skill and care, Maria Iñamagua Merchan suffered from symptoms of neurocysticercosis during her detainment beginning on February 24, 2006, which went undiagnosed and untreated, caused hydrocephalus and other symptoms, become dizzy and fall sustaining a head injury on April 3, 2006, which was also negligently misdiagnosed and treated, and was denied medical treatment for at least five hours, causing fatal swelling of the brain, whereupon she became brain dead, and died on or about April 12, 2006.

55.     That, as a proximate result of the negligence of the Defendants, their agents and employees, resulting in the death of the Decedent, her next of kin, heirs, husband and daughter, were caused the loss of her aid, comfort, support, and otherwise sustained special damages, medical bills, funeral expenses, and pecuniary loss, all to their detriment in a sum undetermined at this time.

**(Count V)**
**Federal Tort Claims Act**

Plaintiffs reallege the above allegations as if hereinafter set forth in full and further states and alleges as follows:

56.     This claim is brought by Plaintiff against Defendant United States of America for actions undertaken by the Department of Homeland Security, ICE, individual Defendants and Unnamed Defendant agents all acting within the scope of their employment and/or duties, which were intentional, negligent or wrongful acts or omissions for which they are liable under 28 U.S.C. 2671 et. seq.   This an action for injury, property loss and death caused by the negligent and wrongful acts and omission of any employee of the Government under 28 U.S.C. § 1346(b).

57.     The Ramsey County officials and employees were also acting on behalf of a federal agency in an official capacity when they received and detained Ms. Inamagua Merchan and other federal detainees.

58.     Defendant Baniecke, the unnamed ICE agents involved at all times represented that they were acting within the scope and authority of their employment and/or duties and in accordance with approved policies of the Department of Homeland Security, Immigration and Customs Enforcement and pursuant to their training and experience as agents of ICE.

59. Plaintiff alleges that the acts of the ICE agents were performed pursuant to ICE policy that is illegal and unconstitutional. Alternatively, plaintiff alleges that if such actions were not carried out pursuant to ICE policy, the actions of such agents were the result of inadequate, improper and/or negligent training and supervision by officials of the ICE.

The aforementioned acts and omissions of the United States of America, through the actions of the individual ICE agents, acting within the scope of their employment, and/or duties, constituted assault, battery, false imprisonment, invasion of privacy, and negligent and reckless infliction of emotional distress. The aforementioned acts and omissions of the U.S. through defendant ICE as employers of the individual ICE agents, in permitting the individual ICE agents to act as set forth herein, whether pursuant to ICE policy or otherwise were the result of the negligent hiring, retention, supervision, and/or improper training of the individual ICE agents that proximately caused injury to plaintiff.

60.     Plaintiffs have exhausted all administrative preconditions to the filing this legal claim. In compliance with the requirements of the Federal Tort Claims Act, Plaintiff has filed an administrative claim for relief with the U.S Department Homeland Security, U.S. Immigration and Customs Enforcement and U.S. Office of the Inspector General, on April 14,

2008. **See Attached Exhibit C**. This claim was denied on by letter dated October 9, 2008. However, the letter did not constitute proper or timely notice as it was not sent by registered or certified mail. Further, Plaintiff's counsel did not receive timely or actual notice letter denial until October 17, 2008. See date stamp, Id. The letter was mailed to the former address of Plaintiffs' attorney and on information and belief was forwarded to his correct address by the U.S. Mail. Further the six-month notice rule is subject to equitable tolling because of government misconduct, and other grounds. Defendants withheld FOIA request responses, Homeland Security Investigation Reports, medical records and other documents and information needed to prepare this Complaint.

## (COUNT VI)

### Bivens Claim--Equal Protection Violation (Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution)

61.     This is a claim for violation of the Fifth and Eighth Amendments to the United States Constitution and for a denial of equal protection of law under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388 (1971), in which the United States Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.

62.     The Defendants violated the Fifth, Eighth and Fourteenth Amendments the United States Constitution by targeting immigrants and particularly Latinos, who speak a foreign language, for lengthy detention in facilities that are ill equipped to handle aliens, a denial of healthcare and detaining them in jails even when they suffer from life threatening medical conditions and need urgently to go to a hospital, and be seen by medical doctors and emergency

21

healthcare personnel. This amounts to cruel and unusual punishment and an unlawful and unequal treatment of Latino detainees and inmates.

63. There is no compelling governmental interest in the use of race and national origin to determine if prisoners need medical care, or to cruelly exclude them from medical care. There is no compelling interest in allowing white, native-born, English-speaking detainees and prisoners to communicate with healthcare professionals in their own language, to request medical care, and to receive medical care, but not allowing deportees and federal detainees the same access. The native-born, English-speaking inmates housed during the time Decedent was at Ramsey County, were mainly held for a few days, and were allowed to communicate their requests for medical treatment. Further after being released, native born inmates or releasees can go to any doctor or emergency room they choose. Meanwhile Decedent, who was detained 38 days until her death, while Defendants continuously denied her a doctor.

64. The Federal government may detain removable aliens only for the time reasonably necessary to effect the removal, in some cases six months or more. The conditions of being housed in this manner, were cruel and unusual punishment, unreasonable detention, and a discriminatory denial of equal protection of law.

65. Being denied Spanish speaking translators, being denied the help of family and friends who repeated Ms. Inamagua's pleas for medical attention over the headaches and other symptoms was unlawful detention and cruel and unusual punishment under the Fifth and Eighth Amendments.

