# CHRISTOPHER R. WALSH

### ATTORNEY AT LAW

FIFTH STREET TOWERS
100 SOUTH FIFTH STREET, SUITE 1025
MINNEAPOLIS, MINNESOTA 55402

LICENSED TO PRACTICE IN:
MINNESOTA, COLORADO
AND WASHINGTON, D.C.

TELEPHONE: (612) 767-7500
FACSIMILE: (612) 677-9300

TOLL FREE: (866) 333-1529
EMAIL: walshlawfirm@comcast.net
WEBSITE: www.walshlawfirm.com

August 27, 2009

**HAND DELIVERED**

**Gregory Harold Salmi, M.D.,**
4516 Edina Blvd, Minneapolis, MN 55424.

Or

Gregory Salmi, M.D., Fairview Southwest Clinic, 6545 France Ave S, Ste. 586, Minneapolis, MN 55435

RE: <u>Patricio Flores and Jose Encalada, et al v. United States of America, Ramsey County, et al</u>, U.S. District Court File No. 09 CV838

<u>Defendant(s) Served Herewith</u>: Gregory Salmi, M.D., identified in the Summons and Complaint as Drs. John Doe or Jane Does I-V—Unidentified Jail or Contract medical doctor for the Ramsey County Jail, Individually and in his capacity as Officer or Managing Agent of Defendants, including Advanced Practice Solutions.

Dear Dr. Salmi:

I represent the Plaintiffs in the above lawsuit. **My interests are adverse to yours, so please do not contact me. Please seek an attorney and provide them this letter and the enclosed materials. This letter is not intended to give legal advice, nor to contact a represented party.** We learned after we filed this lawsuit that you were one of the physicians responsible for the healthcare and treatment of Maria Inamagua Merchan. The above lawsuit was commenced by filing in U.S. District Court on April 10, 2009. The Complaint contains causes of action against you and your principal, employer, contractor, or employer, Advanced Practice Solutions, P. A., the Ramsey County Department of Health, Ramsey County and/or several other defendants.

Pursuant to Fed. R. Civ. P. 4(h)(1), **enclosed and personally served upon you and your principal, Advanced Practice Solutions, P.A.,** please find:

1. Summons and Complaint in the above-entitled matter with attached Exhibits A-C.

About three years ago, my office gave proper notice to Ramsey County and the United States that I was investigating a lawsuit and legal claims on behalf of my client, Patricio Flores, and the



EXHIBIT
C

heirs of Maria Inamagua Merchan (deceased). We made Freedom of Information Act ("FOIA") and Government Data Practices Act requests that have still not been answered. We requested medical records, jail records, federal detention records, investigation records and any documents or evidence relating to this case and the death of Maria Inamagua Merchan, a federal detainee at Ramsey County Adult Detention center. We specifically requested all medical records and the identity of all medical personnel, doctors, nurses, who provided healthcare, or denied healthcare to Ms. Inamagua Merchan. Unfortunately, the County and the Federal authorities who received our complaints and information requests did not identify all of the medical personnel, doctors, nurses, hospitals, clinics, and entities who may be liable as defendants in the above lawsuit. These acts and omissions, whether intentional concealment or not, were at least a "mistake concerning the proper party's identity" under Fed. R. Civ. P. 15(C)(1)(ii). The unidentified defendants knew or should have known of Ms. Inamagua's death and that an action would have been brought against them but for the "mistake." See, Id.

Because the defendants and entities in custody and control of Ms. Inamagua Merchan and her medical records, did not timely identify all doctors, nurses, medical clinics, or healthcare "placement services," the Plaintiffs were not able to correctly identify all Defendants by name in the caption of the enclosed Summons and Complaint. There, and in the body of the Complaint, we referred to "XYZ Family Practice Clinic" (which we now believe is Advanced Practice Solutions) and various "Drs. John Doe or Jane Doe" defendants, including yourself. This is allowed under Fed. R. Civ. P. 15, so that we can amend the enclosed Complaint, conform to the evidence, add new claims and correctly identify individual defendants at a later date. The amendments to the Complaint will relate back to the time of filing, April 10, 2009 for statute of limitations purposes.

After the lawsuit was filed, the Ramsey County Attorneys office finally identified Advanced Practice Solutions, P.A., and Gregory H. Salmi, M.D., as being involved in the care and treatment of Ms. Inamagua Merchan. They produced additional medical or jail records that listed your name. They wrote me stating they do not represent Dr. Salmi. Today, I also contacted Ms. Barbara Zurek of the law firm of Meagher & Geer, which is representing Advanced Practice Solutions. I asked if she was representing you (Dr. Salmi) and she said, not yet. She also declined to accept service of a Summons and Complaint on your behalf. Therefore, I am providing you this letter, Summons, Complaint and Exhibits A-C, so that you can forward and tender these materials and inquiries to your insurance carrier(s) and any attorney that you retain. Please identify any other persons or entities involved in the healthcare and detention of Ms. Inamagua, pursuant to Minnesota Statutes, Chapter 13 Minnesota Data Practices Act ("MDPA"), HIPPA laws, Minn. Stat. Sec. 144.651. We have already provided a medical authorization to Advanced Practice Solutions.

Sincerely,

Christopher R. Walsh

Enclosures

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____

Patricio and Jose
Flores and Encalada et al.

V.

United States of America,
Ramsey County, et al

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 09cv838   )MC/SRN

TO: (Name and address of Defendant)

Gregory Harold Salmi, M.D.,
4516 Edina Blvd, Minneapolis, MN 55424

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher R. Walsh
Attorney at Law
Fifth Street Towers
100 South Fifth Street, Suite 1025
Minneapolis, MN 55402          Tel.: 612-767-7500

an answer to the complaint which is herewith served upon you, _____60_____ days after service of this
within summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

RICHARD D. SLETTEN
_____     04/10/2009
CLERK                         DATE

_____
(By) DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Case Type: Civil Rights/    Wrongful
Death/Medical Malpractice

Patricio Flores and Jose Encalada,
as Co-Trustees and Personal Representatives
for the next of kin of Maria Iñamagua Merchan,

Court File No. _09cv 838  JMR/SRN_

Plaintiffs,

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

The United States of America; The U.S. Department
of Homeland Security, Immigrations and Customs Enforcement ("ICE");
Scott Baniecke, individually and in his official capacity as
Field Officer, ICE; an Unknown Number of Unnamed
and Unknown Agents of ICE; The County of Ramsey, Minnesota;
Robert Fletcher, individually and in his official capacity
as Sheriff of Ramsey County; Ramsey County Adult
Detention Center; Ramsey County Sheriff's Department;
Robert Fletcher--Ramsey County Sheriff; Ramsey County
Department of Health; Robert W. Fulton--Director of Ramsey
County Department of Health; "XYZ" Family Practice Clinic,
Ramsey County Adult Detention "Family Practice Clinic" and
Unidentified Medical Clinics I-V; Drs. John Doe or Jane Does I-V--
Unidentified Jail or Contract Medical Doctors; Robert Moxley-
Goldsmith, individually and in his capacity as Head Nurse;
Erika Thompson, R.N., individually and in her capacity as Jail Nurse;
Chris Strand, individually and in her capacity as Jail Nurse; Kelli LNU,
--Unidentified Jail Nurse; John Roe or Jane Roes—Unidentified
Jail Nurses I-V; Mary Roby, individually and in her capacity
as Ramsey County Housing Sergeant; Jill Jones, individually and
in her capacity as Ramsey County Corrections Officer; T. Bennet,
individually and in his capacity as Ramsey County Corrections Officer;
Cheryl Caumiant, individually and in her capacity as Ramsey County
Corrections Officer; John Poe or Jane Poes I-V--Unidentifed Ramsey
County Sheriffs, Deputies, Correctional Officers and Guards,

Defendants

1

SCANNED
APR 13 2009
U.S. DISTRICT COURT MPLS

Plaintiffs Patricio Flores and Jose Encalada, as Co-trustees for the next of kin of Maria Iñamagua Merchan, allege and state on information and belief as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action for compensatory damages and declaratory and injunctive relief, costs, attorney fees and other damages regarding Defendants' negligence, medical and nursing malpractice, civil rights violations, violations of statute and common law torts, which wrongfully caused the death of Maria Iñamagua Merchan. Plaintiffs contend that while Ms. Merchan was in the custody of the Department of Homeland Security at the Ramsey County Adult Detention Center, Defendants, in both their individual and official capacities, each demonstrated a deliberate indifference to Decedent's serious medical needs. The Defendants' deliberate actions and omissions resulted in Decedent being subjected to cruel and unusual punishment in violation of the protections guaranteed by the Eighth and the Fourteenth Amendments to the United States Constitution.

