# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
**(Cite as: 2006 WL 1579876 (D.Minn.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
George R. STUDNICKA, Plaintiff,
v.
A. Daniel PINHEIRO, Yolanda I. Garces, and
Mayo Clinic Facility, Defendants.
**Civil No. 05-723 (JRT/FLN).**

June 2, 2006.

George R. Studnicka, # 12658-004, Federal Correctional Institution, Butner, NC, plaintiff pro se.

William R Stoeri, Ilyse S. Goldsmith, Paul B. Klaas and Bartholomew B. Torvik, Dorsey & Whitney LLP, Minneapolis, MN, for defendants.

### MEMORANDUM OPINION AND ORDER

JOHN R. TUNHEIM, District Judge.

**\*1** Plaintiff George R. Studnicka, a federal prisoner, has filed this lawsuit against Mayo Clinic and two of its physicians, A. Daniel Pinheiro and Yolanda I. Garces, claiming violation of his civil rights under 42 U.S.C. § 1983 and medical malpractice. Studnicka alleges, *inter alia,* that Pinheiro performed an invasive surgical operation on him without his consent and that Garces started radiation therapy on him without his consent. Studnicka has also filed several motions, including motions to produce, Motion for Order Compelling Defendants to Comply with Discovery, Motion for a Temporary Restraining Order, Motion for Continuance, and Motion to Appoint Counsel.

Defendants moved for summary judgment to dismiss Studnicka's complaint in its entirety. Defendants argue that they are not proper parties under 42 U.S.C. § 1983 and that they cannot provide Studnicka's requested relief. Defendants subsequently

filed a motion to dismiss, arguing that Studnicka has failed to comply with the requirement of bringing a medical malpractice action in Minnesota and therefore Studnicka's complaint should be dismissed with prejudice.

In the Report and Recommendation dated January 30, 2006, the Magistrate Judge recommended that the Court grant the motion for summary judgment and the motion to dismiss filed by defendants. On that same day, the Magistrate Judge denied all of Studnicka's motions. On February 27, 2006, the Court received Studnicka's Objections to the Report and Recommendation, and his appeal of the Magistrate Judge's Order. In an Order dated March 16, 2006, this Court concluded that Studnicka's objections and appeal should be treated as timely. [FN1]

> FN1. Upon receiving Studnicka's objection and appeal and concluding that it should be treated as timely, the Court by its Order dated March 16, 2006 [Docket No. 68] vacated its Order dated February 17, 2006 [Docket No. 59]. Without the benefit of knowing that this Court was vacating its Order, Studnicka filed a notice of appeal on March 16, 2006 [Docket No. 66]. Studnicka may withdraw the notice of appeal to avoid paying the filing fee.

### BACKGROUND

Plaintiff George Studnicka was an inmate at the Federal Medical Center (hereinafter "FMC") in Rochester, Minnesota during all relevant time periods referred to in his complaint. Defendant Mayo Clinic Facility is a medical facility located in Rochester, Minnesota, which provides medical services to FMC. Defendant A. Daniel Pinheiro is a medical doctor with the Ear, Nose, and Throat Department at the Mayo Clinic. Defendant Yolanda I. Garces is a medical doctor with the Radiation Oncology Department at the Mayo Clinic.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT E**

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
**(Cite as: 2006 WL 1579876 (D.Minn.))**

Page 2

Studnicka alleges that in November 2000 he complained to a doctor at FMC about hardening of his upper right lymph gland causing neck and throat pains. Because the symptoms worsened, a CAT scan was performed on February 7, 2001. The CAT scan indicated an abnormal area and Studnicka was referred to Mayo Clinic. Studnicka was thereafter diagnosed with cancer of the lymph nodes. Studnicka alleges that he verbally refused any type of intrusive neck operation to correct the cancer, and that he requested to see an oncologist at the Mayo Clinic to discuss alternative treatment, such as use of the FDA-approved drug Rituxan.

Studnicka alleges that he was told he had a carpal tunnel operation scheduled at Mayo Clinic on April 11, 2001. He was taken to Mayo Clinic, and according to Studnicka, while he was being prepared for that surgery, he was told that another procedure was going to be done. He alleges that something was injected into his IV and he woke up over 14 hours later to find out that the neck operation that he had earlier refused had been performed on him. He alleges that Pinheiro accidentally cut his vocal cord and his nerves and wrongfully removed muscle mass and three lymph nodes from Studnicka that were not cancerous. Studnicka further alleges that in May 2001 Garces and the Radiation Oncology Department administered radiation therapy treatments that Studnicka repeatedly refused. Studnicka alleges that he was overexposed to radiation, and that this overexposure resulted in many side effects. Specifically, Studnicka alleges that radiation caused Studnicka to lose all of his teeth and his saliva glands, and severely damaged his neck and shoulder muscles, taste buds and other glands and tissues. Studnicka further alleges that his immune system was "basically destroyed" as a result of receiving radiation and that Studnicka suffers from "constant thrust disease of mouth and throat [and] constant sinus and dry mouth infections." He alleges that he is on a liquid-only diet and that he is in constant pain. Studnicka states in his complaint that defendants refused to conduct any corrective procedures, including providing Studnicka with

dental implants.

**\*2** Studnicka lodged several complaints within the Bureau of Prisons (hereinafter "BOP") regarding this procedure and its effects, including a request for administrative remedy lodged with FMC, a regional administrative remedy appeal, and a central office administrative remedy appeal. After Studnicka's requests for administrative remedies were denied, Studnicka filed the present action.

### ANALYSIS

### I. MOTION FOR SUMMARY JUDGMENT ON DELIBERATE INDIFFERENCE CLAIM

#### A. Standard of Review

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp* ., 475 U.S. 574, 587 (1986).

#### B. Eighth Amendment Analysis

The Magistrate Judge concluded that although Studnicka's complaint could be interpreted as a *Bivens* action [FN2] Studnicka's claim must be dismissed because he "does not direct the Court to the particular constitutional provisions that Studnicka alleges were violated by reason of Defendants' actions." Because *pro se* pleadings must be construed liberally, the Court reads Studnicka's complaint as a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
**(Cite as: 2006 WL 1579876 (D.Minn.))**

*Bivens* action that alleges a claim against defendants for deliberate indifference to medical needs in violation of the Eighth Amendment. Therefore, the first question before the Court is whether defendants are entitled to summary judgment on Studnicka's claim that defendants violated his rights under the Eighth Amendment.

> FN2. In their supporting memorandum, defendants argue that they are entitled to summary judgment for two reasons. First, they argue that defendants are not proper parties to an action under 42 U.S.C. § 1983 . The Magistrate Judge correctly concluded that plaintiff's claim can be construed as a *Bivens* action. *See Carlson v. Green,* 464 U.S. 14, 19 (1980) (" *Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). Defendants are proper parties to this *Bivens* action because they engaged in federal action when they contracted with BOP to provide medical services. *See Bellecourt v. United States,* 784 F.Supp. 623, 628 (D.Minn.1992). Second, defendants argue that they cannot provide the relief that plaintiff requests. Although plaintiff's complaint lists several claims of relief that could only be provided by FMC, it is clear from plaintiff's pleadings (e.g. his civil cover sheet) that he seeks monetary relief from defendants.

Defendants argue that Studnicka cannot show that his rights were violated because his medical needs were not ignored. It is undisputed that Studnicka had cancer, defendants treated his cancer, and Studnicka is now in remission. However, contrary to defendants' assertion, it is not undisputed that plaintiff received appropriate treatment for his cancer. Indeed, Studnicka argues repeatedly that the treatment he received was inappropriate and violated his constitutional rights.

Defendants emphasize that inmates have "no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir.1997). While this is a true statement of law, it is also true that "[g]rossly incompetent or inadequate care can constitute deliberate indifference." *Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir.1990). In addition, it is possible to have an Eighth Amendment violation when a defendant administers medical treatment against an inmate's will. *Knecht v. Gillman,* 488 F.2d 1136, 1139-40 (8th Cir.1973); *see also Gillis v. Toliver,* 2005 WL 2464991, at *3 (D.Del. Oct. 6, 2005) (finding that plaintiff's allegation that defendants administered psychotropic drugs to plaintiff against his will may be sufficient to show defendants unnecessarily and wantonly inflicted pain on plaintiff, showing deliberate indifference).

