# EMPLOYMENT AGREEMENT

**DATE:**   _January 1, 2005_

**PARTIES AND ADDRESSES:**

Advanced Practice Solutions, P.A.                                ("Employer")

_Gregory Salmi, MD_                                ("Employee")

**RECITALS:**

A.     Employer is a professional corporation duly organized under Minnesota law which provides services in medicine.

B.     Employee is duly licensed as a MD under Minnesota law and certified as a MD by a national professional medical organization recognized by the Minnesota Board of Medicine.

C.     Employer is of the opinion that the services of Employee will be of value to Employer and desires to employ Employee on the terms and conditions set forth in this Agreement.

**AGREEMENTS:**

## ARTICLE 1.
## TERM OF EMPLOYMENT; DUTIES; FEES; OCCUPATIONAL HEALTH

1.1     _Term of Employment._  Employer employs Employee as a MD for a term beginning on _January 1, 2005_ and continuing until terminated as provided in Article 3.

1.2     _Duties and Supervision._  During the term of this Agreement, Employee agrees to devote his or her full time and best efforts to the practice and affairs of Employer and to perform such services and duties as may from time to time be assigned to him or her by Employer. Employee acknowledges and agrees that Employer cannot guarantee Employee a minimum number of hours of work and that Employer may not have work available for Employee from time to time. Employee shall be subject to the supervision and direction of Employer as to all matters relating to the performance of his or her services, except to the extent Employee is required to be supervised and directed by physicians with whom Employee may work pursuant to the terms of a Service Agreement between Employer and a physician, clinic, medical group, hospital, nursing

- 1 -

Dep. **EXHIBIT**
1 Peters
9-9-10

EXHIBIT A

facility, or other health care organization ("Employer Clients"). Employee agree to furnish high quality patient care and services in a professional and ethical manner, in accordance with all applicable laws and regulations and industry standards. Employee further agrees to abide by any and all policies, rules and regulations promulgated by Employer.

    1.3    <u>Fees</u>. Except as from time to time determined by Employer, all fees resulting from Employee's professional services or professional activities of any type shall accrue and belong to Employer.

    1.4    <u>Occupational Health</u>. Employee hereby agrees to obtain or submit to all occupational health tests, screenings, inoculations, and other items (including, but not limited to, TB and influenza tests) that are reasonably requested by Employer to perform the services required under this Agreement. Upon the reasonable request of Employer, Employee also agrees to submit to other health care tests and exams Employer deems necessary and appropriate for employment purposes.

## ARTICLE 2.
## COMPENSATION AND PROFESSIONAL LIABILITY INSURANCE

    2.1    <u>Compensation for Services</u>. Subject to the provisions for termination contained in Article 3, Employer shall pay Employee as compensation for services rendered the amount set forth on SCHEDULE 2.1 attached hereto. Such amount shall be payable in accordance with Employer's normal payroll schedule and practices, and shall be subject to deductions and withholds for Social Security taxes and any other sums required by law. Employee's compensation and performance shall be subject to periodic reviews by Employer. Employee shall furnish Employer with time cards or other documentation requested by Employer to establish the hours worked each pay period. Employee shall not bill or collect any compensation from Employer's Clients or any patients to whom Employee furnishes services.

    2.2    <u>Professional Liability Insurance</u>. Employer shall carry and pay the premiums on professional liability insurance providing malpractice coverage and protection for Employer and Employee during Employee's employment with Employer with such limits as Employer deems advisable. In the event Employee's employment is terminated for any reason, Employer shall not be responsible for purchasing a reporting endorsement or tail-coverage which provides professional liability insurance coverage for Employee for the period subsequent to termination of Employee's employment and Employee shall be responsible for obtaining such professional liability insurance coverage.

## ARTICLE 3.
## TERMINATION AND COVENANT NOT TO COMPETE

    3.1    <u>Termination</u>. Employee's employment under this Agreement, and (except as provided in Section 3.3 hereof) all terms of this Agreement, shall terminate as provided below:

    A.    By mutual written agreement of the parties.

- 2 -

B.      Upon the death of Employee.

C.      By either Employer or Employee upon thirty (30) days written notice, for any reason or no reason.

D.      By Employer, in Employer's sole discretion, immediately without notice upon the occurrence of any one of the following events:

(1)      The placement of any penalty, condition or limitation on Employee's license or ability to practice as a MD (including, but not limited to, revocation or suspension) as a result of action under the authority of any licensing authority of any state or jurisdiction;

(2)      The expulsion, suspension or disciplining or loss of certification by Employee as the final action of any professional organization;

(3)      The resignation by Employee from any professional or scientific organization while under threat of disciplinary action;

(4)      The conviction of Employee of any crime punishable as a felony or the commitment of any act by Employee of dishonesty with respect to Employer, Employer's clients or any other employee of Employer;

(5)      The commission by Employee of any willful or negligent act which has the effect of injuring the business or reputation of Employer, any Client of Employer or any other employee of Employer; or

(6)      The failure or refusal of Employee to faithfully or diligently perform or comply with the provisions of this Agreement or the policies, standards and regulations established from time to time by Employer.

E.      Upon the insolvency or bankruptcy of Employer.

3.2     _Records and Files._  All corporate records and files are owned by Employer.  In the event of the termination of Employee, possession of each corporate record and file shall be retained by Employer.

3.3     _Covenant Not To Compete._  Employee and Employer acknowledge that the restrictions set forth in this Section 3.3 have been carefully considered and negotiated between the parties.  Specifically, Employee understands and acknowledges that Employer has entered into or may enter into Service Agreements with physicians, clinics, medical groups, hospitals, nursing facilities and other health care organizations ("Clients") to furnish MD services, and that Employee may furnish MD services to such Clients as a leased employee.  Although Employee may serve as a leased employee of Clients, Employee understands and agrees that he or she is employed by and an employee of Employer, and has a duty of loyalty to Employer.  Employee further agrees and acknowledges that Employer has invested significant time, resources and

- 3 -

expertise in locating, recruiting and matching the needs of Clients with the needs of Employee and others employed by Employer. In recognition of these acknowledgements and understandings, Employer and Employee agree that the covenants set forth in this Section 3.3 are reasonable and will not unduly restrict Employee in securing other employment in the event of Employee's termination.

(a)     During the term of Employee's employment with Employer, and for a period of one (1) year after Employee's termination of employment for any reason, Employee shall not: (i) become an employee of, contract with, form a partnership or joint venture with or otherwise establish any type of relationship with any Client of Employer's or any affiliate of such Client; or (ii) counsel, advise or otherwise encourage any other employee or potential employee of Employer to become an employee of, contract with, form a partnership or joint venture with or otherwise establish any type of relationship with any Client of Employer's or any affiliate of such Client. The parties acknowledge and agree that the restrictions set forth herein may be waived by Employer in writing in Employer's sole discretion, but may not be waived or terminated orally or otherwise.

(b)     In the event of a breach of Section 3.3(a), it is agreed that Employer, in addition to the other remedies available, shall be entitled, as a matter of right, to injunctive relief in any court of competent jurisdiction, plus reasonable attorneys' fees for securing such relief.

(c)     Employer's failure to immediately enforce its rights hereunder shall not be construed as a waiver of its right to enforce its right at a later time or to obtain other equitable relief to restrain Employee from such further violation.

## ARTICLE 4.
## GENERAL PROVISIONS

4.1     <u>Prior Agreements; Modification</u>. This Agreement supersedes and replaces all prior written and oral agreements and understandings between the parties with respect to the subject matter addressed herein, and it may not be changed or terminated orally. No modification, termination or attempted waiver of any of its provisions shall be valid unless in writing signed by the party against whom the same is sought to be enforced.

4.2     <u>Governing Law</u>. This Agreement and all questions arising in connection with it shall be governed by the laws of the State of Minnesota.

4.3     <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of Employer, its successors and assigns, and Employee, his or her heirs and legal representatives. Employer may transfer or assign this Agreement upon written notice to Employee, but the rights of Employee hereunder are personal and may not be assigned or transferred except for benefits transferable to Employee's heirs and legal representatives as provided under this Section 4.3.

4.4     <u>Enforceability</u>. Employer and Employee agree that if any provision of this Agreement is held in a final judgment or determination of any court of law or administrative

- 4 -

Advanced Practice Sol 1 Fax:651-769-9178      Nov 10 2009 12:48pm   P006/007

agency of competent jurisdiction to be overbroad or otherwise unenforceable in any respect, such provision shall be deemed to be amended, and shall be binding upon Employee to the maximum extent deemed reasonable and enforceable by such court or administrative agency.  If the provision cannot be modified, that provision may be severed and the other parts of the Agreement shall remain enforceable.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date and year first above written.

ADVANCED PRACTICE SOLUTIONS, P.A.

By:_____
Its:_____

Employer

_____

Employee

- 5 -

Advanced Practice Sol | Fax:651-769-9178          Nov 10 2009 12:48pm P007/007

SCHEDULE 2.1
COMPENSATION

Employee's compensation during the first *[six months]* of employment with Employer, from ___January___, 2005 to ___June___, 2005 shall be a gross amount of $ _75.00_ per hour.  Thereafter, Employee's compensation shall be the amount determined in the sole discretion of the Board of Directors of Employer and set forth on a new Schedule 2.1 attached to this Agreement.