66. Nurses and guards saying its just a "small bump," she seems "okay," and let's "observe her for 24 hours," while Decedent was suffering from clear symptoms of

hydrocephalus, and an infection of the brain was cruel and unusual punishment, unlawful detention and a denial of equal protection and due process of law.

67.    Defendants violated Plaintiff's rights under the Equal Protection component of the Due Process Clause of the Fifth, Eighth, Fourteenth, and other Amendments by singling her out for unfavorable treatment not accorded similarly situated northern European, native-born English speaking inmates. These standards are applied to the United States and its employees under the Due Process Clause of the Fifth Amendment. As a direct result of the unlawful acts of defendants, Decedent suffered injury and death.

68.    Because Plaintiff's death was caused by these violations and wrongs, she is unable to voice her own request for declaratory and injunctive relief to stop the ongoing violations and practices of Defendants alleged herein.  In 2007 at Ramsey County Adult Detention, of 43 federal detainees, only ten were given a physical exam, and those were after the first forty days of confinement.  That would have been too late for Ms. Inamagua.

69.    Plaintiffs' Decedents are Latino's who have standing as they are at risk to be subjected to the same racial and ethnic profiling, discriminatory treatment, denial of equal protection, and constitutional rights, unlawful detention and cruel and unusual punishment, as was the Decedent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for entry of Judgment against Defendants jointly and severally and award relief in an amount in excess of seventy-five thousand dollars ($75,000.00) as follows:

A.    Compensatory damages in an amount supported by the evidence at trial;

B.   Loss of services, consortium, aid, comfort and society, and companionship in an amount supported by the evidence at trial;

C.   Past medical care, autopsy, and funeral expense according to proof;

D.   Past and future loss of income and earning to proof;

E.   Funeral, mortuary, transportation and burial expenses;

F.   Pecuniary damages according to Minnesota Wrongful Death Statute;

G.   An award of punitive damages against each Defendant in a just and proper amount pursuant to 42 U.S.C. § 1983 and the FTCA;

H.   An order Declaring that the Defendants have violated the guarantees due process of law and equal protection of the laws of the United States and the Fifth and Fourteenth Amendments to the United States Constitution;

I.   A order permanently enjoining and prohibiting the Defendants from engaging in the discriminatory practice of denying Hispanic and Latino inmates and federal detainees their civil rights, including medical care, translators, access to hospitals, clinics and emergency medical personnel based on probable cause described herein and to retain jurisdiction of this case to monitor implementation of the injunction entered against the Defendants;

J.   An award of Plaintiffs' reasonable costs attorney's fees pursuant to 42 U.S.C. § 1988;

K.   An award of attorneys fees, pre-judgment and post-judgment interest and costs and disbursements of suit as provided by law; and

L.   Awarding Plaintiffs their costs and disbursements incurred herein.

24

M.   Such other legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs and demand a trial by jury on all issues and claims presented herein pursuant to the Seventh Amendment to the Constitution of the United States.

**WALSH LAW FIRM**

Date: 4-10-09

By: Christopher R. Walsh (#199813)
Fifth Street Towers
100 South Fifth Street, Suite 1025
Minneapolis, MN 55402
Tel.: 612-767-7500
***Attorney for Plaintiffs***

## ACKNOWLEDGMENT

The allegations in this Complaint are well grounded in fact and are warranted by existing law or a good faith argument for its extension, modification or reversal. Plaintiffs bring this Complaint in good faith and not for any improper purposes. Plaintiffs acknowledge that costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties to this litigation should the Court find this pleading in violation of Minn. Stat. § 549.21, subd. 2.

WALSH LAW FIRM

Date: 4-10-09

By: Christopher R. Walsh (#199813)
Fifth Street Towers
100 South Fifth Street, Suite 1025
Minneapolis, MN 55402
Tel.: 612-767-7500
*Attorney for Plaintiffs*

26

# CHRISTOPHER R. WALSH

### ATTORNEY AT LAW

FIFTH STREET TOWERS
100 SOUTH FIFTH STREET, SUITE 1025
MINNEAPOLIS, MINNESOTA 55402

LICENSED TO PRACTICE IN:
MINNESOTA, COLORADO
AND WASHINGTON, D.C.

TELEPHONE: (612) 767-7500
FACSIMILE: (612) 677-9300

TOLL FREE: (866) 333-1529
EMAIL: walshlawfirm@comcast.net
WEBSITE: www.walshlawfirm.com



April 10, 2009

HAND-DELIVERED

Court Administrator
United States District Court
202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415

Re:     Patricio Flores and Jose Encalada, Co-Trustees and Personal Representatives for the next of kin of Maria Inamagua Merchan v.  U.S. Department of Homeland Security, Immigrations and Customs Enforcement ("ICE"); County of Ramsey, Minnesota; Ramsey County Adult Detention Center; Ramsey County Sheriff's Dept., Ramsey County Department of Health; et al.
U.S. District Court File No._____

Dear Court Administrator:

Enclosed for filing in the above-entitled matter, please find the following:

1.      Summons;
2.      Original Complaint;
3.      Civil Cover Sheet; and
4.      Filing fee of $350.00.

Please file-stamp the Summons and the enclosed courtesy copy of the Complaint. We will then use this Summons to serve the multiple Defendants in this action.

Very truly yours,

Christopher R. Walsh

CRW/tpk
Enclosures

c:      Patricio Flores
        Jose Encalada