2.      Plaintiffs maintain that the deprivations and violations of the Decedent's constitutional rights were carried out pursuant to the rules, regulations, customs, policies and practices of Defendants in their official capacity and the named Defendants, acting under color of state law, knowingly caused Ms. Iñamagua Merchan to be deprived of her federal constitutional rights.

3.      Plaintiffs request this Court to declare that the acts and omissions by Defendants were unconstitutional under the United States Constitution, and by an award of compensatory damages, compensate Plaintiffs and the heirs and next of kin of Decedent for the violation of Ms. Iñamagua Merchan's constitutional and other common law rights and deter the Defendants from further participation in such unconstitutional acts and omissions.

2

## PARTIES

4.    Plaintiff Patricio Flores is the husband and widower of Maria Iñamagua Merchan (hereinafter referred to as "Decedent" or "Plaintiffs' Decedent"). Jose Encalada is the uncle, by marriage, of Decedent. Mr. Flores and Mr. Encalada (hereinafter referred to as "Plaintiffs") serve as the duly appointed Co-trustees for the next of kin of Decedent. The Order dated April 8, 2009 appointing Patricio Flores and Jose Encalada as trustees for the next of kin of Decedent is attached herewith as **Exhibit A.**

5.    Decedent Maria Iñamagua Merchan was for some of the time relevant to this action, a resident at 2748 Chicago Avenue, in the City of Minneapolis, County of Hennepin, State of Minnesota. Decedent was at other times relevant to this action residing at the U. S. Immigration and Customs Enforcement facility at 2901 Metro Drive, Suite 100, in the City of Bloomington, County of Hennepin State of Minnesota 55425. Decedent was at other times relevant to this action residing at the Ramsey County Adult Detention Center, 425 Grove Street, in the City of St. Paul, County of Ramsey, State of Minnesota 55425.

6.    She was born on November 19, 1975 in Checa Cuenca, Equador. She died on or about April 12, 2006 in Ramsey County, Minnesota, from a head injury and nuerocysticercosis, as a result of the negligence, failure to diagnose, denial of adequate medical care and treatment, and other torts and civil rights violations committed by Defendants as alleged herein. Decedent was a member of a protected class (National Origin, Equador, Hispanic/Native American)

7.    Defendant Ramsey County is a municipal corporation and a political entity and is sued as the governing body over the Ramsey County Law Enforcement Center and/or Ramsey County Sheriff's Department Detention Division, and as the employer of Sheriff Robert Fletcher, and the

3

employer of the individual "County Employee Defendants," including the above identified Ramsey County Employees and the unidentified "Doe," "Roe" and "Poe-I-V" Defendants.

8.    Defendant Sheriff Robert Fletcher is employed as, and acting in his official capacity as member of the Ramsey County Sheriff's Department in the capacity of a sworn Police Officer, and/or acting as an agent for the county of Ramsey, State of Minnesota. Defendant Fletcher is sued in both his personal, individual and official capacity.

9.    Defendants who are Ramsey County Sheriff's Department/Adult Detention Division Officers, some of whom are identified, including Ramsey County Corrections Officers, Jill Jones, T. Bennet, and Mary Roby, and Cheryl Caumian and some not identified but who are being sued as unidentified parties, as the Doe, Roe and Poe I-V Defendants, are natural persons, and upon information and belief, are residents of the State of Minnesota. At all times relative to this Complaint, Officers Roe and Nurses Doe were employed by and acting in their capacity as Officers and Nurses of Defendants. On information and belief, Defendant Officers and Nurses were entrusted with responsibility regarding the provision of health and medical services to persons in the custody of the Ramsey County Adult Detention Center and were charged with the responsibility to ensure that all prisoners and detainees under their jurisdiction received timely and adequate medical care and treatment

10.    Defendants "XYZ" Family Practice Clinic or Jail Family Practice Clinic, upon information and belief is a clinic in charge of the healthcare services provided at the Ramsey County Adult Detention Center. It may employ or have contract or supervisory relationships with jail doctors, persons who issued "M.D. Orders" failed to perform medical screenings and physical exams on Decedent. Ramsey County sends its inmates and detainees who need emergency care or hospitalization to Regions Hospital. Upon information and belief, Regions

4

Hospital did not treat the Decedent until April 3, 2005, after her medical conditions had been neglected for 38 days by Defendants and her hydrocephalus condition had been neglected for 6 or more hours on April 3, 2006. Plaintiffs requested all jail and medical records in 2006, but did not receive them, and so reserve the right to amend this Complaint to name any hospitals, clinics or doctors who treated

11.    Defendant Ramsey County in connection with its activities, employed the services of physicians, including but not limited to, the jail doctors, nurses, and other professional and non-professional employees, and held them out and warranted them to the public as competent and experienced in the care, diagnosis, and treatment of patients including Decedent.

12.    Defendant Ramsey County Department of Health is a political subdivision of Ramsey County, which has clinics, pharmacies, and employs or pays independent contractors to provide the services of medical doctors, registered nurses, licensed practical nurses, pharmacists, pharmacy technicians, and other professional and non-professional employees, and held them out and warranted them to the public as competent and experienced in the practice of medicine, nursing, pharmacy care, diagnosis, and treatment of patients. Upon information and belief, the Ramsey County Department of Health provides support and services to the Ramsey County Sheriff's Department and the Ramsey County Adult Detention Center.

13.    Defendant Department of Homeland Security ("DHS") was established as an executive department of the United States by the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), which abolished the Immigration and Nationality Service, ("INS") and transferred its responsibilities to bureaus with DHS.

14.    Defendant Scott Baniecke is the Supervisor of Detention and Removal, for Immigration and Customs Enforcement ("ICE"). ICE is a division within the U. S. Department of Homeland

5

Security ("DHS"). Mr. Banieck and the unnamed Federal Defendants are officers or employees of the United States or any agency thereof acting in their official capacity or under color of legal authority, or an agency of the United States.

15. The other named individual "Federal Defendants," as well as the unknown and unnamed individual Defendants, at all times relevant to this complaint, were employed by the United States, through the Department of Homeland Security and ICE. When the names of the unknown and unnamed Defendants are ascertained, Plaintiffs will seek leave to amend their complaint to indicate the true names.

16. All Defendants were responsible to provide adequate healthcare to Decedent as all Defendants were Plaintiff's immediate custodians during the time she was held for deportation.

## JURISDICTION

17. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (a) (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff invokes the supplemental jurisdiction of this Court to hear and decide claims arising under Minnesota law.

18. This action, as against the United States of America, also arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2401, 2671-2680. Exclusive jurisdiction of FTCA claims rests with the United States District Courts under 28 U.S.C. § 1346(b)(1).

19. Jurisdiction of the state law claims derives from principles of pendent and supplemental jurisdiction under 28 U.S.C. § 1367, Minnesota Common Law, and Minnesota Statutes including tort actions for wrongful death and negligence under Minn. Stat. § 573.02. Upon information and belief, some of the above individual Defendants are citizens or residents

6

of states other than Minnesota, therefore diversity jurisdiction (28 U.S.C. § 1332) allows Plaintiffs to sue the non-federal Defendants in U.S. District Court as joint tortfeasors under the Federal Tort Claims Act.