*3 Studnicka is entitled to prove his case by establishing that defendants' course of treatment "so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual punishment." *Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir.1990). In *Smith,* the Eighth Circuit reversed a district court's granting of summary judgment to defendants, holding that the district court erred as a matter of law when it ruled that proof of care by a doctor was sufficient to disprove deliberate indifference. *Id.* at 93. The record before the court contained no evidence of the appropriate standard of care, nor any indication of whether defendants' actions amounted to deliberate indifference as measured by that standard. *Id.* The Eighth Circuit was "particularly troubled by the absence of [plaintiff's] medical records from the court record," and concluded that a review of the medical records was required before a determination was made against the plaintiff. *Id.*

Here, as in *Smith,* there are no medical records in the court record and no evidence of the appropriate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
(Cite as: 2006 WL 1579876 (D.Minn.))

standard of care. The Court simply cannot grant summary judgment on a record that is so inadequate.[FN3] *See id.; Palmer v. Tracor, Inc.,* 856 F.2d 1131, 1131-34 (8th Cir.1988) (holding summary judgment was premature because the only affidavit on record was an unsworn affidavit of defendant's attorney). Accordingly, defendants' motion for summary judgment is denied. Upon further development of the record, however, defendants may bring another motion for summary judgment.

> FN3. One might argue that summary judgment may be granted without proof of the standard of care because Studnicka bears the burden of proof on this issue at trial. As explained below, plaintiff has diligently tried to obtain his complete medical record and other documents needed to form the basis of an expert affidavit providing the standard of care. He has repeatedly asked the Court to compel defendants to provide his complete medical file and has asked the Court for a continuance so that he could obtain discovery essential to his case. As the Eighth Circuit articulated in *Smith,* the Court believes "it would be incongruous to deny the nonmoving party the ability to present the necessary proof to withstand a motion for summary judgment ... and then grant summary judgment against the nonmoving party simply because the nonmoving party has failed to come forward with such proof." *Smith,* 919 F.2d at 93, n. 4.

In addition, the Court concludes that it would greatly benefit from the appointment of an independent expert witness who would examine Studnicka and his medical records, and provide to the Court his or her findings on the merits of Studnicka's claims. *See Smith,* 919 F.2d at 94; Fed.R.Evid. 706. Therefore, the Court orders the parties to show cause why an expert witness should not be appointed by the Court. *See id.* Although the Court may appoint an expert of its own selection, the parties may submit nominations of potential expert witnesses that may be willing and would be qualified to provide this service.[FN4] *See id.*

> FN4. Because plaintiff is currently incarcerated and his motion to proceed in forma pauperis [Docket No. 2] indicates that he has no source of regular income, the Court is inclined to direct that defendants pay the entire cost of the expert witness.

## II. MOTION TO DISMISS MEDICAL MALPRACTICE CLAIM

### A. Standard of Review

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, as the non-moving party. *See, e.g., Bhd. of Maint. of Way Employees. v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir.2001). A motion to dismiss a complaint should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994).

### B. Pleading Medical Malpractice Under Minnesota Law

**\*4** In the Report and Recommendation, the Magistrate Judge recommends dismissing Studnicka's medical malpractice claims for failure to comply with the procedural requirements for medical practice claims under Minnesota law. *See* Minn.Stat. § 145.682. Section 145.682 requires plaintiff to serve upon defendant two affidavits in an action "alleging malpractice ... against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn.Stat. § 145.682, subd. 2. The first affidavit must provide an expert opinion that one of the defendants "deviated from the applicable standard of care and by that action caused injury to plaintiff." *Id.* at subd. 3. The second affi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
**(Cite as: 2006 WL 1579876 (D.Minn.))**

davit must identify the persons plaintiff will call as expert witnesses. *Id.* at subd. 4.

Expert testimony is not required in every medical malpractice case. *See Miller v. Raaen,* 139 N.W.2d 877, 880 (Minn.1966) (summary of medical malpractice cases where expert testimony was not needed to establish liability). Generally, courts do not require expert testimony where the assessment of negligence does not require "specialized medical knowledge or evaluation of medical judgment." *Bellecourt v. United States,* 784 F.Supp. 623, 638 (D.Minn.1992). The Minnesota Supreme Court holds that expert testimony is not needed in medical battery cases because "the question is whether the physician, in fact, told the patient of the nature and character of the procedure and the patient consented to that procedure." *Kohoutek v. Hafner,* 383 N.W.2d 295, 299 (Minn .1986).

Here, Studnicka alleges that Pinheiro operated upon him without his consent, and Garces started radiation therapy treatments without his consent. No scientific knowledge is needed to establish liability based on these allegations because the essential question is whether Studnicka actually consented to the procedures. *See Kohoutek,* 383 N.W.2d at 299. Accordingly, the Court denies defendants' motion to dismiss Studnicka's medical malpractice claims arising from his allegations of lack of consent.

Studnicka makes several additional allegations of medical malpractice by defendants. Studnicka alleges that Pinhiero accidentally cut his vocal cords and nerves and wrongfully removed healthy muscle mass and lymph nodes. He alleges that Garces overexposed him to radiation causing him numerous painful side effects. These allegations require expert testimony to establish whether defendants deviated from the applicable standard of care. Thus, allegations based on these claims must be dismissed unless Studnicka can provide the required expert affidavits.

On August 30, 2005, defendants made a demand for Studnicka to produce the expert affidavits. *See*

Minn.Stat. § 145.682, subd. 6(a). In a letter to the Court dated September 8, 2005, Studnicka explains that he could not comply with the demand at that time. He states that he has "diligently tried" to have an outside doctor examine him. Studnicka provides documentation that he requested to have a private physician examine him prior to filing the lawsuit. Prison officials rejected his request on October 29, 2004 because prison policy does not permit private physicians to examine prisoners. Studnicka asserts that when defendants provide his full set of medical records and answers to his interrogatories, he would send the materials to an outside expert witness for evaluation and production of the affidavit. Studnicka has filed multiple motions asking the Court to compel defendants to provide these materials. [FN5] On November 23, 2005, Studnicka asked the Court for a continuance to allow him additional time to obtain an expert affidavit because defendants still had not provided his complete medical file nor answered his interrogatories.

FN5. *See* Docket No. 17, 19-20, 22.

**\*5** The Court may extend the time for serving the affidavits upon a showing of excusable neglect. *Stern v. Dill,* 442 N.W.2d 322, 324 (Minn.1989). To claim excusable neglect, Minnesota courts require a plaintiff to satisfy four factors: (1) plaintiff has a reasonable case on the merits; (2) plaintiff has a reasonable excuse for his failure to meet the statutory time limits; (3) plaintiff has proceeded with due diligence after notice of statutory time limits; and (4) no substantial prejudice will result to defendant by the extension of time. *See Parker v. O'Phelan,* 414 N.W.2d 534, 537 (Minn.Ct.App.1987).

The Magistrate Judge concluded that Studnicka failed to make a showing of excusable neglect because Studnicka did not make attempts to send his medical records to a physician and his request to BOP staff to have a private physician examine him was made one year before plaintiff filed this lawsuit. The Magistrate Judge concluded that whether or not defendants have answered Studnicka's inter-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
**(Cite as: 2006 WL 1579876 (D.Minn.))**

rogatories has no bearing on the affidavit requirement.