Effective Date of Schedule: ___January___, 2005

2138421-1
(19%01011.doc)

MAINFAX 7 pages.......... from 651 769 9178, for Meagher _Geer Central Fax, received 11/10/2009 12:58:02 PM [Central Standard Time]



FILE COPY

June 24, 2009

Advanced Practice Solutions, P.A.
8645 Eagle Point Blvd. No.
Lake Elmo, MN 55042

Re:    Our Client:          Patricio Flores, husband of Maria Iñamagua Merchan
       Date of Death:       4-13-06

Dear Sir or Madam:

I represent Patricio Flores, husband of Maria Iñamagua Merchan, and her next-of-kin. Ms. Iñamagua was an inmate at the Ramsey County Detention Center from February 26th to April 3rd, 2006. She received inadequate care at the jail and died on or about April 13, 2006. Ramsey County has identified the jail doctor associated with her care and treatment as Dr. Gregory Salmi who was employed through Advanced Practice Solutions, P.A.

Enclosed please find a Patient Authorization for Release of Medical Information. The authorization is signed by Ms. Iñamagua's husband, Patricio Flores. Please identify any and all medical doctors, nurses or healthcare professionals involved in the care and treatment of my client. Please provide all medical records and clinic notes that any medical doctors, nurses or healthcare professionals made while Ms. Iñamagua was being treated by employees or agents of Advanced Practice Solutions.

Please provide a complete itemized bill for any services rendered to the jail which relate to Ms. Iñamagua Merchan.

Very truly yours,

Christopher R. Walsh

CRW/tpk

Enclosure

c:      Clients

EXHIBIT
1A
9-9-10

# EXHIBIT B



**EXHIBIT**

2

9-9-10

## Agreement
### Between Ramsey County and Advanced Practice Solutions, P.A.

This is an Agreement between Ramsey County, Minnesota, a political subdivision of the State of Minnesota, on behalf of the Sheriff's Department and the Community Corrections Department (collectively, "County") and Advanced Practice Solutions, P.A., 14790 119th St. N., Stillwater, MN 55082, a Minnesota corporation ("Contractor").

WHEREAS, The County has the legal obligation to meet the reasonable and necessary medical needs of detainees at the Ramsey County Adult Detention Center ("ADC"); and

WHEREAS, The County has the legal obligation to meet the reasonable and necessary medical needs of corrections clients at the Ramsey County Correctional Facility ("RCCF"), Boys Totem Town ("BTT"), and the Juvenile Detention Center ("JDC"); and

WHEREAS, The County issued a Request for Proposals ("RFP") for medical staff services at the ADC, RCCF, BTT, and JDC; and

WHEREAS, The Evaluation Team identified in the RFP evaluated the Contractor's proposal and determined that the Contractor met the requirements, is a Minnesota professional corporation that furnishes medical services through its employed physicians and nurse practitioners, and is qualified to provide the requested services within the County's budget; and

WHEREAS, The Contractor is prepared to provide or arrange for physician, nurse practitioner, and other professional medical services to detainees at the ADC and to correctional clients at the RCCF, BTT, and the JDC, commencing January 1, 2006; and

WHEREAS, The County and the Contractor wish to enter into a written agreement for the provision of such services;

Now, therefore, the County and the Contractor agree to the following terms and conditions:

1.  **Scope of Services**
    A.  During the term of this agreement, the Contractor shall:
    1)  Designate a licensed physician acceptable to the County as Medical Director to provide overall medical direction of the services provided by Contractor pursuant to this Agreement.
    2)  Provide on-call medical consultation services to staff at the ADC, RCCF, BTT, and JDC 24 hours a day/7 days a week by the Medical Director or the Medical Director's designee.
    3)  Provide two (2) clinics per week of on-site physician or nurse practitioner services at the ADC. For the purposes of this Agreement, a clinic shall mean a 4 hour period unless a shorter time period is authorized by the County. The schedule will be mutually agreed to by the Contractor and the Sheriff's Office and documented in writing prior to the commencement of services under this Agreement. Any agreed-upon schedule changes during a calendar year will be documented in writing prior to the effective date of the changes.

Advanced Practice Solutions-ADC and Corrections Medical Services 2006

Aug  4 2009 12:44pm   Advanced Practice Sol   Fax:651-769-9178   P005/016

**EXHIBIT B**

4)   Provide one (1) clinic per week of physician or nurse practitioner services for BTT; two (2) clinics per week of physician or nurse practitioner services for the JDC; and three (3) clinics per week of physician or nurse practitioner services for RCCF. The schedule will be mutually agreed to by the Contractor and the Community Corrections Department and documented in writing prior to the commencement of services under this Agreement. Any agreed-upon schedule changes during a calendar year will be documented in writing prior to the effective date of the changes.

5)   Coordinate inpatient admissions.

6)   Conduct two continuing education opportunities annually for nursing staff at the facilities on pertinent health related issues and/or medical policy and procedure.

7)   Have the Medical Director conduct semi-annual site visits to BTT and the JDC to meet with the RN staff and observe clinic functions and provide direction and implementation of Quality Improvement Programs at all facilities.

8)   Review and approve all health care policies and procedures annually and recommend modifications.

B.   Assigned Personnel

1)   The Contractor shall provide information to the County adequate to permit the Sheriff's Department and the Community Corrections Department to conduct a criminal history review for all personnel assigned to provide services under this Agreement.

2)   Only personnel who have been approved by the County following clearance after a routine criminal history and background investigation by the Sheriff's Department or the Community Corrections Department will be permitted to provide services under this Agreement. All personnel providing services under this Agreement shall wear County-issued ID tags when providing services at the ADC. All personnel providing services under this Agreement shall have in their possession a County-issued ID tag when providing services at the Community Corrections Facilities.

3)   The Contractor shall maintain records of the credentials of physicians and nurse practitioners providing services under this Agreement and of their ongoing licensing by the State of Minnesota. In the event that any such licenses are canceled, revoked, suspended, or expire while this Agreement is in effect, the Contractor agrees to inform the Sheriff's Department and/or the Community Corrections Department immediately, remove that person from the staff for services under this Agreement, and substitute a licensed individual. The County will pay only for services provided by licensed personnel.

2.   **County Roles and Responsibilities**
During the term of this Agreement, the County shall:

A.   Designate an individual to be the ADC Health Services Manager.

B.   Provide facilities, support staff, supplies, and records necessary to facilitate quality performance of the duties of the Contractor under this Agreement. This

Aug 4 2009 12:44pm   Advanced Practice Sol   Fax:651-769-9178                P006/016

shall include providing a safe and secure clinic setting at the ADC equipped to examine and evaluate detainees, and to allow for the provision of medical care, based on the recommendations and needs of physician(s) and nurse practitioner(s); and providing a clinic setting at the JDC, the RCCF, and BTT equipped to examine and evaluate detainees, inmates, and residents and to allow for the provision of medical care, based on the recommendation and need of nurse practitioner(s) and physician(s).

C. Participate with the Contractor in the selection process of individuals who will provide service under this Agreement.

D. Meet periodically with involved professionals and administrative representatives from the Contractor to review health care policies, procedures, and quality assurance data related to detainees, inmates, and residents at the ADC, the RCCF, BTT, and the JDC.

E. Conduct routine criminal history and Minnesota Department of Corrections background investigations for personnel to be assigned to perform services pursuant to this Agreement.

F. At the request of the Contractor, participate in the performance evaluation of the Contractor staff that provide services under this Agreement.

3. **Term**
The term of this Agreement shall be from January 1, 2006, through December 31, 2008. The term may be extended for two additional one-year periods at the option of the County.

4. **Cost/Payment**
    A. Cost
        1) The County will pay the Contractor for the Medical Director services and for Medical Director, physician and nurse practitioner clinics, and on-call services at each of the facilities in accordance with the Cost Summary, attached hereto and made a part of this Agreement as **Attachment A.**
        2) The County will pay the Contractor for additional clinics, as needed and as requested, at the clinic rates set forth in **Attachment A.**
        3) In addition to the above amounts, the County agrees to reimburse the Contractor for any annual costs in its medical malpractice insurance coverage in excess of 15%. The Contractor shall include documentation of the increase in any request for reimbursement under this section.

    B. Payment
        1) The Contractor shall submit a separate invoice for each facility at the end of each month for professional services provided during the month pursuant to this Agreement, for 1/12th of the annual base cost, and for any additional service clinics provided at the County's request.
        2) The County will make payment within 30 days of receipt of an invoice.

3) Payment of interest on late payments and disputes regarding payments shall be governed by the provisions of Minn. Stat. §471.425, the Minnesota Prompt Pay Act.