20.      Jurisdiction of the federal law claims is based on Title 28 U.S.C. §§ 1331, 1334(3), 1343, and 1346(b)(1).

21.      Some of the Defendants are agencies of the United States, or the individual Defendants reside in Hennepin County and Ramsey Counties, doing business in counties throughout the State of Minnesota or States of the United States of America. Venue is founded in this judicial district based on 28 U.S.C. §§ 1391(e) and 1402, as a substantial part of the acts complained of occurred in this District. Therefore, venue is proper in the United States District Court, District of Minnesota, in the City of Minneapolis.

## FACTUAL BACKGROUND

Plaintiffs incorporate herein by reference the allegations in the above paragraphs.

22.      Plaintiff, Patricio Flores, and Decedent, Maria Iñamagua Merchan, were married on August 1, 1999, in Minneapolis, Minnesota. They resided in Hennepin County Minnesota, with their daughter, Joanna Flores, a minor child who was born in Hennepin County, Minnesota.

23.      As of February 2006, Maria was a healthy 30-year-old woman who had never been hospitalized other than for the birth of her only child, Joanna Flores. She spoke no English and was a native Spanish speaker.

24.      The Immigration and Nationality Act authorizes ICE to arrest, detain, and remove certain aliens from the United States under 8 U.S.C §§ 1226, 1227, 1229, 1229(a) and 1357. ICE

7

has Detention Operations Manuals, Detention Standards and healthcare policies that relate to all federal detainees.

25.      On or about February 24, 2006, the U.S. Department of Immigrations and Customs Enforcement, arrested Decedent and transferred her to Ramsey County Adult Detention Center which photographed and booked here. Upon information and belief, neither ICE nor Ramsey County gave her any initial medical screening, physical examination or medical examination.

26.      ICE had entered into an intergovernmental service agreement with Ramsey County (hereinafter "Agreement") to house ICE detainees until they are either deported or released. This contract, on information and belief, contains various terms whereby the Ramsey County Sheriff's Department, Jails and the Adult Detention Center would house federal prisoners accused of immigration violations.

27.      ICE policies, contracts and agreements require medical screening of new arrivals, including an initial medical, dental, and mental health screening which "shall be done within 12 hours of arrival by a health care provider or a detention officer specially trained to perform this function. ICE and its detention partner, Ramsey County had duties of care towards Decedent which they breached causing her death.

28.      The medical screening shall inquire into the following: Any past history of serious infectious or communicable illness, and any treatment or symptoms; Current illness and health problems, including communicable diseases. Defendants failed to perform or failed to reasonably perform any medical screening on Ms. Inamagua Merchan.

29.      ICE and/or ICE detention partners are supposed to make observation of body deformities and other physical abnormalities. In the Department of Homeland Security Report of

8

June 2008, the inspector general concluded in relation to the Inamagua case, "Facility information we examined included a head trauma protocol. This document justified the detainee's expedited transportation to the hospital after a nurse observed that the detainee was dizzy and confused. Additionally, the detainee did not receive a physical exam, which ICE medical standards require within 14 days of intake." Defendants breached these duties of care, causing the death of Ms. Inamagua Merchan.

30. Cysticercosis is an infection caused by the pork tapeworm, Taenia solium. Infection occurs when the tapeworm larvae enter the body and form cysticerci (cysts). When cysticerci are found in the brain, the condition is called neurocysticercosis. Symptoms of neurocysticercosis depend upon where and how many cysticerci (often called lesions) are found in the brain. It is the most common parasitic infection worldwide.

31. The governmental Defendants including ICE, Ramsey County Sheriff's Office, and others knew or should have known that this disease is common in immigrant populations, particularly those from Latin America.

32. Defendants knew or should have known that if undiagnosed or not treated, neurocysticercosis can be fatal. Defendants knew or should have known, even before Ms. Inamagua Merchan, was arrested and detained by ICE that the federal detainees (particularly Latinos, Hispanics, and those from Mexico, Central and South America) which they were holding were at risk for symptoms of neurocysticercosis, but routinely failed to do any medical screening, physical examinations or testing for this disease.

33. On or before February 24, 2006 including Defendants knew or should have known that Ms. Inamagua Merchan was at risk for having the disease of neurocysticercosis. ICE had other federal detainees, prior to Ms. Inamagua, which on information and belief suffered

9

from this and other diseases common in the "Third World" diseases which caused death. From Another way ICE should have detected the disease would have been "to ensure that questions related to cysticercosis are asked during the initial health assessment and the 14-day physical exam." "Greater efforts to recognize nuerocysticercosis may have expedited the care the detainee received." Inspector General report. Defendants breached these duties of care causing Decedent's death.

34.        Symptoms of cyticercosis can occur months to years after infection, usually when the cysts are in the process of dying. When this happens, the brain can swell. The pressure caused by swelling is what causes most of the symptoms of neurocysticercosis. Headaches, and seizures are the most common symptoms of neurocysticercosis. Lumps developing under the skin, nodules on the skin or a "rash" are also symptoms of cysticerci. A cyst or lesion which develops and becomes hardened in the brain, may be asymptomatic, may not require treatment with anti-parasitic drugs, and the patient may still live a long life with this disease.

35.        On the other hand, more cysts or lesions, left undiagnosed and untreated, can cause more serious symptoms such as confusion, lack of attention to people and surroundings, difficulty with balance, swelling of the brain (called hydrocephalus) and can result in death.

36.        On or about March 5, 2006, the Ramsey County Adult Detention Center indicated in medical notation in its Progress Notes for Decedent: "Inmate reports that she has a history of migraine headaches __ relieve by Tylenol or ASA. Will schedule evaluation with f/D–E Thompson, R.N." Upon information and belief, no such evaluation was performed of Decedent. Later, the Inspector General reported that better review of medical exam timeliness is needed ICE's medical care detention standards require facilities to conduct appraisal and physical examination on each detainee within 14 days of the detainee's arrival at the facility. This exam

10

is designed to gather details about a detainee's health beyond the screening questions asked. Defendants breached these duties of care causing Decedent's death. Ms. Inamagua and her family repeatedly asked for doctors, medication, and treatment, but Defendants "screened out," ignored these reports and displayed deliberate indifference to the civil rights of Decedent. Decedent called her sister Theresa, told her she was "dying from head pain" and asked Theresa to tell the jail. Theresa and other family members did so, but their reports and complaints were ignored.

37.    Aurora Inamagua, Decedent's mother, was also a cellmate of Maria. Aurora had the same disease of neurocysticercosis, but was diagnosed and treated by other parties and survived the condition. Defendants knew or should have known that Decedent's family member, also a cellmate had this disease, and took medicine for it 3-4 times per day, but failed to act upon this information, or screen Ms. Maria Inamagua Merchan for the same disease.

38.    On or about March 23, 2006 Registered Nurse Strand wrote in the Progress Notes that "Inmate has a fine reddened rash on skin of lower extremities . . ." Nurse Strand wrote she would start her on Benadryl and Hydrocortisone cream and would "chartcheck to Family Practice Clinic." The Ramsey County Jail Nurse believed the rash was "probably secondary to pant uniform rubbing on skin." Upon information and belief Defendants failed to provide Decedent access to a medical doctor and hospital or clinic, for diagnosis or treatment of this condition or any other condition, complaint or request for medication.

39.    On or about March 31, 2006, Nurse Thompson wrote that the Inmate continued to complain of the rash and headache. Her "arms and lower extremities" had a "red, raised rash." Nurse Thompson wrote "complains of pruritis." For these symptoms along with the headaches, loss of weight, Defendants only "re-started" the "Bendadryl and Ibuprofen." Defendants failed

11

to diagnose, treat or provide a medical doctor for the parasitic infection in her body, for the headaches, and other associated symptoms of neurocysticercosis. Defendants referenced, "See M.D. orders," but upon information and belief never provided her with a basic medical evaluation, allowed her to see a physician, nor provided her with a translator to obtain an accurate history and explanation of symptoms from the patient, Maria Iñamagua Merchan. Defendants only occasionally provide her with over-the-counter medication and made several comments in the records that she seemed "okay."