Compliance with the expert affidavit requirement is extremely difficult for prison inmates, especially for those that are not represented by counsel. Because prison officials would not allow an outside physician to examine him, Studnicka concluded that an expert would be forced to rely on his medical records. While defendants assert that they turned over a complete copy of his medical records, plaintiff has identified several specific items that were missing, including X-rays and computer copies of the CAT scan and MRI scan. Studnicka filed numerous motions asking the Court to compel defendants to turn over his complete medical file, but the Magistrate Judge denied these motions on the same day that he recommended that Studnicka's complaint be dismissed for failure to comply with the affidavit requirement. Again, it is inappropriate to deny Studnicka access to the materials he needs to obtain an expert and then dismiss his claim for failing to obtain an expert. Thus, the Court finds that Studnicka has a reasonable excuse for failing to meet the deadline and acted with due diligence by requesting that a private physician be allowed to examine him and by making numerous requests for his complete set of medical records.

The Court also finds that no substantial prejudice will result to defendant by an extension of time. It has only been about a year since plaintiff filed the lawsuit, and plaintiff has not been previously granted an extension. *Cf. Bellecourt v. United States,* 784 F.Supp. 623, 640 (D.Minn.1992) (finding prejudice when almost two and one-half years had elapsed since the suit was filed); *Maloney v. Fairview Community Hosp.,* 451 N.W.2d 237, 240 (Minn.Ct.App.1990) (finding prejudice when two years had elapsed since the suit was filed).

Studnicka must also show he has a reasonable case on the merits to establish excusable neglect for his failure to provide the expert affidavits. As discussed above, there are no physician affidavits, nor any of Studnicka's medical records, in the court re-

cord. The Court cannot at this time determine whether Studnicka has a reasonable case on the merits. As discussed above, the Court is inclined to appoint an expert witness, and his or her findings would be used to make this determination. Accordingly, the Court defers ruling on Studnicka's claims of medical malpractice, other than those based on his allegations of lack of consent.

### III.   APPEAL OF THE MAGISTRATE JUDGE'S ORDER DATED JANUARY 30, 2006

*6 In an Order dated January 30, 2006, the Magistrate Judge denied Studnicka's six motions without discussion. These include three discovery motions,[FN6] motion for a temporary restraining order,[FN7] motion for continuance,[FN8] and motion to appoint counsel.[FN9] Studnicka appeals this Order.

> FN6. *See* Docket Nos. 19-20, 22.

> FN7. *See* Docket No. 39.

> FN8. *See* Docket No. 41.

> FN9. *See* Docket No. 44.

Defendants assert that they provided Studnicka a complete copy of his medical records, but Studnicka maintains that many key documents were missing from the materials he received from defendants. Nevertheless, Studnicka now asserts that all his medical records were lost or destroyed by BOP when he was transferred to the Federal Correctional Institution in Butner, North Carolina. Defendants must promptly provide Studnicka a copy of his entire medical record, but defendants do not need to answer Studnicka's interrogatories at this time. [FN10] Accordingly, the Court reverses the Magistrate Judge decision on plaintiff's discovery motions, and remands for development of discovery deadlines and ruling on plaintiff's motions consistent with this Order. Similarly, the Magistrate Judge's decision to deny Studnicka's motion for a continuance, as it relates to the discovery deadlines, is also reversed. [FN11]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
(Cite as: 2006 WL 1579876 (D.Minn.))

FN10. If the Court appoints an expert witness, the Court will order defendants to file an additional copy of Studnicka's medical records with the Court for use by the expert witness.

FN11. Studnicka's motion for a continuance also explains that he is in the process of constructing a motion for leave of the Court for amendment of his complaint. He asserts that he was unable to promptly file that motion because on December 2, 2005, he was transferred to the Federal Correction Institution in Estill, South Carolina. He alleges that after the transfer he never received some of his legal materials, including his draft motion for leave to amend complaint, documentation implicating a defendant at FMC, self-help litigation soft cover books, and most of his medical records. On February 2, 2006, he was subsequently transferred to the Federal Correctional Institution in Butner, North Carolina. Plaintiff alleges that since the transfer he has not received any of his legal materials or medical records related to this case. Because plaintiff asserts that he is without any of the records from this case, the Court grants his motion for a copy of the record.

Studnicka asserts that BOP medically cleared him and transferred him to South Carolina in retaliation for his filing of grievances and this lawsuit. Studnicka must promptly file a motion for leave to amend the complaint if he wishes to add a claim of First Amendment retaliation against specific prison officials at FMC.

Studnicka's motion for a temporary restraining order requests that the Court order prison personnel at FMC to provide plaintiff with adequate daily nutritional supplementation. Because Studnicka is no longer incarcerated at FMC, and prison personnel at FMC are not presently parties to this lawsuit, the Court affirms the Magistrate Judge.

Finally, Studnicka moves for the appointment of counsel. After the Court is presented with a more developed record, the Court can assess whether appointment of counsel will benefit the Court. *See Nelson v. Redfield Lithographic Printing,* 728 F.2d 1003, 1005 (8th Cir.1984) ("The court should also determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel."). Accordingly, the Court defers ruling on this motion.

**ORDER**

Based on the foregoing and all of the records, files, and proceedings herein, the Court **SUSTAINS in part** and **OVERRULES in part** the objections of plaintiff [Docket No. 61] and **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's Report and Recommendation [Docket No. 57] and **AFFIRMS in part** and **REVERSES in part** the Magistrate Judge's Order of January 30, 2006 [Docket No. 56]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 24] is **DENIED.**

2. Defendants' Motion to Dismiss [Docket No. 33] is **DENIED** as to the claims of medical malpractice based on lack of consent, but the Court **DEFERS** judgment on the claims of medical malpractice based on the other allegations.

3. Any party that objects to the Court appointing an expert witness shall within 14 days of the date of this Order show cause why an expert witness should not be appointed. Also within this timeframe, parties may submit the names of no more than three potential expert witnesses for the Court's consideration.

*7 4. Plaintiff's Motion to Produce [Docket Nos. 19 & 20] and Motion for Order Compelling Defendants to Comply with Discovery [Docket No. 22] is **REMANDED** to the Magistrate Judge for development of discovery deadlines and ruling on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)
**(Cite as: 2006 WL 1579876 (D.Minn.))**

plaintiff's motions consistent with this Order.

5. Plaintiff's Motion for Temporary Restraining Order [Docket No. 39] is **DENIED.**

6. Plaintiff's Motion for Continuance [Docket No. 41] is **GRANTED** in so far as it asks for development of new discovery deadlines.

7. The Court **DEFERS** ruling on Plaintiff's Motion to Appoint Counsel [Docket No. 44].

8. Plaintiff's Motion for Copy of Record [Docket No. 65] is **GRANTED.** The Clerk of Court is **DIRECTED** to provide plaintiff with a copy of the entire file in this case, together with a docket sheet and copy of this Order.

D.Minn.,2006.
Studnicka v. Pinheiro
Not Reported in F.Supp.2d, 2006 WL 1579876 (D.Minn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT F

Westlaw.

Slip Copy, 2010 WL 768181 (S.D.Ga.)
**(Cite as: 2010 WL 768181 (S.D.Ga.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Georgia,
Dublin Division.
Romero SILVIAN-MEDRANO, Plaintiff,
v.
FEDERAL BUREAU OF PRISONS, et al., Defendants.
**No. CV 309-012.**

March 4, 2010.

Romero Silvian-Medrano McRae, GA, pro se.

Delora L. Kennebrew, U.S. Attorney's Office, Savannah, GA, Stephen E. Curry, Curry Law Firm, Martinez, GA, for Defendants.

### ORDER

DUDLEY H. BOWEN, District Judge.

**\*1** After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's Report and Recommendation, to which objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as the opinion of the Court. Therefore, Defendant McRae Correctional Facility is **TERMINATED**, Defendants' motions to dismiss (doc. nos.29, 33) are **GRANTED**, Plaintiff's complaint is **DISMISSED**, and this civil action is **CLOSED**.

SO ORDERED.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

W. LEON BARFIELD, United States Magistrate Judge.

*Pro se* Plaintiff, currently incarcerated at McRae

Correctional Facility in Mcrae, Georgia, filed a complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[FN1] The matter is now before the Court on Defendants' pre-answer motions to dismiss. (Doc. nos.29, 33). Plaintiff has responded to both motions. (Doc. nos.32, 34). For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant McRae be **TERMINATED**, that Defendants' motions to dismiss be **GRANTED**, that Plaintiff's complaint be **DISMISSED**, and that this civil action be **CLOSED**.