**5.** **Contacts**

The following individuals are the contract contacts for the County and the Contractor:

Contractor:

Lynn Schiff, CNP
Advanced Practice Solutions
14790 119th St. N.
Stillwater, Minnesota 55082

ADC:

ADC Undersheriff
Ramsey County Law Enforcement Center
425 Grove Street
St. Paul, Minnesota 55101

RCCF:

Superintendent
Ramsey County Correctional Facility
297 Century Avenue
St. Paul, Minnesota 55119

BTT:

Superintendent
Boys Totem Town
398 Totem Road
St. Paul, Minnesota 55119

JDC:

Superintendent
Juvenile Detention Center
25 West 7th Street
St. Paul, Minnesota 55102

**6.** **Independent Contractor**

It is agreed that nothing contained in this Agreement is intended or should be construed as creating the relationship of agents, partners, joint venturers, or associates between the parties hereto or as constituting Contractor as the employee of the County for any purpose or in any manner whatsoever. The Contractor is an independent contractor and neither it, its employees, agents nor representatives are employees of the County. From any amounts due the Contractor, there will be no deductions for federal income tax or FICA payments, nor for any state income tax, nor for any other purposes, which are associated with an employer-employee relationship unless required by law. Payment of federal income tax, FICA payments, and state income tax are the responsibility of the Contractor.

Advanced Practice Solutions-ADC and Corrections Medical Services 2006                          4 of 12

7. **Indemnification**

Contractor shall indemnify, hold harmless and defend the County, its officials, employees, and agents from any and all liability, loss, costs, damages, expenses, claims or actions, including attorney's fees, which the County, its officials, employees, and agents may hereafter sustain, incur or be required to pay, arising out of or by reason of any act or omission of Contractor, its agents, officers, independent contractors, or employees, in the execution, performance, or failure to adequately perform Contractor's obligations pursuant to this Agreement.

8. **Amendment**

This Agreement may be modified only by a written amendment signed by authorized representatives of the County and the Contractor.

9. **Insurance**

A.   Contractor shall purchase and maintain (or maintain a self-insurance program of) such insurance as will protect the Contractor from claims which may arise out of, or result from, the Contractor's operations under this Agreement, whether such operations are by the Contractor or by any subcontractor, or by anyone directly employed by them, or by anyone for whose acts or omissions anyone of them may be liable.

B.   Contractor shall secure or maintain the following coverages and comply with all provisions noted.  Certificates of Insurance (or evidence of a self-insurance program) shall be issued evidencing such coverage to the County throughout the term of this Agreement.

B.1   Commercial General Liability Insurance
   B.1.1   $ 1,000,000 per occurrence
      $ 2,000,000 general aggregate
      $ 1,000,000 products/completed operations total limit
      $ 1,000,000 personal injury and advertising liability
   B.1.2   All policies shall be written on an occurrence basis using ISO form CG 00 01 07 98 or its equivalent.
   B.1.3   Ramsey County, its officials, employees, and agents, shall be added to the policy as additional insured as their interests may appear with respect to Contractor providing services under this Agreement, using ISO endorsement form CG 20 26 or its equivalent.

B.2   Automobile Insurance
   B.2.1   Coverage shall be provided for hired, non-owned and owned auto.
   B.2.2   Minimum limits: $1,000,000 combined single limit.

B.3   Workers' Compensation and Employer's Liability
   B.3.1   Workers' Compensation as required by Minnesota Statutes
   B.3.2   Employer's Liability limits:
      $500,000/$500,000/$500,000

B.4    Medical/Professional Liability
    B.4.1   Per Claim Limit:        $2,000,000
        Aggregate Limit:        $4,000,000
    B.4.2   All policies or self insurance programs shall be written as acceptable to County.
    B.4.3   Certificate of Insurance must indicate if the policy is issued on a claims-made or occurrence basis. If coverage is carried on a claims-made basis, then: 1) the retroactive date shall be noted on the Certificate and shall be prior to or the day of the inception of this Agreement; and 2) evidence of coverage shall be provided for three years beyond expiration of this Agreement.
    B.4.4   Ramsey County, its officials, employees, and agents, shall be added to the policy as additional insured as their interests may appear with respect to Contractor providing services under this Agreement.

C.    All Certificates of Insurance shall provide that the insurance company gives the County thirty (30) days prior written notice of cancellation, non-renewal and/or any material change in policy.

D.    The above sub-paragraphs establish minimum insurance requirements, and it is the sole responsibility of Contractor to purchase and maintain additional insurance (or self-insurance program) that may be necessary in connection with this Agreement.

E.    Certificate of Insurance must indicate if the policy is issued pursuant to these requirements. Contractor shall not commence work until the Contractor has obtained the required insurance and filed an acceptable Certificate of Insurance with the County. Copies of insurance policies shall be submitted to the County upon request.

F.    Nothing in this Agreement shall constitute a waiver by the County of any statutory or common law immunities, limits, or exceptions on liability.

G.    Certificates shall specifically indicate if the policy is written with an admitted or non-admitted carrier. Best's Rating for the insurer shall be noted on the Certificate, and shall not be less than an A.

10.    **Non-Assignability**
The purchase of services from the Contractor under this Agreement is subject to the availability and provision of funding from the United States, the State of Minnesota, or other funding sources. The County may immediately cancel this Agreement, or a portion of the services to be provided under this Agreement, if the funding for the services is no longer available to the County. Upon receipt of the County's notice of cancellation of the

Except with respect to nurse practitioner services, the Contractor shall not assign any interest in this Agreement and shall not transfer any interest in the same, whether by subcontract, assignment or novation, without the prior written consent of the County.

11.    **Unavailability of Funding**
The purchase of services from the Contractor under this Agreement is subject to the availability and provision of funding from the United States, the State of Minnesota, or other funding sources. The County may immediately cancel this Agreement, or a portion of the services to be provided under this Agreement, if the funding for the services is no longer available to the County. Upon receipt of the County's notice of cancellation of the

Agreement, or of a portion of the services to be provided under this Agreement, the Contractor shall take all actions necessary to discontinue further commitments of funds to the extent they relate to the Agreement or the portions of this Agreement for which funding has become unavailable.

12. **Non-Conforming Services**

The acceptance by the County of any non-conforming services under the terms of this Agreement or the foregoing by the County of any of the rights or remedies arising under the terms of this agreement shall not constitute a waiver of the County's right to conforming services or any rights and/or remedies in respect to any subsequent breach or default of the terms of this Agreement. The rights and remedies of the County provided or referred to under the terms of this Agreement are cumulative and not mutually exclusive.

13. **Equal Employment Opportunity**

The Contractor agrees to comply with all federal, state and local laws, resolutions, ordinances, rules, regulations and executive orders pertaining to unlawful discrimination on account of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, sexual preference, disability, or age. When required by law or requested by the County, the Contractor shall furnish a written affirmative action plan.

14. **Workforce Diversity**

Contractor shall make good faith efforts throughout the term of this Agreement, and any extensions thereof, to employ persons of color for all classifications of work under this Agreement, and shall, when requested by County, submit a written report to the County regarding the efforts and results of such efforts, including employment by job classification.

15. **Workplace Violence Prevention**

The Contractor shall make all reasonable efforts to ensure that Contractor's employees, officials and subcontractors do not engage in violence while performing under this Agreement. Violence, as defined by the Ramsey County Workplace Violence Prevention and Respectful Workplace Policy, is defined as words and actions that hurt or attempt to threaten or hurt people; it is any action involving the use of physical force, harassment, intimidation, disrespect, or misuse of power and authority, where the impact is to cause pain, fear or injury.

16. **Subcontractor Payment**

Contractor shall pay any subcontractor within ten days of the Contractor's receipt of payment from the County for undisputed services provided by the subcontractor. The Contractor shall pay interest of 1 1/2 percent per month or any part of a month to the subcontractor on any undisputed amount not paid on time to the subcontractor. The minimum monthly interest penalty payment for an unpaid balance of $100.00 or more is $10.00. For an unpaid balance of less than $100.00, the Contractor shall pay the actual penalty due to the subcontractor. A subcontractor who prevails in a civil action to collect interest penalties from a Contractor must be awarded its costs and disbursements, including attorney's fees, incurred in bringing the action.

17. **Data Practices**

All data collected, created, received, maintained or disseminated for any purpose in the course of Contractor's performance of this Agreement is governed by the Minnesota Government Data Practices Act, Minn. Stat. Ch. 13, or any other applicable state statutes, any state rules adopted to implement the Act and statutes, as well as federal statutes, including the Health Insurance Portability and Accountability Act of 1996, and federal regulations promulgated under such federal statutes.

18. **Compliance With Applicable Law**

The Contractor agrees to comply with all federal, state and local laws or ordinances, and all applicable rules, regulations, and standards established by any agency of such governmental units, which are now or hereafter promulgated insofar as they relate to the Contractor's performance of the provisions of this Agreement. It shall be the obligation of the Contractor to apply for, pay for and obtain all permits and/or licenses required by any governmental agency for the provision of those services contemplated herein. This obligation includes any Medicare records retention and access requirements. The parties agree to amend this Agreement to comply with any applicable state and/or federal laws and/or regulations promulgated by a state and/or federal agency after the effective date of the Agreement.

19. **Audit**

Until the expiration of six (6) years after the furnishing of services pursuant to this Agreement, the Contractor, upon written request, shall make available to the County, the State Auditor or the County's ultimate funding sources, a copy of this Agreement and the books, documents, records and accounting procedures and practices of the Contractor relating to this Agreement.