40.      Defendants allowed jail nurses to attempt diagnoses, and in fact to misdiagnose and mistreat serious health conditions that resulted in Decedent, suffering severe headaches, becoming disoriented, dizzy, falling from her bunk bed, striking her head, and presenting with a "half a golf ball size lump" on the back of her head. The symptoms of headache, reports of a fall and head trauma, brain swelling, under the circumstances, should have alerted the correctional officers, nurses and jail staff, that Maria Inamagua Merchan urgently needed medical care on or before April 3, 2006.

41.      Defendants neglect of Ms. Inamagua Merchan from at least 2:30 p.m. on April 3, 2006 when Officer Caumiant saw that Decedent was "crying, holding her head in her hands," reported a fall from the bunk bed and a head injury, was cruel and unusual punishment and displayed deliberate indifference to her rights to medical care. Though she was crying and in obvious pain, Officer Caumiant only gave her a cold wash cloth and told her to wait for the nurse at 4:00 p.m. When Officer Jones saw Decedent had a knot on her head and was crying in pain she gave her an ice pack. Podmate Quinn Henson heard Ms. Inamagua crying and saw her holding her head as she walked down the stairs to the guard's desk but was told to get back in her cell and "you don't get anything 'till you see a nurse." Another inmate had to help her walk, but

12

Decedent was locked back in a cell and given no medical attention. Between 2:30 and 8:15 p.m., according to Ms. Henson, despite her worsening condition, "gray face, and eyes swollen shut," Defendants gave Ms. Inamagua no medical attention other than an icepack. The failure to diagnose and treat the neurocysticercosis and hydrocephalus despite her complaints and symptoms over more than a five-week period, and then over 6 hours on April 3, 2009 caused Ms. Iñamagua Merchan's death.

42.        Decedent's deteriorating health beginning in February 24, 2006, up to her fall on April 3, 2006, and her death on or about April 12, 2006, due to neurocysticosis, was a direct and proximate result of the negligent failure to diagnose and lack of proper medical screening, medical care, nursing care, emergency medical care and treatment by Defendants. On or about April 12, 2006, Ms. Inamagua Merchan was given an EEG which showed that she was brain dead. The autopsy dated April 14, 2006, showed Decedent had neurocysticercosis as the cause of death.

### (COUNT I)

#### (Denial of civil rights under U.S.C. section 1983)

Plaintiff restates and incorporates, by reference, all the preceding paragraphs of his Complaint and states as follows:

43.        The actions of the Defendants were taken under color of law with regard to Plaintiffs and constitute state action under "color of law" as defined by 42 United States Code § 1983.

44.        The actions of Defendants in failing to respond to her serious medical needs and in failing to recognize her symptoms and dire need of medical assistance constituted wrongful

13

and intentional acts intended to put Plaintiffs' Decedent in direct, imminent and immediate fear and danger, all to Decedent's harm, injury, and death and to Plaintiffs' loss.

45.     The actions of all the Defendants were unreasonable, constituted a deliberate indifference and disregard to Plaintiff's serious medical needs, violated Decedent's rights under the Eighth Amendment right to be free from cruel and unusual punishment, and were not the actions of reasonably well-trained employees, guards, officers and nurses and were actions which shock the conscience. Further, said actions violated well-established and clearly enunciated constitutional rights including but not limited to the right to be free from violations of due process, deprivation of liberty rights and interests, and the right to equal protection of the laws.

46.     The actions of Defendants were malicious, unreasonable, and so shocking to the conscience as to amount to a summary punishment of Decedent, and a clear violation of Decedent's due process rights under the Eighth Amendment to the United States Constitution and were not the actions of reasonably well-trained employees, guard, officers and nurses.

47.     As a direct and proximate cause of the grossly negligent, intentional, and unconstitutional acts of Defendants, Decedent suffered severe pain and death. Additionally, the Decedent's constitutional rights, including under the Fifth, Eighth, and Fourteenth Amendments, were violated and she has suffered and will suffer damages in an amount in excess of $75,000.

48.     Defendants, in each permitting the other Defendant to encourage, allow or permit the deliberate disregard and indifference to Decedent's serious medical needs and to otherwise violate the Decedent's clearly established constitutional rights, failed to take reasonable and required steps to prevent the other Defendants from violating the Decedent's constitutional rights although they had an official duty to do so.

14

48.     Plaintiffs state that the unconstitutional, negligent, reckless and heedless actions of all Defendants placed the Decedent in a zone or area of danger causing her to be subjected to great and actual risk of harm and loss of constitutionally-protected interests, including her life and liberty.

42.     Defendants maliciously and/or deliberately failed to take any and/or all reasonable steps or necessary precautions required to avoid or prevent the constitutional violations set forth in the other Counts of this Complaint, despite their clearly-established legal and constitutional duty to do so.

43.     As a direct and proximate cause of the deliberate, intentional, or unconstitutional acts of the Defendants, Decedent's constitutional rights, including under the Fifth, Eighth, and Fourteenth Amendments, were violated and Plaintiffs have suffered and will suffer damages in an amount in excess of $75,000.

(COUNT II)<br>(Negligence)

Plaintiffs incorporate herein by reference the allegations in the above paragraphs.

44.     Defendants owed Plaintiffs' Decedent duties of care as described herein.

45.     Defendants breached those duties of care proximately causing the worsening of her nuerocysticercosis, until it became life threatening and caused her death on or about April 12, 2006.

46.     As a direct and proximate cause of the deliberate, intentional, or unconstitutional acts of the Defendants, Decedent's constitutional rights, including under the Fifth, Eighth, and Fourteenth Amendments, were violated and Plaintiffs have suffered and will suffer damages in an amount in excess of $75,000.

15

(COUNT III)
## (MEDICAL, NURSING AND HEALTHCARE MALPRACTICE, AND BREACH OF CONTRACT)

Plaintiffs incorporate herein by reference the allegations in the above paragraphs.

47.     The Defendants and their physicians, nurses agents and employees, undertook for compensation to attend to detainee and Decedent and to render appropriate and necessary medical care, diagnosis, treatment and advice to her.

48.   That, during the course of said medical care and treatment rendered by Defendants, their agents, contractors and employees, Defendants were negligent in that they departed from that degree of skill and care normally possessed and exercised by physicians, clinics, nurses, pharmacists, and other healthcare professionals in the same or similar circumstances. Illustrations of such negligence, cited by way of example, but not by way of limitation, include:

    a.     Inappropriately denying access to medical doctors, diagnostic equipment, care and treatment while Decedent was detained for 38 days in Defendants' custody.

    b.     Nurses inappropriately performing medical examinations, taking histories from the patient, failing to use proper diagnostic machines, methods and techniques, improperly "diagnosing" medical conditions, and prescribing or administering medications all of which Defendants knew or should have known was unsafe and life threatening to Decedent.

    c.     Inappropriately failing provide certified translators to deal with and communicate with Latino detainees and patients in need of healthcare. Ignoring Decedent's complaints and repeated requests for medical care, better medication for the headaches. Ignoring

16

Decedent's screams, pain, and cries for help in her cell block, heard and witnessed by her cellmate and adjacent inmates in the "pod." Dismissing Decedent as being "hysterical" when she was crying for help Defendants witnessed her at 4:00 p.m., with worsening symptoms and ignoring the grave and life threatening signs of hydrocephalus, brain infection or brain trauma.

d.     Although medical personnel were aware that Ms. Inamagua was suffering from hydrocephalus, and had complained of extreme head pain followed by unresponsiveness, medical personnel kept her in the jail for "observation" so that she did not receive an emergency ventriculostomy to relieve increasing intracranial pressure resulting from hydrocephalus, until many hours later.

f. Negligently failing to warn Decedent, her family, and visitors, that her family history, medical history, country of origin, severe headaches, "rash", weight loss, "knot or bump on her head," and other symptoms and indicators of neurocysticercosis and hydrocephalus were life threatening conditions, which could not simply be treated with ibuprofen, ice packs and observation.

g. Negligently failing to follow the Agreements and standards between ICE, and Ramsey County as to healthcare and detention standards.