> FN1. Plaintiff brings the instant case pursuant to 42 U.S.C. § 1983 and *Bivens.* (*See* doc. no. 1). However, Plaintiff's reliance upon § 1983 is inapposite because § 1983 authorizes claims alleging the deprivation of constitutional rights by persons acting under color of *state* law. Here, none of the Defendants were acting under color of state law. Simply put, Plaintiff "is unable to show that any of the defendants were acting under color of state law for the simple reason that maintaining custody of *federal* prisoners is neither a power 'possessed by virtue of *state* law' nor one that has been 'traditionally exclusively reserved to the *state.'* The authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government. Therefore, [Plaintiff's] § 1983 claims are not viable." *Sarro v. Cornell Corrections, Inc.,* 248 F.Supp.2d 52, 64 (D.R.I.2003). Accordingly, the Court will construe Plaintiff's complaint broadly as an attempt to state a claim under *Bivens.*

### I. BACKGROUND

*Liberally* construing the complaint, the Court finds the following. Plaintiff is a federal inmate at the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT F**

Page 3 of 7

Slip Copy, 2010 WL 768181 (S.D.Ga.)
(Cite as: 2010 WL 768181 (S.D.Ga.))

McRae Correctional Facility ("McRae"), a private prison operated by the Corrections Corporation of America ("CCA").[FN2] Plaintiff has sued the following Defendants: (1) the Federal Bureau of Prisons ("BOP"), (2) Harley Lappin, the Director of the BOP, (3) James E. Burrell, the Administrative Remedy Coordinator of the BOP,[FN3] (4) the CCA, (5) Walt Wells, the Warden of McRae and employee of the CCA, (6) Leslie Ruggenber, a registered nurse at McRae and employee of the CCA, (7) FNU Merrill,[FN4] a dentist and employee of the CCA, (8) Joan Roy, the prison medical director and employee of the CCA, (9) Kwang Rae Pyon, a dentist at McRae and employee of the CCA, and (10) Debbie Hinson, the health service administrator and employee of the CCA.[FN5,FN6] Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need by allegedly "denying, delaying, or intentionally interfer[ing] with [the] medical treatment" for the pain in his jaw, and by refusing to provide Plaintiff with an outside appointment/consult with a maxillofacial specialist. (Doc. no. 1, p. 7).

> FN2. CCA is a private corporation which has contracted with the Federal Bureau of Prisons ("Bureau") to house federal prisoners at McRae.

> FN3. Defendants BOP, Lappin, and Burrell will be collectively referred to as the "Federal Defendants."

> FN4. Although Plaintiff listed "Dr. Mennill," as a Defendant, in their answer, the CCA Defendants have provided that Defendant's name is "Merrill." (Doc. no. 18, p. 3). Therefore, the **CLERK is DIRECTED** to change Defendant's name to reflect the proper spelling.

> FN5. Defendants the CCA, Wells, Ruggenber, Merrill, Roy, Pyon, and Hinson will be collectively referred to as the CCA Defendants.

FN6. The docket in the case lists McRae as a Defendant. However, a review of Plaintiff's complaint reveals that Plaintiff did not intend to name McRae as a stand alone Defendant. For example, Plaintiff uses McRae and CCA interchangeably through out his pleadings. Additionally, and more importantly, Plaintiff, when listing the parties to the case in his complaint identifies the CCA and/or McRae, a private secure contract facility, as one Defendant. (Doc. no. 1, p. 3). Thus, it appears Plaintiff did not name McRae as a separate Defendant. Additionally, Plaintiff requested waivers of service for all named Defendants, but notably not for McRae. In fact, Plaintiff has made no attempt whatso-ever to effect service on McRae. Therefore, Defendant McRae should be terminated.

In any event, the Court cautioned Plaintiff that he had 120 days from the date of this May 13, 2009 Order to serve the defendants. (Doc. no. 8, p. 3) (citing Fed.R.Civ.P. 4(m)). Defendant McRae has not been served, the time for effecting service under Rule 4 has expired, and Plaintiff has not attempted to effect service on this Defendant, let alone provide any reason for the failure to effect service. Accordingly, based on Plaintiff's failure to effect service, Defendant McRae should be dismissed from the case without prejudice. *Nelson v. Barden,* 145 Fed. App'x 303, 311 (11th Cir.2005) (*per curiam*) (affirming dismissal without prejudice for failure to timely effect service pursuant to Rule 4(m)).

According to Plaintiff, he suffered an injury to his jaw while playing soccer at McRae that caused him "extreme pain" in his jaw area. (*Id.* at 6). Plaintiff maintains that he submitted multiple sick call slips

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 768181 (S.D.Ga.)
**(Cite as: 2010 WL 768181 (S.D.Ga.))**

requesting medical care. (*Id.*). He apparently also requested to be seen by an outside maxillofacial specialist; that request was denied. (*Id.*). Plaintiff claims that Defendants Pyon, Ruggenberg, and Merrill never diagnosed Plaintiff with Temporo-mandibular Joint ("TMJ") disorder. (*Id.*). Rather, they only prescribed Plaintiff Tylenol or Acet-aminophen for temporary pain relief. (*Id.*). Plaintiff indicates that he has submitted various sick call slips requesting an X-ray of his jaw bone area. (*Id.*). However, Plaintiff states that these requests were denied by the medical staff because submitting sick call slips was not the proper manner by which to re-quest that kind of medical service. (*Id.*). Further-more, Plaintiff alleges that Defendant Hinson stated that Plaintiff's current medical condition did not warrant a review by a maxillofacial specialist. (*Id.*).

**\*2** Plaintiff further maintains that although the CCA's medical staff at McRae is not qualified to handle Plaintiff's medical need, his request to be seen by an "outside maxillofacial specialist" has been denied. (*Id.* at 8). As relief, Plaintiff seeks a court order requiring Defendants to schedule a con-sult with an maxillofacial specialist. (*Id.* at 9). Plaintiff also seeks monetary damages of $156,522,240. (*Id.* at 10). The Court resolves the matter as follows.[FN7]

> FN7. Other than identifying their positions with the BOP (doc. no. 1, p. 3), Plaintiff does not provide any facts concerning any actions taken by Defendants Lappin and Burrell in relation to the events forming the basis for his complaint.

## II. DISCUSSION

### A. Applicable Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.' " *Johnson v. Fleet Fin., Inc.,* 785 F.Supp. 1003, 1005 (S.D.Ga.1992) (Edenfield,

J.). In deciding a motion to dismiss under Rule 12(b) (6), all of the non-moving party's allegations must be presumed true and all reasonable infer-ences must be construed in the light most favorable to the non-moving party. *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Moreover, granting a motion to dismiss is disfavored and rare. *Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). Finally, while factual allega-tions in the complaint must be taken as true when considering a motion to dismiss, there is no require-ment that the Court must accept as true the plaintiff's conclusions of law. *See Solis-Ramirez v. United States Dep't of Justice,* 758 F.2d 1426. 1429 (11th Cir.1985). With these principles in mind, the Court turns its attention to the motions at hand.

### B. CCA Defendants

The Court turns first to Plaintiff's claims against Defendants the CCA, Wells, Ruggenber, Merrill, Roy, Pyon, and Hinson. Plaintiff attempts to hold the CCA and the individual employees of the privately operated prison liable for alleged viola-tions of his constitutional rights under *Bivens.* Thus, the instant case against these Defendants raises a threshold issue: whether liability under *Bi-vens* may extend to the individual employees of a privately operated prison. The Eleventh Circuit has held that it does not.[FN8]

> FN8. The Court recognizes that, in the past, it has allowed similar *Bivens* claims to proceed beyond initial screening under §§ 1915(e) and 1915A. *See, e.g., Padilla v. CCA,* CV 304-011, doc. no. 17, p. 3 (S.D.Ga. Oct. 26, 2004) (citing Sarro, 248 F.Supp.2d at 55-61). However, the Court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 768181 (S.D.Ga.)
**(Cite as: 2010 WL 768181 (S.D.Ga.))**

finds the reasoning of the Fourth and Tenth Circuits' recent decisions on the issue in *Holly v. Scott,* 434 F.3d 287 (4th Cir.2006), and *Peoples v. CCA Detention Centers,* 422 F.3d 1090 (10th Cir.2005), persuasive. Accordingly, the Court departs from its past practice and adopts the rationale of the Fourth and Tenth Circuits.