20. **Termination**

 a.  With Cause

The County reserves the right to suspend or terminate this Agreement if the Contractor violates any of the terms or conditions of this Agreement or does not fulfill in a timely and proper manner its obligations under this Agreement as determined by the County. In the event that the County exercises its right of suspension or termination under this Paragraph, it shall submit written notice to the Contractor, specifying the extent of such suspension or termination under this Paragraph, the reasons therefore, and the date upon which such suspension or termination becomes effective. Upon receipt of such notice, the Contractor shall take all actions necessary to discontinue further commitments of funds to the extent that they relate to the suspended or terminated portions of this Agreement.

 b.  Without Cause

Notwithstanding any term or provision in this Agreement to the contrary, the County may terminate this Agreement without cause and for any reason whatsoever upon giving at least thirty (30) days written notice thereof to the Contractor. In such event, the Contractor shall be entitled to receive compensation for the services provided in a satisfactory manner up to and including the effective date of termination.

Aug  4 2009 12:45pm   Advanced Practice Sol  Fax:651-769-9178   P012/016

21. **Conflict of Interest**

The Contractor affirms that, to the best of Contractor's knowledge, Contractor's involvement in this Agreement does not result in a conflict of interest with any party or entity which may be affected by the terms of this Agreement. The Contractor agrees that, should any conflict or potential conflict of interest become known to Contractor, Contractor will immediately notify the County of the conflict or potential conflict, specifying the part of this Agreement giving rise to the conflict or potential conflict, and will advise the County whether Contractor will or will not resign from the other engagement or representation.

22. **Waste Reduction**

The Contractor shall participate in a recycling program for at least four broad types of recyclable materials and shall favor the purchase of recycled products in its procurement processes. All reports, publications and documents produced as a result of this contract shall be printed on both sides of the paper, where commonly accepted publishing practices allow, on recycled and recyclable paper using soy-based inks, and shall be bound in a manner that does not use glue.

23. **Interpretation of Agreement; Venue**

This Agreement shall be interpreted and construed according to the laws of the State of Minnesota. All litigation regarding this Agreement shall be venued in the appropriate state or federal district court in Ramsey County, Minnesota.

24. **Prevailing Wage**

All contractors and subcontractors shall conform to the labor laws of the State of Minnesota, and all other laws, ordinances, and legal requirements affecting the work in Ramsey County and Minnesota. The minimum wage rate per hour to be paid for each classification of work shall be the union wage rate in the locality of the project for those classifications over which the unions have jurisdiction and the local prevailing rate for those classifications of work in the localities over which the unions do not have jurisdiction.

25. **HIPAA Compliance**

Contractor agrees to implement and comply with applicable provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA, Public Law 104-191), as it may be amended from time to time.

26. **Entire Agreement**

This Agreement shall constitute the entire agreement between the parties and shall supersede all prior oral or written negotiations.

This Agreement is duly executed on the last date written below.

**RAMSEY COUNTY**

_Tony Bennett_

Tony Bennett, Chair
Ramsey County Board of Commissioners

_Bonnie Jackelen_

Bonnie Jackelen, Chief Clerk *2006-162*
Ramsey County Board of Commissioners

Date: _4/25/06_

Approval recommended:

_Bob Fletcher_

Bob Fletcher, Ramsey County Sheriff

_Carol Pender-Roberts_

Carol Pender-Roberts, Director
Community Corrections Department

Approved as to form and insurance:

_Karen Kushner 5/24/06_

Assistant County Attorney for Sheriff

_signature_

Assistant County Attorney for Corrections Department

Purchase Order or
Aspen Vendor Contract Number:

_____

Account Number: _____

_signatures / Steven Kuhn_
Budgeting and Accounting

**ADVANCED PRACTICE SOLUTIONS,
P.A.**

By: _Lynn Schiff_
Print: _Lynn Schiff_
Its: _President_

Contractor Tax Payer ID#: _411909104_

Date: _4/6/06_

Advanced Practice Sol   Fax:651-769-9178          Aug  4 2009 12:48pm   P014/016

Attachment A

**2006 Costs:**
$380 for NP Clinic
$600 for MD Clinic

| Clinic Cost | Medical Director Cost | On Call |
|---|---|---|
| **ADC**<br>$600 x 50 clinics $30,000<br>$380 x 50 clinics $19,000 | $3,000/year | $1,000/year |
| **RCCF**<br>$600 x 50 clinics $30,000<br>$380 x 90 clinics $34,200 | $3,000/year | $1,000/year |
| **BTT**<br>$380 x 45 clinics $17,100 | $1,000/year | $500/year |
| **JDC**<br>$380 x 70 clinics $26,600 | $1,000/year | $500/year |

**TOTAL for 2006  $167,900**

**2007 Costs**
$400 for NP Clinic
$650 for MD Clinic

| Clinic Cost | Medical Director Cost | On Call |
|---|---|---|
| **ADC**<br>$650 x 50 clinics  $32,500<br>$400 x 50 clinics  $20,000 | $4,000/year | $1,000/year |
| **RCCF**<br>$650 x 50 clinics $32,500<br>$400 x 95 clinics $38,000 | $4,000/year | $1,000/year |
| **BTT**<br>$400 x 48 clinics $19,200 | $1,000/year | $500/year |
| **JDC**<br>400 x 70  clinics  $28,000 | $1,000/year | $500/year |

**Total for 2007 $183,200**

Advanced Practice Solutions-ADC and Corrections Medical Services 2006

11 of 12

**2008 Costs**
$450 for NP Clinic
$700 for MD Clinic

| Clinic Cost | Medical Director Cost | On Call |
|---|---|---|
| **ADC**<br>$700 x 50 clinics $35,000<br>$450 x 56 clinics $25,200 | $4,000/year | $1,000/year |
| **RCCF**<br>$700 x 50 clinics  $35,000<br>$450 x 100 clinics $45,000 | $4,000/year | $1,000/year |
| **BTT**<br>$450 x 50 clinics  $22,500 | $1,000/year | $500/year |
| **JDC**<br>$450 x 70 clinics  $31,500 | $1,000/year | $500/year |

**TOTAL for 2008  $207,200**

## AMENDMENT TO AGREEMENT BETWEEN RAMSEY COUNTY AND ADVANCE PRACTICE SOLUTIONS, P.A.

WHEREAS, Ramsey County ("County") and Advance Practice Solutions, P.A. - 14790 119th St. No., Stillwater, MN 55082, ("Contractor") entered into an Agreement dated April 25, 2006, for on-site professional medical services (physician, nurse practitioner and other professional medical services) to detainees at the Ramsey County adult Detention Center ("ADC"), and to clients at the Ramsey County Correctional Facility ("RCCF"), Boys Totem Town ("BTT") and the Juvenile Detention Center ("JDC") for the period from January 1, 2006 through December 31, 2008 ("Agreement"); and

WHEREAS, The Contractor has provided service in accordance with the terms of the Agreement in a professional and competent fashion' and

WHEREAS, The County wishes to renew the Agreement for an additional one-year period, January 1, 2009 through December 31, 2009; Now

Therefore, the County and the Contractor agree to amend the Agreement as follows:

1.      To term of the Agreement is extended for an additional one-year period, January 1, 2009, through December 31, 2009 ("Renewal Term")

2.      The County will pay the Contractor a sum not to exceed $224,400 for services during the Renewal Term, to be billed at the Revised Fee Schedule, attached hereto and made a part of this Amendment as Attachment A.

3.      Except as modified herein, the terms of the Agreement shall remain in full force and effect.

Wherefore, the parties have executed this Amendment on the last date written below.

**RAMSEY COUNTY**

*Julie Kleinschmidt*
Patrick O'Connor, Interim County Manager
*Julie Kleinschmidt*

Date: _1/14/09_

**Advanced Practice Solutions, P.A.**

By: _Lynn Schiff_
Print Name: Lynn Schiff
Its: _President_

Date: _12/30/08_

Amendment with Advanced Practice Solutions, P.A. January 1, 2009 – December 31, 2009   2 of 3



EXHIBIT
3
9-9-16

Approval recommended:

Employer Identification Number:

411909104

Bob Fletcher, Ramsey County Sheriff

Approval recommended:

Carol Pender-Roberts, Director
Community Corrections Department

Approved as to form and insurance:

~~Karen Kushner~~ 12/18/08
Assistant County Attorney

~~Purchase Order or~~
Aspen Vendor Contract Number:

SHRFD 00010

Funds are available
Account Number: _____

_____ 1-12-09
Budgeting & Accounting

Amendment with Advanced Practice Solutions, P.A. January 1, 2009 – December 31, 2009   3 of 3

**ATTACHMENT A**

**Advanced Practice Solutions Pricing for 2009**

**Ramsey County Correctional Facility, Boys Totem Town, Ramsey County Juvenile Detention Center, and Ramsey County Adult Detention Center**

**2009 Costs:**
$485 Nurse Practitioner Clinic
$740 MD Clinic

| Clinic Cost | Medical Director Cost | On Call |
|---|---|---|
| **2009 Costs** | | |
| ADC | | |
| $740 x 50 clinics $37,000 | $5,000 | $1,500 |
| $485 x 56 clinics  $27,160 | | |
| RCCF | | |
| $740 x 50 clinics $37,000 | $5,000 | $1,500 |
| $485 x 100 clinics $48,500 | | |
| JDC | | |
| $485 x 50 clinics      $24,250 | $1000 | $ 770 |
| BTT | | |
| $485 x 40 clinics      $19,400 | $1000 | $ 770 |