49.     That, at all times material hereto, the Defendant Ramsey County, was and is vicariously responsible for the actions or inactions of Defendant County officials, jail doctors, head nurse, jail nurses, correctional officers and unnamed or unidentified County Defendants.

50.     That, as a direct and proximate result of the negligence of the Defendants, and each of them, their agents and employees, in departing from the application degrees of skill and care, Maria Iñamagua Merchan died of head injuries and neurocysticercosis which became symptomatic while she was incarcerated and detained by Defendants.

17

Medical experts will attribute the cause of death to brainstem herniating, caused by severe intracranial pressure produced by hydrocephalus, resulting from cysticercosis. See Affidavit of No Expert Reviewed of Christopher R. Walsh, dated April 9, 2009 attached hereto as **Exhibit B.**

51.     That, as a proximate result of the negligence of the Defendants, their agents and employees, resulting in the death of the Decedent, her spouse, child, next of kin and heirs were caused the loss of her aid, comfort, support, and otherwise sustained special damages, medical bills, excessive medication and treatment charges, breach of contract damages, funeral expense and pecuniary loss, all to their detriment in a sum undetermined at this time.

## (COUNT IV)
### Wrongful Death-Negligent Hiring, Retention and Supervision

Plaintiffs reallege the above allegations as if hereinafter set forth in full and further states and alleges as follows:

52.     Defendants the United States and its Agencies and subdivisions, and Ramsey County and its agencies and subdivisions, as the employers of, or contractors over the Ramsey County Defendants, had a duty to exercise reasonable care in the oversight, monitoring, training and supervision of employees of the Ramsey County Adult Detention, Ramsey County Sheriff's and Department of Health Employees.

53.     Defendants breached this duty by, among other things, failing to exercise reasonable care in the training and supervision of employees assigned to the jail in the provision of treatment and medical care to detainees and inmates who exhibited a serious need for medical care such as did Ms. Inamagua Merchan as described above.

18

54.    That, as a direct and proximate result of the negligence of the Defendants, their agents and employees, in departing from the application of degrees of skill and care, Maria Iñamagua Merchan suffered from symptoms of neurocysticercosis during her detainment beginning on February 24, 2006, which went undiagnosed and untreated, caused hydrocephalus and other symptoms, become dizzy and fall sustaining a head injury on April 3, 2006, which was also negligently misdiagnosed and treated, and was denied medical treatment for at least five hours, causing fatal swelling of the brain, whereupon she became brain dead, and died on or about April 12, 2006.

55.    That, as a proximate result of the negligence of the Defendants, their agents and employees, resulting in the death of the Decedent, her next of kin, heirs, husband and daughter, were caused the loss of her aid, comfort, support, and otherwise sustained special damages, medical bills, funeral expenses, and pecuniary loss, all to their detriment in a sum undetermined at this time.

(Count V)<br>
<strong>Federal Tort Claims Act</strong>

Plaintiffs reallege the above allegations as if hereinafter set forth in full and further states and alleges as follows:

56.    This claim is brought by Plaintiff against Defendant United States of America for actions undertaken by the Department of Homeland Security, ICE, individual Defendants and Unnamed Defendant agents all acting within the scope of their employment and/or duties, which were intentional, negligent or wrongful acts or omissions for which they are liable under 28 U.S.C. 2671 et. seq.  This an action for injury, property loss and death caused by the negligent and wrongful acts and omission of any employee of the Government under 28 U.S.C. § 1346(b).

19

2008. **See Attached Exhibit C.** This claim was denied on by letter dated October 9, 2008.

However, the letter did not constitute proper or timely notice as it was not sent by registered or

certified mail. Further, Plaintiff's counsel did not receive timely or actual notice letter denial

until October 17, 2008. See date stamp, Id. The letter was mailed to the former address of

Plaintiffs' attorney and on information and belief was forwarded to his correct address by the

U.S. Mail. Further the six-month notice rule is subject to equitable tolling because of

government misconduct, and other grounds. Defendants withheld FOIA request responses,

Homeland Security Investigation Reports, medical records and other documents and information

needed to prepare this Complaint.

(COUNT VI)

**Bivens Claim--Equal Protection Violation (Fifth, Eighth and Fourteenth
Amendments to the U.S. Constitution)**

61. This is a claim for violation of the Fifth and Eighth Amendments to the United States

Constitution and for a denial of equal protection of law under Bivens v. Six Unknown Fed.

Narcotics Agents, 403 U. S. 388 (1971), in which the United States Supreme Court recognized

an implied private action for damages against federal officers alleged to have violated a citizen's

constitutional rights.

62. The Defendants violated the Fifth, Eighth and Fourteenth Amendments the United

States Constitution by targeting immigrants and particularly Latinos, who speak a foreign

language, for lengthy detention in facilities that are ill equipped to handle aliens, a denial of

healthcare and detaining them in jails even when they suffer from life threatening medical

conditions and need urgently to go to a hospital, and be seen by medical doctors and emergency

21

healthcare personnel. This amounts to cruel and unusual punishment and an unlawful and unequal treatment of Latino detainees and inmates.

63.    There is no compelling governmental interest in the use of race and national origin to determine if prisoners need medical care, or to cruelly exclude them from medical care. There is no compelling interest in allowing white, native-born, English-speaking detainees and prisoners to communicate with healthcare professionals in their own language, to request medical care, and to receive medical care, but not allowing deportees and federal detainees the same access. The native-born, English-speaking inmates housed during the time Decedent was at Ramsey County, were mainly held for a few days, and were allowed to communicate their requests for medical treatment. Further after being released, native born inmates or releasees can go to any doctor or emergency room they choose. Meanwhile Decedent, who was detained 38 days until her death, while Defendants continuously denied her a doctor.

64.    The Federal government may detain removable aliens only for the time reasonably necessary to effect the removal, in some cases six months or more. The conditions of being housed in this manner, were cruel and unusual punishment, unreasonable detention, and a discriminatory denial of equal protection of law.

65.    Being denied Spanish speaking translators, being denied the help of family and friends who repeated Ms. Inamagua's pleas for medical attention over the headaches and other symptoms was unlawful detention and cruel and unusual punishment under the Fifth and Eighth Amendments.

66.    Nurses and guards saying its just a "small bump," she seems "okay," and let's "observe her for 24 hours," while Decedent was suffering from clear symptoms of

22

hydrocephalus, and an infection of the brain was cruel and unusual punishment, unlawful detention and a denial of equal protection and due process of law.

67.    Defendants violated Plaintiff's rights under the Equal Protection component of the Due Process Clause of the Fifth, Eighth, Fourteenth, and other Amendments by singling her out for unfavorable treatment not accorded similarly situated northern European, native-born English speaking inmates. These standards are applied to the United States and its employees under the Due Process Clause of the Fifth Amendment. As a direct result of the unlawful acts of defendants, Decedent suffered injury and death.

68.    Because Plaintiff's death was caused by these violations and wrongs, she is unable to voice her own request for declaratory and injunctive relief to stop the ongoing violations and practices of Defendants alleged herein.  In 2007 at Ramsey County Adult Detention, of 43 federal detainees, only ten were given a physical exam, and those were after the first forty days of confinement.  That would have been too late for Ms. Inamagua.

69.    Plaintiffs' Decedents are Latino's who have standing as they are at risk to be subjected to the same racial and ethnic profiling, discriminatory treatment, denial of equal protection, and constitutional rights, unlawful detention and cruel and unusual punishment, as was the Decedent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of Judgment against Defendants jointly and severally and award relief in an amount in excess of seventy-five thousand dollars ($75,000.00) as follows:

A.    Compensatory damages in an amount supported by the evidence at trial;

23

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

In the Matter of the Appointment
of a Trustee for the Next of Kin of

MARIA IÑAMAGUA MERCHAN, Decedent.

File No.: _____

Case Type: Wrongful Death

**ORDER APPOINTING CO-TRUSTEES**

In the matter of the appointment of Co-Trustees for the next of kin of Maria Iñamagua Merchan, the Court being fully advised in the premises on the basis of the Petition of Patricio Flores and the consent of Patricio Flores and Jose Encalada, and certification thereof by said next of kin.