The Eleventh Circuit held that prisoners in a private federal facility are not entitled to *Bivens* relief when adequate state remedies are available. *Alba v. Montford,* 517 F.3d 1249, 1254 (11th Cir.2008). Additionally, the Fourth Circuit has noted, the fact that Defendants are employees of a private corporation should "counsel [ ] hesitation" in extending *Bivens. Holly,* 434 F.3d at 291. If the purpose of *Bivens* is to deter government officials from misconduct, it would appear doubtful that *Bivens* should be applied to private citizens. *Id.* The Constitution itself is meant to circumscribe the limits of *government* action, not private action. *Id.* Of course, Plaintiff may argue that, in operating a private prison housing federal inmates, Defendants have become government actors. The Court rejects this argument. As noted by the Fourth Circuit, under the Supreme Court's decision in *Richardson v. McKnight,* 521 U.S. 399, 405, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), "the operation of prisons is not a 'public function.' " *Holly,* 434 F.3d at 293. As a result, it is difficult to see how Defendants' actions in connection with Plaintiff's medical care at a privately operated prison can be properly considered government action. *See id.* at 293-94.

**\*3** More importantly, Plaintiff has an adequate remedy *against Defendants individually* in state court.

*Malesko* indicates that a *Bivens* claim should not be implied unless the plaintiff has no other means of redress or unless he is seeking an otherwise nonexistent cause of action against the individual defendant. Therefore, [the Court] will not imply a *Bivens* cause of action for a prisoner held in a private prison facility when [the Court] conclude[s] that there exists an alternative cause of

action arising under either state or federal law against the individual defendant for the harm created by the constitutional deprivation.

*Peoples v. CCA Detention Centers,* 422 F.3d 1090, 1103 (10th Cir.2005); *see also Holly,* 434 F.3d at 295-96. "Because [Plaintiff] possesses an alternative remedy for his alleged injury, no action under [ *Bivens* ] lies." *Holly,* 343 F.3d at 297 (Motz, J., concurring).

Plaintiff alleges that the CCA Defendants provided him with substandard healthcare. Georgia clearly provides him with a tort remedy in state court. *See* O.C.G.A. § 9-3-70 (explaining that "medical malpractice" includes all claims "arising out of" "[h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care"). Indeed, Plaintiff possesses an "arguably superior" cause of action "under the state law of negligence." *Holly.* 434 F.3d at 287. Georgia law provides Plaintiff with a cause of action for negligence and medical malpractice against Defendants. *See, e.g., ARA Health Services v. Stitt,* 250 Ga.App. 420, 420, 551 S.E.2d 793, 794 (2001) (former inmate brought claims of negligence and medical malpractice against doctor, prison officials, and medical services corporation). Plaintiff may also sue for punitive damages. *See id.* In fact, in addition to his causes of action against the individual CCA Defendants, in state court Plaintiff may even be able to recover against CCA on a theory of *respondeat superior, see, e.g., Dozier v. Clayton County Hosp. Auth.,* 206 Ga.App. 62, 64-65, 424 S.E.2d 632, 634-35 (1992), which would not be a cognizable basis for liability in a *Bivens* action. *See Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir.2003); *see also Correctional Services Corp. v. Malesko,* 534 U.S. 61, 63, 122 S.Ct. 515, 151 L.Ed.2d 456 (refusing to allow *Bivens* claim against private entity operating a halfway house under contract with Bureau of Prisons).

Concerning the CCA, *Bivens* does not extend to allow recovery against private corporations like CCA which operate facilities under contract with the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 768181 (S.D.Ga.)
**(Cite as: 2010 WL 768181 (S.D.Ga.))**

Bureau of Prisons. *See Correctional Services Corp. v. Malesko.* 534 U.S. at 63.

In sum, Plaintiff has an adequate and effective remedy in state court against the CCA Defendants. As a result, extending liability in the instant case is not necessary either to afford Plaintiff with a remedy or to deter unconstitutional conduct. Indeed, Plaintiff possesses state law claims which "an inmate in a government-run facility would not have" because they would be barred by the Federal Tort Claims Act. *Holly,* 434 F.3d at 287. Having concluded that *Bivens* may not be extended to the instant case, Plaintiff's claims should be dismissed. Accordingly, Defendants the CCA, Wells, Ruggenber, Merrill, Roy, Pyon, and Hinson should be dismissed from this action.

## C. Federal Defendants

*4 Plaintiff also names Harley Lappin, James Burrell, and the BOP as Defendants. The Federal Defendants argue that Plaintiff fails to state any claim against them and has failed to exhaust his administrative remedies. (Doc. no. 33). Additionally, the Federal Defendants argue that the BOP is not subject to a *Bivens* suit, and thus Plaintiff cannot state a cognizable claim against the BOP.

Plaintiff, on the other hand, argues that this Court has subject matter jurisdiction over his claims. Additionally, Plaintiff argues that he has stated cognizable claims against the Federal Defendants for violation of the Fifth and Eighth Amendments of the Constitution. (Doc. no. 34). Plaintiff also argues that he has fully exhausted his administrative remedies. The Federal Defendants have the better argument.

As an initial matter, the Court lacks subject matter jurisdiction over Plaintiff's claims against the BOP because *Bivens* does not extend to federal agencies and because the United States is "immune to suit." *Nails v. Coleman Low Fed. Inst.,* 307 Fed. App'x 296, 298 (11th Cir.2009) (citing *F.D.I.C. v. Meyer,*

510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Bivens,* 403 U.S. at 409). Accordingly, Plaintiff has failed to state a claim against the BOP.

Next, while Plaintiff names Defendants Lappin and Burrell in his complaint, he does not mention these Defendants, let alone assert any wrong doing regarding these Defendants, in his statement of claims. " Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993) [FN9] (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. *Douglas v. Yates,* 535 F.3d 1316, 1322-23 (11th Cir.2008) (citing *Pamel Corp. v. P.R. Highway Auth.,* 621 F.2d 33, 36 (1st Cir.1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong,")). Thus, in the absence of an allegation of any connection between any actions of Defendants Lappin and Burrell with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants. On that basis alone, the Federal Defendants could be dismissed.

> FN9. Although the Court relies on cases brought pursuant to 42 U.S.C. § 1983, the Eleventh Circuit has held that § 1983 law generally applies to *Bivens* actions as well "[b]ecause of the similarity in the causes of action ...." *Wilson v. Blankenship,* 163 F.3d 1284, 1288 (11th Cir.1998) (citing *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir.1995) (*per curiam* )).

However, even if Defendants Lappin and Burrell had specifically been mentioned as the supervisors of the CCA Defendants, "It is well established in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 768181 (S.D.Ga.)
**(Cite as: 2010 WL 768181 (S.D.Ga.))**

this circuit that supervisory officials are not liable under [*Bivens* ] for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Darymple v. Reno,* 334 F.3d 991, 995 (11th Cir.2003) (citations omitted). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. *Hartley,* 193 F.3d at 1269 (citing *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990)). Plaintiff has not alleged that Defendants Lappin and Burrell were personally involved with Plaintiff's medical treatment at the CCA. Similarly, Plaintiff fails to allege a "causal connection" between Defendants Lappin and Burrell and the asserted constitutional violation. *See Zatler v. Wainwright.* 802 F.2d 397, 401 (11th Cir.1986) (*per curiam* ) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse [FN10] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," *Brown,* 906 F.2d at 671, or when "the supervisor's improper 'custom or policy ... result[s] in deliberate indifference to constitutional rights.' " *Hartley,* 193 F.3d at 1269 (quoting *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003). Plaintiff has not made the necessary showing with respect to Defendants Lappin and Burrell. Accordingly, Plaintiff fails to state a claim for relief against these Defendants.