**TOTAL ANNUAL FEES for 2009:  $209,850 (1) (2) (3)**

    (1) Fees based on schedule of clinics contracted as detailed above
    (2) Fees for periods subsequent to December 2009 may be subject to further
       adjustment
    (3) Fees for 18 OB GYN visits for CY 2009

*Ramsey County Board – December 21, 2004 – Page Six*

WHEREAS, The Community Corrections Department presently rents office space for Adult and Juvenile Probation offices at 555 Park Avenue, St. Paul, MN, from Engelsma Limited Partnership; and

WHEREAS, Engelsma Limited Partnership and the Community Corrections Department desire to extend the term of the existing lease agreement so that the lease shall expire on March 31, 2010; and

WHEREAS, The lease amendment and extension provides for a reduction in rental rates for the remaining term of the lease and extends the lease for an additional three years and four and one-half months with rental rates below the original lease rates; and

WHEREAS, The amended rate is $17.92 per square foot vs. $18.86 per square foot for April 1, 2005, through November 18, 2005, and $19.42 per square foot for the period of November 19, 2005 through November 18, 2006; a savings of $12,355.46; and

WHEREAS, All other terms and conditions remain the same; and

WHEREAS, Engelsma Limited Partnership desires to continue renting to the County Community Corrections Department and the County Community Corrections Department desires to continue leasing space from Engelsma Limited Partnership; Now, Therefore, Be It

RESOLVED, The Ramsey County Board of Commissioners hereby approves the lease amendment and extension, on file with the Chief Clerk, with Engelsma Limited Partnership, c/o Kraus-Anderson Realty Company, 4210 West Old Shakopee Road, Bloomington, Minnesota 55437, for Community Corrections Department Adult and Juvenile Probation offices located at 555 Park Avenue, St. Paul for the term April 1, 2005 through March 31, 2010, at the rates listed below. To the extent not specifically amended or modified herein, all terms and conditions of the original lease, shall remain in full force and effect.

| Lease Period | Rate/RSF Per SF | Annual Lease Amt | Monthly Payment |
|---|---|---|---|
| 4/1/05 – 3/31/06 | $17.92/sq. ft. | $157,265.92 | $13,105.49 |
| 4/1/06 – 3/31/07 | $17.92/sq. ft. | $157,265.92 | $13,105.49 |
| 4/1/07 – 3/31/08 | $19.01/sq. ft | $166,831.76 | $13,902.64 |
| 4/1/08 – 3/31/09 | $19.01/sq. ft. | $166,831.76 | $13,902.64 |
| 4/1/09 – 3/31/10 | $19.01/sq. ft. | $166,831.76 | $13,902.64 |

and Be It Further

RESOLVED, The Ramsey County Board of Commissioners authorizes the Board Chair and the Chief Clerk to execute the lease amendment and extension.

<u>SHERIFF/COMMUNITY CORRECTIONS/PUBLIC HEALTH – Agreement between Ramsey County and Advanced Practice Solutions, P.A.</u>

Commissioner Wiessner introduced the following resolution and moved its adoption, seconded by Commissioner Haigh.  Roll Call:  Ayes – Wiessner, Haigh, McDonough, Ortega, Rettman, Reinhardt – 6.  Nays – 0.  (2004-469)

*(Continued)*



EXHIBIT

4

9-9-10

*Ramsey County Board – December 21, 2004 – Page Seven*

WHEREAS, Ramsey County has the legal obligation to meet the reasonable and necessary medical needs of detainees at the Law Enforcement Center, and of corrections clients at the Correctional Facility, Boys Totem Town, and the Juvenile Detention Center; and

WHEREAS, The County currently provides these services through an agreement with Group Health Inc.; and

WHEREAS, Group Health, Inc. has given notice of its intent to cancel the contract effective December 31, 2004; and

WHEREAS, Subsequent to receipt of the notification, the City of St. Paul-Ramsey County Public Health Department, at the request of the Ramsey County Sheriff's Office and the Community Corrections Department, began exploring options for providing uninterrupted medical coverage starting on January 1, 2005; and

WHEREAS, St. Paul-Ramsey County Public Health explored various options, including Advanced Practice Solutions, P.A., which has provided clinical services for Public Health at their 555 Cedar Street location since 1990; and

WHEREAS, Of the options considered, only Advanced Practice Solutions, P.A. has experience with providing correctional health services and had the most competitive pricing, an available medical director, and the ability to start providing services on January 1, 2005; and

WHEREAS, Based on the immediacy of the need for a new medical services contract and the existing contractual relationship between Public Health and Advanced Practice Solutions, P.A., the Ramsey County Sheriff's Office, the Community Corrections Department, and the St. Paul-Ramsey County Public Health Department, recommend contracting with Advanced Practice Solutions, P.A., as the medical services provider for detainees at the Law Enforcement Center and for corrections clients at the Correctional Facility, Boys Totem Town and the Juvenile Detention Center for the period of January 1, through December 31, 2005; and

WHEREAS, The County will issue a Request for Proposals for medical services for the LEC and the correctional institutions in 2005, for services to commence on January 1, 2006; Now, Therefore, Be It

RESOLVED, The Ramsey County Board of Commissioners approves the Agreement with Advanced Practice Solutions, P.A., 14790 119th St. N., Stillwater, MN 55082, for the period of January 1, 2005, through December 31, 2005, in the amount of $33,660 for on-site physician and nurse practitioner services, 24/7 on-call services, and overall medical supervision for inmates in custody of the Ramsey County Sheriff; and in an amount up to $48,248 for on-site physician and nurse practitioner services, 24/7 on-call services, and overall medical supervision at the Correctional Facility; and in an amount up to $21,742 for on-site physician and nurse practitioner services, 24/7 on-call services, and overall medical supervision at Boys Totem Town; and in an amount up to $21,742 for on-site physician and nurse practitioner services, 24/7 on-call services, and overall medical supervision at the Juvenile Detention Center; and Be It Further

RESOLVED, The Board authorizes the Chair and Chief Clerk to execute the Agreement; and Be It Further

*(Continued)*

*Ramsey County Board – December 21, 2004 – Page Eight*

RESOLVED, The Board authorizes the issuance of a Request for Proposals for medical services for detainees at the Law Enforcement Center and correctional clients at the Correctional Facility, Boys Totem Town, and the Juvenile Detention Center to commence on January 1, 2006, with the results and the recommendation to be brought back to the County Board for final decision prior to that date.

COMMUNITY HUMAN SERVICES – Child Protection Services – Acceptance of Grants from the St. Paul Foundation

Commissioner Wiessner introduced the following resolution and moved its adoption, seconded by Commissioner Haigh.

Commissioner Wiessner said Community Human Services Department is doing a fantastic job of fund raising and grant writing.  She commended staff for their hard work in bringing in money.

Roll Call:  Ayes – Wiessner, Haigh, McDonough, Ortega, Rettman, Reinhardt – 6.  Nays – 0. (2004-470)

WHEREAS, The Community Human Services Department is involved in a multi-year project to address racial disparities in the child protection and out of home placement systems; and

WHEREAS, In early December, 2004, the St. Paul Foundation notified Ramsey County of an award of $60,000 to support this effort; and

WHEREAS, The Community Human Services Department is planning to utilize $25,000 from their existing budget to support the work of ending racial disparities; Now, Therefore, Be It

RESOLVED, The Ramsey County Board of Commissioners accepts the grant from the St. Paul Foundation in the amount of $60,000 to reduce racial disparities in the child protection and out of home placement systems; and Be It Further

RESOLVED, The Board authorizes the County Manager to sign any agreements to accept the funds; and Be It Further

RESOLVED, The Board authorizes the County Manager to make necessary budget adjustments to utilize $25,000 from the 2004 Community Human Services Department budget to support the effort to reduce racial disparities.

COMMUNITY HUMAN SERVICES – Mental Health Court Coordinator Position

Commissioner Wiessner introduced the following resolution and moved its adoption, seconded by Commissioner Haigh.  Roll Call:  Ayes – Wiessner, Haigh, McDonough, Ortega, Rettman, Reinhardt – 6.  Nays – 0.  (2004-471)

WHEREAS, Ramsey County Community Human Services (RCCHS) is working with the State of Minnesota, 2nd Judicial District Court to develop a mental health court in Ramsey County; and

WHEREAS, Establishment of a mental health court will the Court and RCCHS to better serve the needs of individuals, who due to mental illness, commit misdemeanor level offenses; and

*(Continued)*

*Ramsey County Board – April 25, 2006 – Page Sixteen*

RESOLVED, The Ramsey County Board of County Commissioners directs that the net proceeds from the sale of the Maplewood Library at 1670 Beam Avenue be deposited into the Ramsey County Library's Capital Improvement Fund.  Any appropriations of the net proceeds will require approval by the Ramsey County Board.