### IT IS HEREBY ORDERED:

That upon the Petition and Consent, and upon the filing of an Oath pursuant to Minnesota Statutes Annotated § 573.02, Patricio Flores and Jose Encalada are hereby appointed Co-trustees, to commence and maintain the acts set forth in said Petition. The *Trustees shall file written waivers of notice and consent for [Trustee to] serve without bond by June 5, 2009. If the required waivers (from surviving parent and siblings) cannot be obtained by that time, the Trustees shall schedule a hearing to determine whether this appointment should continue and whether bond should be required*

BY THE COURT:

Dated: *April 8, 2009*

_____
Judge of District Court
PATRICIA L. BELOIS
Judge of District Court

APR 0 8 2009



**EXHIBIT**

A

FLORES

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Patricio Flores and Jose Encalada,
as Co-Trustees and Personal Representatives
for the next of kin of Maria Iñamagua Merchan,

Case No._____

Plaintiffs,

**AFFIDAVIT OF CHRISTOPHER R. WALSH REGARDING NO EXPERT REVIEW**

v.

The United States of America;  The U.S. Department of Homeland Security, Immigrations and Customs Enforcement ("ICE");  Scott Baniecke;  an Unknown Number of Unnamed and Unknown Agents of ICE; The County of Ramsey, Minnesota;  Robert Fletcher; Ramsey County Adult Detention Center; Ramsey County Sheriff's Department;  Ramsey County Department of Health;  Robert W. Fulton; "XYZ" or Ramsey County "Family Practice Clinic"– Unidentified Medical Clinics I-V;  Drs. John Doe or Jane Does I-V-- Unidentified Jail or Contract Medical Doctors;  Robert Moxley- Goldsmith;  Erika Thompson, R.N.;  Chris Strand;  Kelli LNU, --Unidentified Jail Nurse;  John Roe or Jane Roes—Unidentified Jail Nurses I-V;  Mary Roby;  Jill Jones;  T. Bennet; Cheryl Caumiant;  John Poe or Jane Poes I-V--Unidentified Ramsey County Sheriffs, Deputies, Correctional Officers and Guards,

Defendants.

---

STATE OF MINNESOTA }
                    }ss.
COUNTY OF HENNEPIN  }



EXHIBIT
B

Christopher R. Walsh, being duly sworn, deposes and states as follows:

1.    That I am the attorney for the Plaintiffs in the above-referenced matter, who are relatives of the Decedent, Maria Iñamagua Merchan.  I am licensed to practice

1

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim

## INSTRUCTIONS
### Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? | Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. | X No |
| --- | --- | --- |

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
| --- | --- |
| No. Maria Inamagua Mercan did not carry insurance for the injuries and death which were proximately caused by the negligence of federal, state, and county authorities. | |

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

None. Health insurance or state medical assistance may have paid some of the medical bills.

19. Do you carry public liability and property damage insurance? | Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* | X No

Office for Civil Rights & Civil Liberties
U.S. Dept. of Homeland Security
245 Murray Lane S.W., Bldg. 410
Washington, D.C. 20528

*and Homeland Security were previously given notice of this death and property loss claim and given access to damages, medical records and bills and supporting information.*

SF 95 (Rev. 7-85) BACK

```
***** WELCOME TO *****
     TWIN CITIES AMF
     5001 NORTHWEST DR
   ST PAUL, MN 55111-9998
      04/14/08 09:17PM

Transaction Number           94
USPS® #              268331-9556

1  First-Class Mail® Letter    5.21
   Destination:     20536
   Weight:          0 lb. 0.50 oz.
   Total Cost:           5.21
   Base Rate:             .41
            SERVICES
   Certified Mail™          2.65
   Return Receipt (U.S.
   Mail)                    2.15
2. First-Class Mail® Letter    5.21
   Destination:     20528
   Weight:          0 lb. 0.50 oz.
   Total Cost:           5.21
   Base Rate:             .41
            SERVICES
   Certified Mail™          2.65
   Return Receipt (U.S.
   Mail)                    2.15
3  First-Class Mail® Letter    5.21
   Destination:     20528
   Weight:          0 lb. 0.50 oz.
   Total Cost:           5.21
   Base Rate:             .41
            SERVICES
   Certified Mail™          2.65
   Return Receipt (U.S.
   Mail)                    2.15

Subtotal                    15.63
Total Charged               15.63

VISA                        15.63

        <23-902340231-99>
VISA
ACCT. NUMBER      TRANS #    AUTH
XXXX XXXX XXXX 4275   640   053016

To check on the delivery status of
your Certified Mail™ article, visit
our Track & Confirm website at
www.usps.com or use this Automated
Postal Center™ (or any Automated
Postal Center™ at other Postal
locations).

Please retain all receipts from
affixed forms. For inquiries, both
the sales receipt and the customer
copy from the affixed form shall be
required.

            Thanks.
   It's a pleasure to serve you.

ALL SALES FINAL ON STAMPS AND POSTAGE.
REFUNDS FOR GUARANTEED SERVICES ONLY.

..................................
..................................
   "LET US DARE TO READ, THINK,
       SPEAK AND WRITE."
        JOHN ADAMS, 1765
     www.poweroftheletter.com
..................................
..................................
```

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7005 1160 0003 5813 7092

Sent To *Ofc. of Inspector General*
Street, Apt. No.; or PO Box No. *U.S. Dept. Homeland Sec.*
City, State, ZIP+4 *Washington, D.C. 20528*

PS Form 3800, June 2002        See Reverse for Instructions

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7005 1160 0003 5813 7085

Sent To *U.S. Immigration (ICE)*
Street, Apt. No.; or PO Box No. *425 I Street*
City, State, ZIP+4 *Washington, D.C. 20536*

PS Form 3800, June 2002        See Reverse for Instructions

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7005 1160 0003 5813 7078

Sent To *U.S. Homeland Security*
Street, Apt. No.; or PO Box No. *245 Murray Lane, 410*
City, State, ZIP+4 *Washington, D.C. 20528*

PS Form 3800, June 2002        See Reverse for Instructions

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Patricio Flores and Jose Encalada,
as Co-Trustees and Personal Representatives
for the next of kin of Maria Iñamagua Merchan,

Plaintiffs,

The United States of America; The U.S. Department
of Homeland Security, Immigrations and Customs
Enforcement ("ICE"); Scott Baniecke, individually
and in his official capacity as Field Officer, ICE; an
Unknown Number of Unnamed and Unknown
Agents of ICE; The County of Ramsey, Minnesota;
Robert Fletcher, individually and in his official
capacity as Sheriff of Ramsey County; Ramsey
County Adult Detention Center; Ramsey County
Sheriff's Department; Robert Fletcher-Ramsey
County Sheriff; Ramsey County Department of
Health; Robert W. Fulton-Director of Ramsey
County Department of Health; "XYZ" Family
Practice Clinic; Ramsey County Adult Detention
"Family Practice Clinic" and Unidentified Medical
Clinics I-V; Drs. John Doe or Jane Does I-V-
Unidentified Jailor Contract Medical Doctors;
Robert Moxley-Goldsmith, individually and in his
capacity as Head Nurse; Erika Thompson, R.N.,
individually and in her capacity as Jail Nurse;
Chris Strand, individually and in her capacity as Jail
Nurse; Kelli LNU, -- Unidentified Jail Nurse; John
Roe or Jane Roes-Unidentified Jail Nurses I-V;
Mary Roby, individually and in her capacity as
Ramsey County Housing Sergeant; Jill Jones,
individually and in her capacity as Ramsey County
Corrections Officer; T. Bennet, individually and in
his capacity as Ramsey County Corrections Officer;
Cheryl Caumiant, individually and in her capacity as
Ramsey County Corrections Officer; John Poe or
Jane Poes I-V-Unidentified Ramsey County Sheriffs,
Deputies, Correctional Officers and Guards,

Defendants.