> FN10. The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the

supervising official must be *obvious, flagrant, rampant and of continued duration,* rather than isolated occurrences." *Brown,* 906 F.2d at 671 (emphasis added).

### III. CONCLUSION

**\*5** For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant McRae be **TERMINATED,** that Defendants' motions to dismiss (doc. nos.29, 33) be **GRANTED,** that Plaintiff's complaint be **DISMISSED,** and that this civil action be **CLOSED.**

SO REPORTED and RECOMMENDED this *30th* day of November, 2009, at Augusta, Georgia.

S.D.Ga.,2010.
Silvian-Medrano v. Federal Bureau of Prisons
Slip Copy, 2010 WL 768181 (S.D.Ga.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT G

Westlaw.

Slip Copy, 2010 WL 146297 (D.S.C.)
**(Cite as: 2010 WL 146297 (D.S.C.))**

Only the Westlaw citation is currently available.

United States District Court,
D. South Carolina,
Greenville Division.
Timothy Wayne EDDINGTON, # 15729-171, aka
Timothy W. Eddington, former # s 3408, 294715,
109921, Plaintiff,
v.
Eldon WYATT; Columbia Care Center; Patricia
Prout; Doctor Harden; Nurse Sarah; Doctor Gerald
A. Wilson, Defendants.
**Civil Action No. 8:09-cv-02669-RBH.**

Jan. 11, 2010.

Timothy Wayne Eddington, Springfield, MO, pro se.

**ORDER**

R. BRYAN HARWELL, District Judge.

**\*1** Pending before the Court is Plaintiff Timothy
Wayne Eddington's ("Plaintiff") Objections to the
Report and Recommendation ("R & R") of United
States Magistrate Judge Bruce Howe Hendricks.
This matter is before the Court upon the *pro se*
Plaintiff's Complaint alleging deliberate indiffer-
ence and negligence against several defendants. In
the R & R, the Magistrate Judge recommends that
the Court dismiss the Complaint without prejudice
and without issuance and service of process. The
Plaintiff filed timely objections to the R & R, and
this matter is ripe for review.

*Procedural History*

In accordance with 28 U.S.C. § 636(b)(1)(B) and
Local Civil Rule 73.02 (D.S.C.), this matter was re-
ferred to United States Magistrate Judge Bruce
Howe Hendricks for pretrial handling. The Magis-

trate Judge issued an R & R on December 10, 2009,
in which she recommends that the Court dismiss the
Complaint. Subsequently, the Plaintiff filed timely
objections to the R & R.

*Standard of Review*

The Magistrate Judge makes only a recommenda-
tion to the Court. The recommendation has no pre-
sumptive weight. The responsibility to make a final
determination remains with the Court. *Mathews v.
Weber,* 423 U.S. 261, 270-71, 96 S.Ct. 549, 46
L.Ed.2d 483 (1976). The Court is charged with
making a *de novo* determination of those portions
of the R & R to which specific objection is made,
and the Court may accept, reject, or modify, in
whole or in part, the recommendation of the Magis-
trate Judge or recommit the matter with instruc-
tions. 28 U.S.C. § 636(b) (1).

The Court is obligated to conduct a *de novo* review
of every portion of the Magistrate Judge's report to
which objections have been filed. *Id.* However, the
Court need not conduct a *de novo* review when a
party makes only general and conclusory objections
that do not direct the Court to a specific error in the
Magistrate Judge's proposed findings and recom-
mendations. *Orpiano v. Johnson,* 687 F.2d 44,
47-48 (4th Cir.1982).

*Discussion*

The Plaintiff, a prisoner incarcerated at the U.S.
Medical Center for Federal Prisoners, brings this
civil action against Columbia Care Center, its Dir-
ector, and medical personnel who are either em-
ployed by, or under contract with, that facility. As
such, the Magistrate Judge treated this suit as a *Bi-
vens* action, and recommends that the Court dismiss
the Plaintiff's Complaint. In what the Plaintiff la-
bels as his first objection, the Plaintiff concedes
that this case should be treated as a *Bivens* action.
However, the Plaintiff objects to the Magistrate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT G**

Slip Copy, 2010 WL 146297 (D.S.C.)
(Cite as: 2010 WL 146297 (D.S.C.))

Judge's recommendation that *Bivens* should not be extended here to provide a right to an inmate who has an adequate state court remedy. An inmate claiming negligence in South Carolina can file a negligence or malpractice action against the alleged defendants in a Court of Common Pleas. *See, e.g., Mitchell v. Holler,* 311 S.C. 406, 429 S.E.2d 793 (S.C.1993); *Yarborough v. Rogers,* 306 S.C. 260, 411 S.E.2d 424 (S.C.1991). As the Magistrate Judge clearly explained, the Fourth Circuit has thus explicitly declined to extend *Bivens* to such an inmate. *See Holly v. Scott,* 434 F.3d 287, 291 (4th Cir.2006).

*2 In what is labeled as the Plaintiff's second objection, the Plaintiff apparently objects to the fact that neither the Fourth Circuit Court of Appeals nor the Supreme Court has decided whether *Bivens* liability can be imposed upon a private individual. Nonetheless, the Magistrate Judge is correct. In fact, the Fourth Circuit has specifically declined to extend *Bivens* liability to private individuals whose only relationship to the federal government was by contract, at least where the plaintiff had adequate tort remedies under state law. *See Holly,* 434 F.3d at 291-93 (declining to extend *Bivens* to impute liability where "federal government has no stake in [defendant corporation] other than a contractual relationship"; further, that contractual relationship is not enough "to create such liability for its individual private employees"); *see also Rendell-Baker v. Kohn,* 457 U.S. 830, 840-41, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (doing business under contract with the government is not enough, by itself, to subject a defendant to constitutional liability).

The Plaintiff also objects by stating that his "claim is more than just merely a claim of negligence or medical malpractice" and that "the medical staff showed deliberate indifference to [his] medical condition." [Objections, p. 2]. Again, this assertion does not change the fact that *Bivens* should not be extended to the Plaintiff in the instant matter because he has an adequate state court remedy. Finally, the Plaintiff makes the conclusory statement

that his Complaint should not have been "dismiss without prejudice," but he fails to direct the Court to a specific error in the Magistrate Judge's proposed findings and recommendations.

Having thoroughly reviewed the entire record, the Plaintiff's objections, and the applicable law, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. As such, the Court agrees with the recommendations of the Magistrate Judge and finds that summary dismissal is appropriate.

### Conclusion

Based on the foregoing, it is

**ORDERED** that the Magistrate Judge's R & R is adopted and incorporated herein by reference, and the Plaintiff's Complaint is dismissed *without prejudice* and without issuance and service of process.

**IT IS SO ORDERED.**

Report and Recommendation

BRUCE HOWE HENDRICKS, United States Magistrate Judge.

Plaintiff, a prisoner incarcerated at the U.S. Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri, files this civil action against Columbia Care Center (CCC), its Director, and medical personnel who are either employed by, or under contract with, that facility. According to the plaintiff, he contracted Methicillin-Resistant Staphylococcus Aureus ("MRSA"), commonly referred to as a staph infection, after each of three surgeries that were performed on him while he was housed at CCC. He also alleges pain medication was intentionally withheld from him. He seeks damages.

*3 Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 146297 (D.S.C.)
**(Cite as: 2010 WL 146297 (D.S.C.))**

sions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 324-25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Nasim v. Warden, Maryland House of Correction,* 64 F.3d 951 (4th Cir.1995) (*en banc* ); *Todd v. Baskerville,* 712 F.2d 70 (4th Cir.1983); and *Boyce v. Alizaduh,* 595 F.2d 948 (4th Cir.1979). *Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); and *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). When a federal court is evaluating a *pro se* complaint the plaintiff's allegations are assumed to be true. *Fine v. City of N. Y.,* 529 F.2d 70, 74 (2nd Cir.1975). However, even under this less stringent standard, the complaint submitted in the above-captioned case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Soc. Servs.,* 901 F.2d 387 (4th Cir.1990).