PROPERTY RECORDS AND REVENUE – Withdrawal of the Local Government Cooperation Waiver Application filed with the State Auditor on February 10, 2005
Commissioner Reinhardt introduced the following resolution and moved its adoption, seconded by Commissioner Parker.  Roll Call:  Ayes – Reinhardt, Rettman, McDonough, Ortega, Parker, Bennett – 6.  Nays – 0.  (2006-161)

WHEREAS, On February 7, 2006, through County Board Resolution 2006-061, the Ramsey County Board of Commissioners authorized submission of an application for a Local Government Cooperation Waiver to the State Auditor; and

WHEREAS, Ramsey County has already ordered, and is about to receive, its HACA-compliant voting equipment, and the waiver application is no longer pertinent; Now, Therefore, Be It

RESOLVED, The Ramsey County Board of Commissioners hereby ratifies the submission of a letter, dated April 19, 2006, to the State Auditor, sent by the Director of Property Records and Revenue, indicating the County's intent to withdraw its Waiver Application from consideration.

SHERIFF/COMMUNITY CORRECTIONS/PUBLIC HEALTH – Agreement between Ramsey County and Advanced Practice Solutions, P.A.
Commissioner Reinhardt introduced the following resolution and moved its adoption, seconded by Commissioner Parker.  Roll Call:  Ayes – Reinhardt, Rettman, McDonough, Ortega, Parker, Bennett – 6.  Nays – 0.  (2006-162)

WHEREAS, Ramsey County has the legal obligation to meet the reasonable and necessary medical needs of detainees at the Adult Detention Center, and to corrections clients at the Correctional Facility, Boys Totem Town, and the Juvenile Detention Center; and

WHEREAS, These services were provided in 2005 by Advanced Practice Solutions, P.A., under a one-year Agreement approved by County Board Resolution 2004-469; and

WHEREAS, The County Board authorized the issuance of a Request for Proposals in 2005 for medical services for detainees at the Adult Detention Center and correctional clients at the Correctional Facility, Boys Totem Town and the Juvenile Detention Center; and

WHEREAS, A Request for Proposals for medical services at the detention and correctional facilities was issued in December 2005, and Advanced Practice Solutions, P.A. was the only respondent to the Request for Proposals; and

WHEREAS, The Public Health Department has been very satisfied with the services provided by Advanced Practice Solutions. P.A., and together with the Sheriff's Department and the Corrections Department recommends the approval of a new three-year Agreement with Advanced Practice Solutions, P.A.; and

*(Continued)*

EXHIBIT
5
9-9-10

*Ramsey County Board – April 25, 2006 – Page Seventeen*

WHEREAS, Under the proposed new agreement, overall services will include designating a licensed physician acceptable to the County as Medical Director to provide overall medical direction of the services; providing on-call medical consultation services to staff at the facilities 24 hours a day/7 days a week by the Medical Director or their designee; coordinating inpatient admissions; conducting continuing education opportunities for nursing staff at the facilities; and reviewing and approving all health care policies and procedures annually and recommending modifications; Now, Therefore, Be It

RESOLVED, The Ramsey County Board of Commissioners approves the Agreement with Advanced Practice Solutions, P.A., 14790 119th St. N., Stillwater, MN 55082, for the period of January 1, 2006, through December 31, 2008, for on-site physician and nurse practitioner services; 24/7 on-call medical consultation services; overall medical direction to staff at the Adult Detention Center, the Ramsey County Correctional Facility, Boys Totem Town and the Juvenile Detention Center; and other related services at the annual not to exceed amounts for all facilities of $167,900.00 for 2006, $183,200.00 for 2007, and $207,200.00 for 2008, plus any annual increase in the contractor's medical malpractice insurance costs in excess of 15 percent; and Be It Further

RESOLVED, The Board authorizes the Chair and Chief Clerk to execute the Agreement with Advanced Practice Solutions for medical services at the Adult Detention Center, Ramsey County Correctional Facility, Boys Totem Town, and the Juvenile Detention Center for an initial three-year period from January 1, 2006, through December 31, 2008; and Be It Further

RESOLVED, The Board authorizes the County Manager to approve any amendments to the Agreement, including amendments for up to two one-year renewals, subject to prior approval by the County Attorney's Office and Budgeting and Accounting.

PUBLIC WORKS – Construction Status Report for the period January 1, 2006 through March 31, 2006
Commissioner Reinhardt introduced the following resolution and moved its adoption, seconded by Commissioner Parker. Roll Call: Ayes – Reinhardt, Rettman, McDonough, Ortega, Parker, Bennett – 6. Nays – 0. (2006-163)

WHEREAS, County Board Resolution 91-061 requires the Public Works Department to submit periodic reports on the financial status of each project and any modifications that have been authorized within the limits set by County Board Resolution 2001-93; and

WHEREAS, The contract modifications include items such as cost quantity changes, change orders, and supplemental agreements; Now, Therefore, Be It

RESOLVED, The Ramsey County Board of Commissioners accepts the Construction Status Report for the January 1, 2006 through March 31, 2006.

COUNTY MANAGER/BUDGETING & ACCOUNTING – Monthly report of contracts and final payments and grant submissions that were approved during the month of March 2006
Commissioner Reinhardt introduced the following resolution and moved its adoption, seconded by Commissioner Parker. Roll Call: Ayes – Reinhardt, Rettman, McDonough, Ortega, Parker, Bennett – 6. Nays – 0. (2006-164)

*(Continued)*

## CHRISTOPHER R. WALSH

### ATTORNEY AT LAW

FIFTH STREET TOWERS
100 SOUTH FIFTH STREET, SUITE 1025
MINNEAPOLIS, MINNESOTA 55402

LICENSED TO PRACTICE IN:
MINNESOTA, COLORADO
AND WASHINGTON, D.C.

TELEPHONE: (612) 767-7500
FACSIMILE: (612) 677-9300

TOLL FREE: (866) 333-1529
EMAIL: walshlawfirm@comcast.net
WEBSITE: www.walshlawfirm.com

August 27, 2009

**HAND DELIVERED**

**Gregory Harold Salmi, M.D.,**
4516 Edina Blvd, Minneapolis, MN 55424.

Or

Gregory Salmi, M.D., Fairview Southwest Clinic, 6545 France Ave S, Ste. 586,
Minneapolis, MN 55435

RE: <u>Patricio Flores and Jose Encalada, et al v. United States of America, Ramsey County, et al</u>, U.S.
District Court File No. 09 CV838

<u>Defendant(s) Served Herewith</u>: Gregory Salmi, M.D., identified in the Summons and Complaint as
Drs. John Doe or Jane Does I-V—Unidentified Jail or Contract medical doctor for the Ramsey
County Jail, Individually and in his capacity as Officer or Managing Agent of Defendants, including
Advanced Practice Solutions.

Dear Dr. Salmi:

     I represent the Plaintiffs in the above lawsuit. **My interests are adverse to yours, so please
do not contact me. Please seek an attorney and provide them this letter and the enclosed
materials. This letter is not intended to give legal advice, nor to contact a represented party.**
We learned after we filed this lawsuit that you were one of the physicians responsible for the
healthcare and treatment of Maria Inamagua Merchan. The above lawsuit was commenced by filing
in U.S. District Court on April 10, 2009. The Complaint contains causes of action against you and
your principal, employer, contractor, or employer, Advanced Practice Solutions, P. A., the Ramsey
County Department of Health, Ramsey County and/or several other defendants.

     Pursuant to Fed. R. Civ. P. 4(h)(1), **enclosed and personally served upon you and your
principal, Advanced Practice Solutions, P.A.,** please find:

    1. Summons and Complaint in the above-entitled matter with attached Exhibits A-C.

    About three years ago, my office gave proper notice to Ramsey County and the United States
that I was investigating a lawsuit and legal claims on behalf of my client, Patricio Flores, and the

EXHIBIT
6
9-9-10
PENGAD 800-631-6989

2

heirs of Maria Inamagua Merchan (deceased). We made Freedom of Information Act ("FOIA") and Government Data Practices Act requests that have still not been answered. We requested medical records, jail records, federal detention records, investigation records and any documents or evidence relating to this case and the death of Maria Inamagua Merchan, a federal detainee at Ramsey County Adult Detention center. We specifically requested all medical records and the identity of all medical personnel, doctors, nurses, who provided healthcare, or denied healthcare to Ms. Inamagua Merchan. Unfortunately, the County and the Federal authorities who received our complaints and information requests did not identify all of the medical personnel, doctors, nurses, hospitals, clinics, and entities who may be liable as defendants in the above lawsuit. These acts and omissions, whether intentional concealment or not, were at least a "mistake concerning the proper party's identity" under Fed. R. Civ. P. 15(C)(1)(ii). The unidentified defendants knew or should have known of Ms. Inamagua's death and that an action would have been brought against them but for the "mistake." See, Id.

Because the defendants and entities in custody and control of Ms. Inamagua Merchan and her medical records, did not timely identify all doctors, nurses, medical clinics, or healthcare "placement services," the Plaintiffs were not able to correctly identify all Defendants by name in the caption of the enclosed Summons and Complaint. There, and in the body of the Complaint, we referred to "XYZ Family Practice Clinic" (which we now believe is Advanced Practice Solutions) and various "Drs. John Doe or Jane Doe" defendants, including yourself. This is allowed under Fed. R. Civ. P. 15, so that we can amend the enclosed Complaint, conform to the evidence, add new claims and correctly identify individual defendants at a later date. The amendments to the Complaint will relate back to the time of filing, April 10, 2009 for statute of limitations purposes.