Case Type: Civil Rights/
Wrongful Death/Medical Malpractice

Court File No. 09-cv-838 JMC/SRN

**DEFENDANT GREGORY H. SALMI,
M.D.'S ANSWER TO PLAINTIFFS'
COMPLAINT**
**(Answering on behalf of Drs. John Doe
or Jane Does I-V-Unidentified Jailor
Contract Medical Doctors)**



**EXHIBIT**

_D_

COMES NOW the defendant, Gregory H. Salmi, M.D. and for his Answer to Plaintiffs' Complaint, alleges and states as follows:

### I.

Denies each and every allegation, matter and thing in said Complaint except as hereinafter admitted, alleged, qualified or otherwise stated.

### II.

Affirmatively asserts that Dr. Salmi provides certain medical care and services – at, amongst other places, Ramsey County Jail/Detention Center, but deny that said care and treatment, as and if provided to plaintiffs' decedent, Maria Iñamagua Merchan, was in any way negligent, a deviation from accepted standards of care, or a violation of civil rights.

### III.

Affirmatively asserts that plaintiffs' Complaint is deficient inasmuch as it fails to contain the requisite and appropriate affidavit of expert review required under Minn. Stat. §145.682, and further assert that plaintiffs' attorney's affidavit of no review is made in bad faith and not consistent with the intent and purpose behind the Minn. Stat. §145.682, subd. 3 Affidavit of no review allowed under the statute.

### IV.

Affirmatively alleges that plaintiffs' affidavit of expert disclosure is due within 180 days of the commencement of suit and demand is hereby made for the same.

### V.

Affirmatively alleges that plaintiffs' claims, in whole, or in part, against this answering defendant, may be barred by the principles of immunity.

### VI.

2

Affirmatively alleges that plaintiffs' claim, in whole, or in part, may be barred by the applicable statute of limitations outlined under Minnesota law for medical practice actions and any and all claims derivative thereof.

## VII.

Affirmatively asserts that this answering defendant is without sufficient information to admit or deny plaintiffs' allegations against the multitude of co-defendants, and therefore directs plaintiffs to the co-defendants for responsive pleadings pertaining to said allegations against each defendant.

## VIII.

Affirmatively alleges that the plaintiffs' Complaint fails to factually outline any specific allegations of neglect or misconduct, medical negligence, violation of civil rights, or other potential claims against this answering defendant, and therefore plaintiffs' claim fails to state a claim upon which relief may be granted and demand for dismissal of said claim against this answering defendant is hereby asserted.

## IX.

Affirmatively alleges that this answering defendant is without sufficient information to admit or deny plaintiffs' allegations of injury, damage, or harm, if any and therefore denies the same putting plaintiffs to their strictest proof thereof.

## X.

Affirmatively alleges that plaintiffs' complaint fails to factually allege conduct against this answering defendant, to assert a prima facie case of medical negligence, violation of civil rights, or any other alleged misconduct contained within plaintiffs' Complaint; and further fails to allege any factual basis or allegations seeking injunction, attorneys' fees or punitive damages.

## XI.

Affirmatively asserts that this answering defendant has no information or knowledge as to the allegations and that there are no allegations against Drs. John Doe or Jane Does I-V- Unidentified Jail or Contract Medical Doctors; and that this answering defendant's proper name is Gregory H. Salmi, M.D.; and therefore plaintiffs fail to state a claim upon which relief may be granted against this defendant and demand is made for this claim to be dismissed under Rule 12 of the Federal Rules of Civil Procedure.

## XII.

Affirmatively alleges inadequate, ineffective, untimely and improper service of process.

WHEREFORE, this answering defendant prays that plaintiffs take nothing by their pretended cause of action and that this answering defendant recover its costs and disbursements, and taxable fees herein.

Dated:    9/2/09

/s/ Barbara A. Zurek
Barbara A. Zurek (#213974)
MEAGHER & GEER, P.L.L.P.
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
Telephone: (612) 338-0661

*Attorneys for Defendant*
*Gregory H. Salmi, M.D.*

# CHRISTOPHER R. WALSH

### ATTORNEY AT LAW

FIFTH STREET TOWERS
100 SOUTH FIFTH STREET, SUITE 1025
MINNEAPOLIS, MINNESOTA 55402

LICENSED TO PRACTICE IN:
MINNESOTA, COLORADO
AND WASHINGTON, D.C.

TELEPHONE: (612) 767-7500
FACSIMILE: (612) 677-9300

TOLL FREE: (866) 333-1529
EMAIL: walshlawfirm@comcast.net
WEBSITE: www.walshlawfirm.com

July 17, 2009

**HAND DELIVERED**

**ADVANCED PRACTICE SOLUTIONS, P.A.**
c/o Lynn M. Wachtler Schiff, Registered Agent for Service of Process
8645 Eagle Point Blvd N.
Lake Elmo, MN 55042

RE: <u>Patricio Flores and Jose Encalada, et al v. United States of America, Ramsey County, et al</u>, U.S. District Court File No. 09 CV838

<u>Defendant(s) Served Herewith</u>: Advanced Practice Solutions, P. A., (identified in the Summons and Complaint as either "XYZ" Family Practice Clinic, Ramsey County Adult Detention "Family Practice Clinic" and Unidentified Medical Clinics I-V.)

Dear Ms. Wachtler Schiff:

I represent the Plaintiffs in the above lawsuit. **My interests are adverse to yours, so please seek an attorney and provide them this letter and the enclosed materials. This letter is not intended to give legal advice, nor to contact a represented party.** We understand that you are the registered agent to receive service of process of a Summons & Complaint on behalf of Advanced Practice Solutions, P.A. The above lawsuit was commenced by filing in U.S. District Court on April 10, 2009. The Complaint contains causes of action against your principal, Advanced Practice Solutions, P. A., one of its employees or agents, Gregory H. Salmi, M.D., and several other defendants.

Pursuant to Fed. R. Civ. P. 4(h)(1), **enclosed and personally served upon you and your principal, Advanced Practice Solutions, P.A.,** please find:

1. Summons and Complaint in the above entitled matter.

About three years ago, my office gave proper notice to Ramsey County and the United States that I was investigating a lawsuit and legal claims on behalf of my client, Patricio Flores, and the heirs of Maria Inamagua Merchan (deceased). We made Freedom of Information Act ("FOIA") and Government Data Practices Act requests that have still not been answered. We requested medical



EXHIBIT
E

Advanced Practice Solutions, P.A.
Lynn M. Wachtler Schiff
July 17, 2009

records, jail records, federal detention records, investigation records and any documents or evidence relating to this case and the death of Maria Inamagua Merchan, a federal detainee at Ramsey County Adult Detention center . We specifically requested all medical records and the identity of all medical personnel, doctors, nurses, who provided healthcare, or denied healthcare and medical treatment to Ms. Inamagua Merchan. Unfortunately, the County and the Federal authorities who received our complaints and information requests did not identify all of the medical personnel, doctors, nurses, hospitals, clinics, and entities who may be liable as defendants in the above lawsuit. These acts and omissions, whether intentional concealment or not, were at least a "mistake concerning the proper party's identity" under Fed. R. Civ. P. 15(C)(1)(ii). The unidentified defendants knew or should have known of Ms. Inamagua's death and that an action would have been brought against them but for the "mistake." See, Id.

Because the defendants and entities in custody and control of Ms. Inamagua Merchan and her, did not timely identify all doctors, nurses and medical clinics, the Plaintiffs were not able to correctly identify all Defendants by name in the caption of the enclosed Summons and Complaint. There, and in the body of the Complaint, we referred to "XYZ Family Practice Clinic" and various "John/Jane Doe" defendants. This is allowed under Fed. R. Civ. P. 15, so that we can amend the enclosed Complaint, add new claims and correctly identify individual defendants at a later date. The amendments to the Complaint will relate back to the time of filing, April 10, 2009 for statute of limitations purposes.