The undersigned is treating this as a *Bivens* action. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 and other civil rights statutes because they do not act under color of *state* law.

A " *Bivens* claim for damages ... requires proof of two elements: (1) a violation of [Plaintiff's] constitutional rights, (2) by agents acting under color of federal law." *Goldstein v. Moatz,* 364 F.3d 205, 210 (4th Cir.2004) (citing *Bivens,* 403 U .S. at 389). Neither the Court of Appeals for the Fourth Circuit nor the Supreme Court has decided whether *Bivens* liability can be imposed upon a private individual. *See Holly v. Scott,* 434 F.3d 287, 291 (4th Cir.2006) . However, the Court of Appeals for the Fourth Circuit has explicitly declined to extend *Bivens* to provide a right of action to an inmate who has an adequate state court remedy. *Id.* at 297.

In South Carolina, an inmate raising claims of negligence can file a medical malpractice action or negligence action against the defendants in a Court of Common Pleas. See, *e.g., Mitchell v. Holler,* 311 S.C. 406, 429 S.E.2d 793 (1993); and *Yarborough v. Rogers,* 306 S.C. 260, 411 S.E.2d 424 (1991). Consequently, the plaintiff has an adequate state court remedy of which he may avail himself. Furthermore, it is a well settled rule of law that claims of negligence or medical malpractice do not support an action for damages in a civil rights action. *See Daniels v. Williams,* 474 U.S. 327, 328-336 & n. 3 (1986); *Davidson v. Cannon,* 474 U.S. 344, 345-348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); and *Ruefly v. Landon,* 825 F.2d 792, 793-794 (4th Cir.1987).

### RECOMMENDATION

**\*4** Accordingly, it is recommended that the District Court dismiss the complaint in the above-captioned case *without prejudice* and without issuance and service of process. *See Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe,* 998 F.2d 201, 202-204 & n. \* (4th Cir.1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir.1993); *Boyce v. Alizaduh, supra; Todd v. Baskerville, supra,* 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1915A [the court shall review, as soon as practicable after docketing,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 146297 (D.S.C.)
**(Cite as: 2010 WL 146297 (D.S.C.))**

prisoner cases to determine whether they are sub-
ject to any grounds for dismissal].

D.S.C.,2010.
Eddington v. Wyatt
Slip Copy, 2010 WL 146297 (D.S.C.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT H

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 3542707 (N.D.Tex.)
(Cite as: 2006 WL 3542707 (N.D.Tex.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
Justin LONGMIRE, Plaintiff,
v.
Dr. Michael CARROLL, et al., Defendants.
No. 3-06-CV-1503-P.

Oct. 10, 2006.
Dec. 8, 2006.

Justin Longmire, Seagoville, TX, pro se.

ORDER

JORGE A. SOLIS, District Judge.

*1 After conducting a review of the pleadings, files and records in this case, and the Findings and Recommendation of the United States Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1), I am of the opinion that the Findings and Recommendation of the Magistrate Judge are correct, and they are hereby accepted as the Findings of the Court.

SO ORDERED.
JEFF KAPLAN, Magistrate Judge.

FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The findings and recommendation of the magistrate judge are as follow:

I.

This is a pro se civil rights action brought by Justin Longmire, a federal prisoner, against various doctors and nurses at Mesquite Community Hospital. On August 21, 2006, plaintiff filed a complaint and an application to proceed in forma pauperis. Because the information provided by plaintiff in his pauper's affidavit indicates that he lacks the funds necessary to prosecute this case, the court granted leave to proceed in forma pauperis and allowed the complaint to be filed. A Spears[FN1] questionnaire then was sent to plaintiff in order to obtain additional information about the factual basis of his suit. Plaintiff answered the questionnaire on September 20, 2006. The court now determines that this action should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2).

FN1. Spears v. McCotter, 766 F.2d 179 (5th Cir.1985).

II.

On November 28, 2005, plaintiff was transported from FCI Seagoville to Mesquite Community Hospital for treatment of osteomyelitis and medical problems related to diabetes. During his six week stay in the hospital, plaintiff alleges that various doctors and nurses violated his constitutional rights by providing inadequate medial care. In particular, plaintiff alleges that he sustained nerve damage and bruises on his foot during surgery to amputate his left fifth toe. Plaintiff also suffered a burn on the inside of his right arm when nurses improperly inserted an IV. Throughout his hospitalization, plaintiff alleges that the nursing staff was rude and abusive towards him. One nurse forced plaintiff to take medication after dropping the pills on the floor. Another nurse administered an insulin injection without cleaning the injection site. A third nurse delayed in providing him with pain medication. Although plaintiff reported these incidents to Dr. Michael Carroll, his head physician, no corrective action was taken. By this suit, plaintiff seeks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT H**

Not Reported in F.Supp.2d, 2006 WL 3542707 (N.D.Tex.)
**(Cite as: 2006 WL 3542707 (N.D.Tex.))**

$2.5 million in compensatory damages.

### A.

A district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes that the action:

(1) is frivolous or malicious;

(2) fails to state a claim upon which relief can be granted; or

(3) seeks money relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989); *Henson-El v. Rogers,* 923 F.2d 51, 53 (5th Cir.), *cert. denied,* 111 S.Ct. 2863 (1991). A complaint fails to state a claim "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The court must assume that the facts set forth in the complaint are true. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). However, dismissal is proper where "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the present defendants to liability." *Jacquez v. Procunier,* 801 F.2d 789, 791-92 (5th Cir.1986).

### B.

**\*2** The court initially questions whether plaintiff may sue any of the defendants, all of whom are private individuals employed by a private hospital, for civil rights violations. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized a private right of action for damages resulting from the unconstitutional conduct of federal officers acting under color of federal law. However, the Court has since refused to extend the *Bivens* remedy to suits against private entities acting under contract with the federal government. *See Correctional Services Corp. v. Malesko,* 534 U.S. 61, 62, 122 S.Ct. 515, 517, 151 L.Ed.2d 456 (2001). Although the *Malesko* Court did not address the question of whether a *Bivens* action might lie against a private individual in similar circumstances, two circuit courts have held that no such action exists. *See Peoples v. CCA Detention Center,* 422 F.3d 1090, 1103 (10th Cir.2005), *vacated in part and rev'd in part,* 449 F.3d 1097 (10th Cir.2006) (en banc), *pet. for cert. filed* (Aug. 15, 2006) (No. 06-6052); *Holly v. Scott,* 434 F.3d 287, 288 (4th Cir.), *cert. denied,* 126 S.Ct. 2333 (2006). *But see Bellecourt v. United States,* 784 F.Supp. 623, 629 (D.Minn.1992), *aff'd in relevant part,* 994 F.2d 427 (8th Cir .1993), *cert. denied,* 114 S.Ct. 1049 (1994) (allowing federal prisoner to assert *Bivens* claim against private physician who provided medical care to inmates under contract with the prison).

*Holly* is particularly instructive. There, the Fourth Circuit refused to impose *Bivens* liability on a physician who provided medical care to prisoners at a privately run correctional facility under contract with the federal government because the alleged unconstitutional conduct was "not fairly attributable to the federal government" and because the prisoner "has adequate remedies under state law for his alleged injuries." *Holly,* 434 F.3d at 288. Similarly, in this case, plaintiff has failed to show how the conduct of the doctors and nurses at Mesquite Community Hospital are attributable to the federal government. If plaintiff was harmed by the negligent actions of these private defendants, he may seek redress under Texas law for his alleged injuries. Dismissal is proper for this reason alone.[FN2]

> FN2. The court recognizes that this result may be different if plaintiff was a state

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 3542707 (N.D.Tex.)
(Cite as: 2006 WL 3542707 (N.D.Tex.))

prisoner and brought this action under 42 U.S.C. § 1983. *See West v. Atkins,* 487 U.S. 42, 55-57, 108 S.Ct. 2250, 2258-60, 101 L.Ed.2d 40 (1988) (imposing section 1983 liability on private physician under contract with the state to provide medical care to inmates).