After the lawsuit was filed, the Ramsey County Attorneys office finally identified Advanced Practice Solutions, P.A., and Gregory H. Salmi, M.D., as being involved in the care and treatment of Ms. Inamagua Merchan. They produced additional medical or jail records that listed your name. They wrote me stating they do not represent Dr. Salmi. Today, I also contacted Ms. Barbara Zurek of the law firm of Meagher & Geer, which is representing Advanced Practice Solutions. I asked if she was representing you (Dr. Salmi) and she said, not yet. She also declined to accept service of a Summons and Complaint on your behalf. Therefore, I am providing you this letter, Summons, Complaint and Exhibits A-C, so that you can forward and tender these materials and inquiries to your insurance carrier(s) and any attorney that you retain. Please identify any other persons or entities involved in the healthcare and detention of Ms. Inamagua, pursuant to Minnesota Statutes, Chapter 13 Minnesota Data Practices Act ("MDPA"), HIPPA laws, Minn. Stat. Sec. 144.651. We have already provided a medical authorization to Advanced Practice Solutions.

Sincerely,

Christopher R. Walsh

Enclosures



April 22, 2009

**VIA FAX AND U.S. MAIL**

Darwin J. Lookingbill, Esq.
Deb Somdahl, Esq.
Patricia Leske, Esq.
Office of the Ramsey County Attorney
50 West Kellogg Boulevard, Suite 560
St. Paul, MN 55102

Re:   Patricio Flores, husband of Maria Iñamagua Merchan v. Ramsey County, et al.
       U. S. District Court File No.:  09-cv-838  JMR/SRN

Dear Sir and Madames:

    Can you please respond to my letters dated April 6, 2009[1] and prior letters in 2006, by producing full medical records and identifying the clinics, doctors, nurses and healthcare workers who treated my client and dispensed her medication?  It is a violation of HIPPA and other laws to withhold medical records and medical information when a valid request has been made.  Ramsey County has withheld information relating to the medical treatment and the death of Maria Iñamagua Merchan. This has prejudiced our case, and prevented us from fully investigating this case. Because Ramsey County withheld the name of its "Family Practice Clinic," the names of jail doctors and nurses, the "M.D. Orders" and charts referred to in other records it produced, Plaintiffs were obstructed in their effort  to correctly name and identify all the  entities, clinics, doctors, nurses, healthcare providers and other potential defendants in the original lawsuit we filed on April 10, 2009 and served on the Ramsey County Defendants on April 13, 2009.  As we stated in that lawsuit, when the unidentified parties and entities are produced, we will amend the Complaint to name them as Defendants and conform to the evidence contained in the missing and withheld medical records.

---

    [1]  Though Ramsey County Adult Detention was one of the addressees noted on that letter, we did not send it there.  The April 6, 2009 letter was only sent to the Ramsey County Attorney's office.  No communications have been made by this office with any represented party in this case, regarding the subject matter of this litigation.  Prior to filing this lawsuit, basic correspondence was sent requesting medical records, personal property and other information relating to the detention of the deceased.



EXHIBIT

7

9-9-10

PENGAD 800-631-6989

Ramsey County Attorney's Office
April 22, 2009
Page two

Under Federal Rule of Civil Procedure 15, the Amended Complaint will relate back in time to any "new" Defendants or "new" claims, so there really is no advantage in Ramsey County continuing to withhold this information. Equitable tolling and spoliation of evidence theories of law may apply here if the Court finds these delays prejudiced our case.

Very truly yours,

Christopher R. Walsh

c:      Clients

## STATE OF MINNESOTA
### CERTIFICATION OF VITAL RECORD

# DEATH CERTIFICATE

| | |
|---|---|
| DECEDENT'S NAME | MARIA FILOMENA INAMAGUA MERCHAN |
| DECEDENT'S ALIAS | |
| SEX, SOCIAL SECURITY NUMBER, MAIDEN NAME | FEMALE    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    INAMAGUA |
| RESIDENCE (COUNTY AND CITY, STATE) | HENNEPIN    MINNEAPOLIS, MINNESOTA |
| DATE AND PLACE OF BIRTH | NOVEMBER 19, 1975    CHECA CUENCA, ECUADOR |
| MARITAL STATUS SPOUSE'S NAME | MARRIED<br>PATRICIO FLORES |
| PARENT(S) NAME(S) | RAMON INAMAGUA<br><br>AURORA ELENA MERCHAN |
| DATE OF DEATH | APRIL 12, 2006 |
| PLACE OF DEATH (COUNTY AND CITY) | RAMSEY    SAINT PAUL |
| FUNERAL HOME | KOZLAK-RADULOVICH FUNERAL CHAPEL |
| CAUSE OF DEATH IMMEDIATE | NEUROCYSTICERCOSIS |
| UNDERLYING | |
| OTHER CONTRIBUTING CONDITIONS | |
| MANNER | NATURAL |
| CORONER, MEDICAL EXAMINER OR PHYSICIAN | MICHAEL B MCGEE, M.D., MEDICAL EXAMINER<br><br>RAMSEY COUNTY MEDICAL EXAMINER'S OFFICE, 300 E UNIVERSITY AVE, SAINT PAUL, MINNESOTA 55101 |



EXHIBIT

PENGAD 800-631-6989

D
9-9-10

02D-00000152 THIS IS A TRUE AND OFFICIAL RECORD OF THE DEATH REGISTERED IN THE OFFICE OF THE STATE REGISTRAR. *DATE FILED: APRIL 14, 2006*

*PLACE ISSUED:* ANOKA

*DATE ISSUED:* APRIL 18, 2006

*Barbara A. Carter*

*STATE REGISTRAR*

Inamagua Merchan,Maria MRN: 039637822 SSN:

# Inamagua Merchan,Maria

| MRN | Sex | DOB | AGE SSN |
|---|---|---|---|
| 039637822 | Female | 11/19/1975 | 31 |

Mark Larkins V      HP PHYSICIAN                                          D/C Summaries      04/14/2006 1727

DEATH SUMMARY

ADMIT DATE:  04/03/2006
DISCHARGE DATE:  04/13/2006

PRINCIPAL DIAGNOSIS:  Neurocysticercosis/anoxic brain injury.

PRIMARY PROCEDURE:  Ventriculostomy/barbiturate coma.

HISTORY:  This is a 30 -year-old female who is an illegal alien who was detained at the local jail. She had some type of an event at the jail with diminished level of consciousness and was brought to the emergency department at Regions Hospital at which time the decision was made to move ahead with intubation and placement of ventriculostomy in the surgical intensive care unit.  She failed to improve clinically.  The initial head CT did reveal that there appeared to be some blood in the occipital horns, suggesting there was trauma previous to her arrival at Regions Hospital.  Additionally an MRI done the following morning revealed anoxic injury to particularly oxygen-sensitive structures, such as the basal ganglia which would place her anoxic injury at prior to her arrival at Regions Hospital.  Additionally, the followup CT showed good decompression of the ventricular system and some additional blood in the ventricular system.  She had at least 3 neurocysticercosis cysts, including one in the left parietal, one in the right frontal and one around the foramen of Monro; presumably the one causing her hydrocephalus.  During the course of her admission, she was also treated medically for these with the anticipation that she would have to have at least the foramen of Monro lesion as well as the more mature lesion in the left parietal lobe removed stereotactically.  The plan was to remove the other one endoscopically.  The decision, however, was made to treat her with antihelminthic medication prior to doing that while she was being treated in the ICU.  The problem, however, was she never regained consciousness.  Her ICP became a problem, the decision was made to move ahead with barbiturate coma in an effort to control the intracranial pressure.  These efforts failed, there was diffuse cerebral edema, secondary to anoxic injury.  Finally, once intracranial pressure was intractable, followup CT showed almost complete obliteration of the gray-white junction.  Decision was made to stop the barbiturate coma which she had been placed in for ICP control and this took several days to dissipate.  Following this, an initial brain death exam was done, including apnea tests as documented in the chart.  Following this, neurology did a second 6-hour exam with the aide of ancillary tests, including EEG and nuclear flow scan, both which confirmed brain death.  Following this, the following morning, the ventilator was stopped.  The case was discussed on two occasions with the County coroner and felt to be a coroner's case due to the dubious circumstances under which her situation occurred at the jail, as well as the fact that she never truly woke up during her admission at Regions Hospital.

Mark V. Larkins, MD

lag
Dictated:           04/14/2006 17:27:45

Transcribed:       04/14/2006 18:04:12

Job #:  3996946  Doc #:  1935016
cc:

This document was electronically signed by Mark V. Larkins, MD on 04/17/2006 15:18:09.