After the lawsuit was filed, the Ramsey County Attorneys office finally identified Advanced Practice Solutions P.A., and Gregory H. Salmi, M.D., as being involved in the care and treatment of Ms. Inamagua Merchan. They wrote me stating they do not represent you or Dr. Salmi. Please forward and tender these materials and inquiries to your attorneys and your insurance carrier. Please identify any other persons or entities involved in the healthcare and detention of Ms. Inamagua, pursuant to Minnesota Statutes, Chapter 13 Minnesota Data Practices Act ("MDPA"), HIPPA laws, Minn. Stat. Sec. 144.651. We have already provided a medical authorization to Advanced Practice Solutions.

Sincerely,

Christopher R. Walsh

Enclosures

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2005 WL 348298 (D.Minn.), Prod.Liab.Rep. (CCH) P 17,395
(Cite as: 2005 WL 348298 (D.Minn.))

C

United States District Court,
D. Minnesota.
Keith **HUSTAD**, Plaintiff,
v.
**MITSUBISHI** HEAVY INDUSTRIES AMERICA,
INC.; **Mitsubishi** Heavy Industries, Ltd.; and MLP
U.S.A., Defendants.
**No. Civ.03-6484 PAM/RLE.**

Feb. 10, 2005.

Scott Alan Teplinsky, Katz Manka Teplinsky Due
& Sobol, Mpls, MN, for Plaintiff.

David S. Miller, George W. Soule, Bowman &
Brooke, Mpls, MN, for Defendants.

MEMORANDUM AND ORDER

MAGNUSON, J.

**\*1** This matter is before the Court on Defendant
MLP U.S.A., Inc.'s Motion to Dismiss under Feder-
al Rule of Civil Procedure 4(m). For the reasons
that follow, the Court denies the Motion.

BACKGROUND

This is a products liability case about a Mitsubishi
Model BT-1S commercial lithographic press.
Plaintiff Keith Hustad alleges that his hand was
pulled into the press while he was working for West
Publishing on January 2, 2001.

Hustad commenced this action in state court on
November 25, 2003. He named three defendants in
the Complaint: Mitsubishi Heavy Industries Amer-
ica, Inc. ("MHIA"), Mitsubishi Heavy Industries
Ltd. ("MHI"), and Mitsubishi Lithographic Presses
North America a/k/a M.L.P. North America. He
commenced the action by serving a summons and

complaint on MHIA. On December 15, 2003,
MHIA removed the action based on diversity of cit-
izenship and amount in controversy. MHIA filed
the Complaint with the Clerk of Court with its re-
moval papers.

In their Rule 26 initial disclosures provided in May
and September 2004, MHIA and MHI advised
Hustad that the correct name of the third defendant
was MLP U.S.A., Inc. ("MLP")-not Mitsubishi
Lithographic Presses North America a/k/a M.L.P.
North America.[FN1] They also disclosed MLP's
business address in Lincolnshire, Illinois.

> FN1. The parties have stipulated that the
> correct name of the defendant is MLP
> U.S.A., Inc., and Magistrate Judge Mayer-
> on issued an order on January 20, 2005, re-
> flecting the change in party name.

Hustad's counsel did not attempt to serve MLP until
the end of July 2004. On July 30, 2004, and August
16, 2004, counsel contacted the Illinois Secretary of
State's Office to determine the proper agent of ser-
vice for MLP. Counsel was unable to reach an actu-
al person, and no one responded to messages left.

At the end of August 2004, Hustad's counsel
learned that the attorneys for MHIA and MHI
would also represent MLP. Accordingly, Hustad's
counsel requested that defense counsel accept ser-
vice on behalf of MLP. They refused. Hustad's
counsel then asked defense counsel to provide the
name of the agent of service for MLP. Defense
counsel never responded.

At the end of September 2004, the Illinois Secretary
of State's Office notified Hustad's counsel of MLP's
service agent. The agent was different from the
business address previously given by defense coun-
sel. On October 14, Hustad mailed a copy of the
original Summons and Complaint, as well as an Ac-
knowledgment of Receipt of Summons and Com-
plaint, to the agent. The agent received the docu-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.


EXHIBIT
E

Not Reported in F.Supp.2d, 2005 WL 348298 (D.Minn.), Prod.Liab.Rep. (CCH) P 17,395
**(Cite as: 2005 WL 348298 (D.Minn.))**

ments on October 18, and signed the Acknowledgment on November 12.

DISCUSSION

Federal Rule of Civil Procedure 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court ... shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Prior to 1993, Rule 4 required dismissal if the plaintiff could not show good cause why service was not made within 120 days. *Adams v. AlliedSignal Gen. Aviation Avionics,* 74 F.3d 882, 887 (8th Cir.1996). The Rule changed in 1993, and provided the district court discretion to extend the 120-day time period-even if there is no good cause shown. *Id.; see also* Rule 4 Advisory Comm. Notes (1993).

*2 Thus, the Court must determine whether Hustad has demonstrated good cause for his failure to serve within the prescribed period. If good cause is shown, the Court must extend the time for service. *See* Fed.R.Civ.P. 4(m); *see also Adams,* 74 F.3d at 887. If good cause is not shown, the Court still has discretion to grant an extension of time for service. *Adams,* 74 F.3d at 887.

A showing of good cause requires "good faith and some reasonable basis for noncompliance with the rules." *Adams,* 74 F.3d at 887. Hustad maintains that he has shown good cause through his counsel's extensive efforts to discover and contact MLP's service agent. Specifically, counsel contacted the Illinois Secretary of State's Office, requested that defense counsel accept service, and asked defense counsel to identify the service agent. Hustad further argues that his counsel promptly effected service

after acquiring the contact information.

However, Hustad's counsel took these efforts after the 120 day period expired. The only justification for the delay was that Hustad had named the wrong party and did not know it until the Rule 26 disclosures. However, it is a plaintiff's responsibility to ensure that he is suing the proper party and effectuating service. Moreover, Hustad's counsel waited nearly three months after receiving the first Rule 26 to locate MLP's agent. Considering these facts, the Court finds that there was no good cause for the delay.

Nevertheless, the Court finds that dismissal would not further the just, speedy, and inexpensive determination of this action. The Court finds *Rollerblade, Inc. v. Rappelfeld,* 165 F.R.D. 92 (D.Minn.1995) (Davis, J.) instructive in this regard. In that case, the plaintiff failed to serve one of the defendants within the prescribed 120 day period. On the defendant's motion to dismiss, the Court found no compelling reason to dismiss the action merely to have the plaintiff recommence the action, "with the likely prospect that the Court will be confronted with a Motion to consolidate the resultantly paralleling actions." *Id.* at 95.

Moreover, Hustad would suffer great prejudice if the Court dismissed MLP, as the statute of limitations would bar a re-filed action. The Advisory Committee Notes to Rule 4(m) state that an extension may be justified "if the applicable statute of limitations would bar the refiled action." Although the Eighth Circuit has also recognized that "the running of the statute of limitations does not require the district court to extend time for service of process," *Adams,* 74 F.3d at 887 (citation omitted), it has also stated:

Where a dismissal without prejudice has the actual effect of terminating a plaintiff's claim ... a strong argument may be made for a permissive extension, at least when such an extension would cause little or no prejudice to the defendant.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 348298 (D.Minn.), Prod.Liab.Rep. (CCH) P 17,395
**(Cite as: 2005 WL 348298 (D.Minn.))**

*Colasante v. Wells Fargo Corp.,* 81 Fed. Appx. 611, 614 (8th Cir. Nov.20, 2003).

**\*3** In contrast to Hustad's prejudice, MLP was not prejudiced by the delay in service. MLP has acknowledged service. Indeed, the same counsel is representing all defendants, and Hustad's counsel informed defense counsel several times of its attempt to serve MLP. Thus, MLP was aware of this action well before it acknowledged service.

CONCLUSION

Accordingly, Defendant's Motion to Dismiss (Clerk's Doc. No. 22) is DENIED.

D.Minn.,2005.
Hustad v. Mitsubishi Heavy Industries America, Inc.
Not Reported in F.Supp.2d, 2005 WL 348298 (D.Minn.), Prod.Liab.Rep. (CCH) P 17,395

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.