C.

Even if plaintiff can sue under *Bivens,* his claims are without merit. The Prison Litigation Reform Act prohibits a prisoner from bringing an action for mental or emotional injury suffered while in custody "without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The injury required by this statute "must be more than *de minimus* [sic], but need not be significant." *Alexander v. Tippah County, Mississippi,* 351 F.3d 626, 630-31 (5th Cir.2003), *cert. denied,* 124 S.Ct. 2071 (2004). Here, plaintiff alleges that nurses administered insulin without cleaning the injection site, forced him to take a pill after dropping it on the floor, delayed in responding to his requests for pain medication, and generally were abusive and rude during his hospital stay. However, there is no indication that plaintiff suffered any physical injury as a result of this conduct.

*3 Nor has plaintiff alleged any facts which, if proved, establish deliberate indifference on the part of defendants. In order to establish a constitutional violation based on the denial of medical care, a plaintiff must show that the defendants acted with deliberate indifference such as to cause the "unnecessary or wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S .Ct. 285, 291, 50 L.Ed.2d 251 (1976). This, in turn, requires proof that the defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir.1996), *citing Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). Plaintiff has failed to meet that "extremely high standard." *See*

*Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001). Although plaintiff claims that he sustained bruises and nerve damage to his foot during surgery and that his arm was burned when nurses improperly inserted an IV, no facts are alleged which suggest that defendants engaged in any conduct evidencing "a wanton disregard for any serious medical needs." *See Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985). At most, plaintiff has stated a claim for medical negligence, which is not actionable under *Bivens. See Lentworth v. Potter,* No. 7-03-CV-156-BD, 2006 WL 1975199 at *4 (N.D.Tex. Jul. 14, 2006) (Kaplan, J.) (citing cases).

## RECOMMENDATION

Plaintiff's complaint should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2).

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996).

N.D.Tex.,2006.
Longmire v. Carroll
Not Reported in F.Supp.2d, 2006 WL 3542707 (N.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT I

Westlaw.

196 Fed.Appx. 447, 2006 WL 2404489 (C.A.8 (Minn.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 196 Fed.Appx. 447, 2006 WL 2404489 (C.A.8 (Minn.)))**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eighth Circuit Rules 28A, 32.1A. (Find CTA8 Rule 28A and Find CTA8 Rule 32.1A)

United States Court of Appeals,
Eighth Circuit.
Vernon BONNER, Appellant,
v.
FEDERAL BUREAU OF PRISONS; T.C. Outlaw;
Sue McIntosh, Appellees.
No. 05-2892.

Submitted: Aug. 11, 2006.
Filed: Aug. 22, 2006.

**Background:** Inmate filed *Bivens* action against prison officials, alleging handling of incoming legal mail violated his constitutional rights. The United States District Court for the District of Minnesota, 2005 WL 1073644, dismissed action, and inmate appealed.

**Holdings:** The Court of Appeals held that:
(1) alleged violation of prison regulations in handling mail did not give rise to violation of inmate's First Amendment rights, and
(2) remand was required to permit district court to address allegation that warden violated his right to procedural due process by failing to notify inmate that his incoming mail had been returned.

Affirmed in part and remanded in part.

West Headnotes

**[1] Constitutional Law 92 ⬤⟳2289**

92 Constitutional Law

92XVIII Freedom of Speech, Expression, and Press
92XVIII(Z) Prisons and Pretrial Detention
92k2288 Incoming Mail
92k2289 k. In General. Most Cited Cases
(Formerly 92k90.1(1.3))

**Prisons 310 ⬤⟳264**

310 Prisons
310II Prisoners and Inmates
310II(G) Access to Courts and Public Officials
310k264 k. Communication with Courts, Officers, or Counsel. Most Cited Cases
(Formerly 310k4(9))
Even if incoming legal mail, which inmate did not obtain prior authorization to receive and which did not bear the required markings for treatment as special mail, had complied with prison regulations, prison officials' violation of prison regulations in handling mail did not give rise to violation of inmate's First Amendment rights. U.S.C.A. Const.Amend. 1.

**[2] Federal Courts 170B ⬤⟳939**

170B Federal Courts
170BVIII Courts of Appeals
170BVIII(L) Determination and Disposition of Cause
170Bk937 Necessity for New Trial or Further Proceedings Below
170Bk939 k. Questions Not Passed on Below. Most Cited Cases
Remand was required to permit district court to address federal inmate's allegation that warden violated his right to procedural due process by failing to notify inmate that his incoming mail had been returned. U.S.C.A. Const.Amend. 5.

*447 Appeal from the United States District Court for the District of Minnesota.Vernon Bonner, Du-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT I**

196 Fed.Appx. 447, 2006 WL 2404489 (C.A.8 (Minn.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 196 Fed.Appx. 447, 2006 WL 2404489 (C.A.8 (Minn.)))**

luth, MN, pro se.

Lonnie F. Bryan, Asst. U.S. Attorney, U.S. Attorney's Office, Minneapolis, MN, for Appellees.

Before MURPHY, BYE, and MELLOY, Circuit Judges.

[UNPUBLISHED]

PER CURIAM.

**\*\*1** Federal inmate Vernon Bonner appeals the district court's dismissal, under Federal Rule of Civil Procedure 12(b)(6), of his *Bivens* FN1 complaint. Bonner alleged that **\*448** defendants violated his constitutional rights by failing to deliver to him certain incoming legal mail that was addressed in compliance with prison regulations, and that the warden failed to notify him that the mail had been rejected. FN2

> FN1. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
>
> FN2. Bonner has not raised any argument on appeal regarding the dismissal of his Sixth Amendment claim, and thus he has waived review of the issue. *See XO Missouri, Inc. v. City of Maryland Heights,* 362 F.3d 1023, 1025 (8th Cir.2004).

[1] We review de novo the dismissal of Bonner's complaint.. *See Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697-98 (8th Cir.2003). We agree with the district court that Bonner failed to state a First Amendment claim. He did not challenge the constitutionality of the prison regulations under which his mail was rejected. Rather, he alleged that his mail should not have been returned because it complied with the regulations. We disagree with that allegation. The twice-rejected mail package did not satisfy the requirements listed in the Federal Bureau of

Prisons Program Statement 5800.10 (Nov. 3, 1995): Bonner did not obtain prior authorization to receive the package nor did it bear the required markings for treatment as special mail or any marking indicating authorized materials were enclosed such that prior authorization would not be required. Even if Bonner's mail had complied with the regulations, his claim would still fail because a violation of prison regulations in itself does not give rise to a constitutional violation. *Cf. Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir.2003) (no federal constitutional liberty interest in having prison officials follow prison regulations).

[2] Inmates do have a right to procedural due process, however, when their mail is rejected. *See Procunier v. Martinez,* 416 U.S. 396, 417-19, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (decision to censor or withhold delivery of letter must be accompanied by minimum procedural safeguards; inmate should be notified of rejection), *overruled on other grounds by, Thornburgh v. Abbott,* 490 U.S. 401, 413-14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Jacklovich v. Simmons,* 392 F.3d 420, 433 (10th Cir.2004) (same). The district court did not address Bonner's allegation that defendant T.C. Outlaw failed to notify him that his incoming mail had been returned. Thus we remand as to defendant Outlaw for consideration of this claim. *See Schweiss v. Chrysler Motors Corp.,* 922 F.2d 473, 476 (8th Cir.1990).

Accordingly, we remand for consideration of the procedural due process claim, and we affirm in all other respects.

C.A.8 (Minn.),2006.
Bonner v. Federal Bureau of Prisons
196 Fed.Appx. 447, 2006 WL 2404489 (C.A.8 (Minn.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.