1

Page 1

Patient Name:    INAMAGUA MERCHAN, MARIA
Encounter #: 0396378226093

DISCHARGE SUMMARY

CONFIDENTIAL MEDICAL RECORD   Regions Hospital
        640 Jackson Street St. Paul, MN  55101-2595
        651-254-2434
Page 1
Encounter #:  0396378226093  Patient: INAMAGUA MERCHAN, MARIA   Location: 3CM HPN:        90886457      Admit Date:
04/03/2006
Date of Birth: 11/19/1975           Discharge Date:  04/13/2006 Age: 30Y

DISCHARGE SUMMARY              AppealObject Exhibit 1


EXHIBIT
9
9-9-10





April 10, 2006


<u>VIA FAX AND U.S. MAIL</u>

Records Department
Ramsey County Adult Detention Center
425 Grove Street
St. Paul, MN 55101

Re:    Our Client:        Patricio Flores, husband of Maria Inamagua Merchan
          Date of Injury:     4-3-06

Dear Sir or Madam :

    Please be advised that this firm represents Patricio Flores, husband of Maria Inamagua Merchan, and her next-of-kin. Ms. Inamagua (booking no. RCSO2006004198) was an inmate at the Ramsey County Detention Center. U.S. Department of Immigration and Naturalization Officials ("INS") brought her there for detention approximately two months ago. Ms. Inamagua had been complaining of headaches and she lost weight while in detention.

    On Monday, April 3, 2006, according to medical records from Regions Hospital, Ms. Inamagua was allegedly found in her cell at about 4:00 p.m. and thought to have fallen out of her bunk. Records indicate a jail nurse observed her for four hours during which time she had altered mental status, vomiting and increased agitation. She was then brought by Emergency Medical Services ("EMS") to Regions Hospital, where she remains in a coma.

    Enclosed please find:

    1.     Patient Authorization for Release of Medical Information; and
    2.     General Authorization for Release of Information.

    The authorizations were signed by Ms. Inamagua's husband, Patricio Flores. Please provide me with all records of Ms. Inamagua's detention including, but not limited to, all medical records, nurses notes, intake or transfer records, police or INS reports, daily meals and visitors' schedules, activity and work schedules, audiotapes, records of telephone calls, video or security tapes. Also,

Ramsey County Adult Detention Center
April 10, 2006
Page Two


please advise specifically what EMS brought Ms. Inamagua to the hospital.  Were the medics from the jail or from an ambulance service?

Very truly yours,


Christopher R. Walsh

CRW/lrc

Enclosures

c:     Patricio Flores
      Martha Urgiles

# CHRISTOPHER R. WALSH
## Attorney at Law

270 Grain Exchange North Building
301 Fourth Avenue South
Minneapolis, Minnesota 55415
Telephone: (612) 677-8300

## AUTHORIZATION FOR RELEASE OF INFORMATION

I,  Patricio Flores  ion behalf  of Maria Inamagua Merchan d.o.b. 11-19-75
Name ·               Soc. Sec. No.         Date of Birth

  2748 Chicago Avenue South  ,  Minneapolis  MN  55407
Address            City,         State,      Zip

have retained Christopher Walsh as my attorney.

I herewith consent to direct and authorize  Ramsey County Adult Detention Center

_____to release to Mr. Walsh any and all information he requests on my

behalf.

Dated:  4/10/06

_Patricio Flores_
Signature

This authorization will automatically expire six (6) months from the above date. A photocopy of this authorization may be considered as valid as the original.



August 25, 2006

**VIA FACSIMILE & U.S. MAIL**

Patricia Leske
Ramsey County Attorney's Office
50 West Kellogg Blvd. Suite 315
St. Paul, MN 55102

Re:  Our Client:        Patricio Flores, husband of Maria Inamagua Merchan
     Date of Injury:    4/3/06
     Date of Death:     4/13/06

Ms. Leske:

   On April 10, 2006, I sent a letter to the Ramsey County Adult Detention Center requesting medical and other records relating to Ms. Inamagua's detention at the Ramsey County Detention Center (booking # RCSO2006004198). See attached. Sergeant Ryan O'Neill of Internal Affairs stated that he forwarded the letter to your office. It has been over 4 months and I have yet to receive her records or even a response from your office. I included a patient authorization for release of medical information and a general authorization for release of information.

   The authorizations were signed by Ms. Inamagua's husband, Patricio Flores. Again, I am requesting all records relating to my client's detention. A detailed list can be found in the letter I sent on April 10. Please respond to our records request.

                        Very truly yours,


                        Christopher R. Walsh


CRW/pja

Enclosure

c: Patricio Flores



# OFFICE OF THE RAMSEY COUNTY ATTORNEY

Susan Gaertner, County Attorney

50 West Kellogg Boulevard, Suite 560 • St. Paul, Minnesota 55102-1556
Telephone (651) 266-3222 • Fax (651) 266-3032

**Civil Division**

AUG 2 8 2006

August 25, 2006

Christopher R. Walsh, Esq.
270 Grain Exchange North Bldg.
301 Fourth Avenue South
Minneapolis, MN  55415

Re:  Your Client:  Patricio Flores

Dear Mr. Walsh:

In response to your request for documentation regarding Maria Inamagua Merchan the attached documents are provided subject to the Minnesota Statutes, Chapter 13 Minnesota Data Practices Act.

1. Inmate Booking Documents (4)
2. Call Detail Report (3)
3. Current/Previous Cells (1)
4. Inmate Diary Report (3)
5. RCS Hospital Security Unit Daily Log (2)
6. General Report (2)
7. Supplement Report (2)
8. Ramsey County Adult Detention Center/Progress Notes (3)

Very truly yours,

Patricia A. Leske
Claims Administrator



PENGAD 800-631-6888

DEPOSITION
EXHIBIT
Berg 12
9/14/10  LS



# CHRISTOPHER R. WALSH

### ATTORNEY AT LAW

FIFTH STREET TOWERS
100 SOUTH FIFTH STREET, SUITE 1025
MINNEAPOLIS, MINNESOTA 55402

LICENSED TO PRACTICE IN:
MINNESOTA, COLORADO
AND WASHINGTON, D.C.

TELEPHONE: (612) 767-7500
FACSIMILE: (612) 677-9300

TOLL FREE: (866) 333-1529
EMAIL: walshlawfirm@comcast.net
WEBSITE: www.walshlawfirm.com

April 6, 2009

<u>VIA FAX AND U.S. MAIL</u>

Patricia Leske
Office of the Ramsey County Attorney
50 West Kellogg Boulevard, Suite 560
St. Paul, MN 55102

Ramsey County Jail, Adult Detention Division
425 Grove Street
St. Paul, MN 55101

Re:    Our Client:        Patricio Flores, husband of Maria Iñamagua Merchan
          Date of Death:    4-13-06

Dear Sir or Madam:

As you know, I represent Patricio Flores, husband of Maria Iñamagua Merchan, and her next-of-kin. Ms. Iñamagua (booking no. RCSO2006004198) was an inmate at the Ramsey County Detention Center. U.S. Department of Homeland Security ("ICE") picked her up on a deportation order on or about February 24, 2006, and sent her to Ramsey County Adult Detention where she was in Ramsey County's custody from February 26 th to April 3, 2006. Ms. Iñamagua had been complaining of headaches, weight loss, and displaying other symptoms of neurocysticercosis while in detention. Jail nurses noted a "rash" on her legs and arms. She was denied adequate medical care, and upon information and belief was not provided a translator nor a doctor. She became disoriented, fell from her bunk bed, sustained a head injury on April 3, and later died. ICE, Ramsey County and others failed to diagnose and treat her medical conditions, both before and after the head injury, despite her symptoms, complaints and injuries.

Enclosed please find:

1.        Patient Authorization for Release of Medical Information; and
2.        Ramsey County Adult Detention "Progress Notes" dated 3-5-06 to 4-3-06.

The authorizations were signed by Ms. Iñamagua's husband, Patricio Flores. We have received records of Ms. Iñamagua's detention including the nurses' detailed progress notes during

Ramsey County Attorneys Office
Ramsey County Adult Detention Center
April 6, 2009
Page Two

Ms. Iñamagua's stay, however, the aforementioned nurses notes make reference to "scheduling and eval." for "migraines" [3-5-06], "chart check to Family Practice Clinic" [3-23-06] and reference "the MD's orders" [3-31-06].  Despite my medical authorizations sent to Ramsey County Adult Detention, Ramsey County and to you in my correspondence dated April 10, April 20, and August 25, 2006, the above referenced records have not been produced.  Please identify the full names of the nurses and guards who cared for this patient.  As guards or correction officers are the first persons who often hear medical complaints from inmates, they are also healthcare providers.  We may bring a motion for spoliation of evidence if any of the records, identities of treating doctors, nurses or guards which I requested three years ago, has been lost or destroyed.

Please produce the information withheld or redacted from the records you previously sent us on August 25, 2006.  Some of the jail records you sent were redacted, auspiciously under the MGDPA.  However, the family is entitled to all information regarding the healthcare rendered to this patient.

Please advise specifically which doctors or clinics treated Ms. Iñamagua while in your facility, what and where is the "Family Practice Clinic" and who if anyone gave "evaluations" or "M.D. Orders" regarding Ms. Iñamagua. (See highlighted sections attached).  Please provide all materials, records and notes that any medical doctors, nurses or healthcare professionals made while Ms. Iñamagua was under their care. If the jail doctors or medical doctors for ICE, Ramsey County, or any other facility were involved in the care and medical treatment of the Decedent, we are entitled to know that.  I can certainly prepare another authorization if I know who the providers are, and I asked for this information almost three years ago.  I need these records this week, so let me know if I must bring a motion, serve a subpoena or take some other legal action to get them.

Very truly yours,

Christopher R. Walsh

CRW/tpk

Enclosures

c:      Clients